## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | CHAPTER 7 |
| WORLEY & OBETZ, INC., *et al.*,[1] | Case No. 18-13774 (REF) |
| Debtors. | (Jointly Administered) |

---

| | |
|---|---|
| **CHRISTINE C. SHUBERT,** Chapter 7 Trustee for the Estates of Worley & Obetz, Inc., *et al.*; | |
| Plaintiff, | Adv. No. 18-00235 (REF) |
| vs. | |
| | **FIRST AMENDED COMPLAINT** |

**ROBERT SETH OBETZ**, an individual;
**ROBERT W. OBETZ, JR.,** an individual;
**JEFFREY B. LYONS,** an individual;
**JUDITH A. AVILEZ,** an individual;
**KAREN L. CONNELLY**, an individual;
**MARJORIE S. OBETZ,** an individual;
**MELISSA OBETZ,** an individual;
**JULIE LYONS,** an individual;
**MOLLY S. OBETZ,** an individual;
**SAMUEL J. OBETZ,** an individual;
**HOWARD W. CRAMER, JR.,** an individual;
**KATHLEEN A. CRAMER,** an individual;
**MICHELE K. KLUSEWITZ, a/k/a MICHELE KELLY,** an individual;
**149 DOE RUN ROAD, LP,** a Pennsylvania limited partnership;
**149 DOE RUN ROAD, GP, LLC,** a Pennsylvania limited liability company;
**202 GREENFIELD, LP,** a Pennsylvania limited partnership;
**202 GREENFIELD GENERAL, LLC,** a

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

Pennsylvania limited liability company;
**535 STIEGEL VALLEY ROAD, LLC,** a
Pennsylvania limited liability company;
**DOE RUN ROAD, LLC,** a Pennsylvania
limited liability company;
**OL PARTNERS, LLC,** a Pennsylvania
limited liability company;
**G-FORCE SPORTFISHING, INC.,** a
Delaware corporation;
**JW BISHOP PROPERTIES, LLC,** a
Pennsylvania limited liability company;
**LYONS & OBETZ**,
a Pennsylvania general partnership;
**JSB RETENTION, LLC,** a Pennsylvania
limited liability company;
**SETH ENERGY, LLC,** a Pennsylvania
limited liability company; and
**SHIPLEY ENERGY COMPANY**, a
Pennsylvania corporation;

                 Defendants.

Christine C. Shubert, the Chapter 7 Trustee (the "Trustee" or the "Plaintiff") for the jointly-administered estates of the Worley & Obetz, Inc.,[2] *et al.* (collectively, the "Debtors"),[3] hereby brings this adversary proceeding pursuant to Rules 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support thereof, the Trustee states as follows:

## PRELIMINARY STATEMENT

1.    This adversary action arises primarily out of a scheme implemented by the Debtors' principal officer, Defendant, Jeffrey B. Lyons ("Mr. Lyons"), and others, whereby Mr. Lyons and his co-conspirators overstated the Debtors' gross revenue by approximately

---

[2] Debtor Worley & Obetz, Inc. is defined herein as the "Debtor" or "W&O".
[3] Debtors, Americomfort, Inc., RPHAC, Inc., Amerigreen Energy, Inc., Advance Air, Inc., Amerigreen Energy Brokers, LLC, Amerigreen Electricity, LLC, Amerigreen Hedging Services, LLC, Amerigreen Lubricants, LLC, Amerigreen Natural Gas, LLC, and Amerigreen Propane, LLC are collectively defined herein as the "Co-Debtors".

80291021

$1,995,447,000.00 and misrepresented the Debtors' finances to obtain millions of dollars in loans from financial institutions and other creditors.

2.     In furtherance of the scheme, Mr. Lyons and his co-conspirators, including management and employees of the Debtors, engaged in a civil conspiracy to defraud the Debtors and their creditors, and other unlawful and unjust actions to financially benefit themselves and other insiders of the Debtors.

3.     Further, through mismanagement, the remaining Debtors' officers and directors failed to timely uncover the scheme or conspiracy until Mr. Lyons depleted all of the Debtors' assets and left the Debtors with no means to satisfy the millions of dollars of outstanding loans that were obtained in the Debtors' names.

4.     Moreover, the Debtors' officers, directors, shareholders, and insiders (the majority of which are members of the Obetz and Lyons families), unjustly reaped the benefits of the scheme, conspiracy, and other wrongful conduct by using the ill-begotten loan proceeds for their own personal interests, including acquiring rental properties, commercial properties, vacation homes, a million dollar yacht, and an airplane, among other things, using the Debtors' financial resources.

5.     As set forth herein, the Debtors now file this action to recover the damages caused by (1) Mr. Lyons and his co-conspirators' fraudulent scheme to defraud the Debtors and their creditors, and (2) the directors' and officers' failure to properly manage the Debtors' affairs and uncover Mr. Lyons's scheme.  Based on the Debtors' investigation to date, the Trustee is seeking damages arising out of these claims in an amount to be determined, but not less than tens of millions of dollars.

80291021

6. The Debtors also file this action to recover the fraudulent, voidable, and preferential transfers made to the Debtors' insiders. Based on the Debtors' investigation to date, the Trustee is seeking damages in relation to these transfers in an amount to be determined, but not less than $7,063,828.13.

## JURISDICTION AND VENUE

7. The Court (the "Bankruptcy Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H) and (O).

8. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

9. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 362(a), 542, 544, 547, 548, 549 and 550, Fed. R. Bankr. P. 7001 and 7065, and Sections 5104 and 5105 of Pennsylvania's Uniform Voidable Transactions Act, 12 Pa. C.S.A. §§ 5101 *et seq.* ("PUVTA").

## BACKGROUND

10. On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

11. On June 6, 2018, the Office of the United States Trustee appointed Christine C. Shubert as Chapter 7 Trustee of the Debtors' estates, which appointment remains in effect.

12. By Order entered on June 19, 2018, this Court consolidated the Debtors' cases, for procedural purposes only, and ordered the joint administration of the Debtors' cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1 under *In re Worley & Obetz, Inc., et al.*, Case No. 18-13774 (REF) (the "Joint Administration Order"). [D.I. 75].

## THE PARTIES

13.    Plaintiff is the **Trustee, Christine C. Shubert**, in her representative capacity on behalf of the Debtors' estates.

14.    Defendant, **Robert Seth Obetz** ("Seth Obetz"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Seth Obetz served as Vice-President and Vice-Chairman for each of the Debtors until May 15, 2018, at which point he became President of each of the Debtors.  Seth Obetz also is a director on the Board of Directors of each of the Debtors and a shareholder of each of the Debtors.  As such, Seth Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

15.    Defendant, **Robert W. Obetz, Jr.** ("Bob Obetz"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 885 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Bob Obetz is the father of Seth Obetz and is (1) the Chairman of Debtors W&O, Americomfort, Inc., RPHAC, Inc., and Amerigreen Propane, LLC, (2) a director on the Board of Directors of each of the Debtors, and (3) a shareholder of each of the Debtors.  As such, Bob Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

16.    Defendant, **Jeffrey B. Lyons** ("Mr. Lyons"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 2601 Old Orchard Road, Lancaster, Pennsylvania 17601, or wherever he may be found. Mr. Lyons is the former CEO of the Debtors and shareholder of certain Debtors.  As such, Mr. Lyons is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

80291021

17.     Defendant, **Judith A. Avilez** ("Ms. Avilez"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 1097 Old Elizabethtown Road, Elizabethtown, Pennsylvania 17022, or wherever she may be found. Ms. Avilez was an officer of W&O and served as the Secretary beginning in 2016.  As such, Ms. Avilez is an "insider" of W&O and an "insider" "affiliate" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

18.     Defendant, **Karen L. Connelly** ("Ms. Connelly"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 343 Lakeview Drive, Manheim, Pennsylvania 17545, or wherever she may be found.  Ms. Connelly was an officer of W&O and served as the Secretary until 2015.  As such, Ms. Connelly is an "insider" of W&O and an "insider" "affiliate" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

19.     Defendant, **Marjorie S. Obetz** ("Marjorie Obetz"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 885 White Oak Road, Manheim, Pennsylvania 17545, or wherever she may be found.  Marjorie Obetz is the wife of Bob Obetz and a director on the Board of Directors for W&O.  As such, Ms. Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

20.     Defendant, **Melissa Obetz** ("Melissa Obetz"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever she may be found.  Melissa Obetz is the wife of Seth Obetz.  As such, Melissa Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

80291021

21.     Defendant, **Julie Lyons** ("Ms. Lyons"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 2601 Old Orchard Road, Lancaster, Pennsylvania 17601, or wherever she may be found.  Ms. Lyons is the wife of Mr. Lyons.  As such, Ms. Lyons is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

22.     Defendant, **Molly S. Obetz** ("Molly Obetz"), is an adult individual residing in Kootenai County, Idaho who may be served with summons and civil process at 2551 S. Evergreen Lane, Coeur D'Alene, Kootenai County, Idaho 83814, or wherever she may be found. Molly Obetz is the daughter of Bob and Marjorie Obetz.  At times relevant hereto, Molly Obetz was (1) a director on the Board of Directors of W&O, and (2) a shareholder of W&O.  As such, Molly Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

23.     Defendant, **Samuel J. Obetz** ("Sam Obetz"), is an adult individual residing in Jefferson County, Washington who may be served with summons and civil process at 4303 Jackman Street, Port Townsend, Washington 98368, or wherever he may be found.  Sam Obetz is the son of Bob and Marjorie Obetz, and the brother of Seth Obetz, and, at times relevant hereto, was a director on the Board of Directors of W&O.  As such, Sam Obetz is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

24.     Defendant, **Howard W. Cramer, Jr.** ("Mr. Cramer"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 11 East Brandt Boulevard, Landisville, Pennsylvania 17538, or wherever he may be found. Mr. Cramer is the father-in-law of Seth Obetz.  As such, Mr. Cramer is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

80291021

25.     Defendant, **Kathleen A. Cramer** ("Ms. Cramer"), is an adult individual residing in Lancaster County, Pennsylvania who may be served with summons and civil process at 11 East Brandt Boulevard, Landisville, Pennsylvania 17538, or wherever she may be found.  Ms. Cramer is the mother-in-law of Seth Obetz.  As such, Ms. Cramer is an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B).

26.     Defendant, **Michele K. Klusewitz, a/k/a Michele Kelly** ("Ms. Kelly"), is an adult individual residing in Berks County, Pennsylvania who may be served with summons and civil process at 469 Mountain Boulevard, Wernersville, Pennsylvania 19565, or wherever she may be found.  Ms. Kelly was the former human resources manager at W&O.

27.     Defendant, **149 Doe Run Road, LP**, is a Pennsylvania limited partnership, which may be served by serving Seth Obetz as managing member of its general partner, 149 Doe Run Road, GP, LLC at 149 Doe Run Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, 149 Doe Run Road, GP, LLC owns one-percent (1.0%) of 149 Doe Run Road, LP, and Seth Obetz is the sole limited partner of 149 Doe Run Road, LP.  Upon information and belief, Seth Obetz is the the managing member of 149 Doe Run Road, GP, LLC, which is the ninety-nine percent (99%) owner and general partner of 149 Doe Run Road, LP.  As such, 149 Doe Run Road, LP is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

28.     Defendant, **149 Doe Run Road, GP, LLC**, is a Pennsylvania limited liability company, which may be served by serving Seth Obetz as its managing member at 149 Doe Run Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, Seth Obetz is the managing member

of 149 Doe Run Road, GP, LLC.  As such, 149 Doe Run Road, GP, LLC is an "affiliate"

"insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and

101(31)(E).

29.     Defendant, **202 Greenfield, LP**, is a Pennsylvania limited partnership, which may

be served by serving Seth Obetz as managing member of its general partner, 202 Greenfield

General, LLC at 85 White Oak Road, Manheim, Pennsylvania 17545, at 917 White Oak Road,

Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief,

Seth Obetz is the managing member of the general partner, 202 Greenfield General, LLC, and

the sole owner of 202 Greenfield, LP.  As such, 202 Greenfield, LP is an "affiliate" "insider" of

each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

30.     Defendant, **202 Greenfield General, LLC**, is a Pennsylvania limited liability

company, which may be served by serving Seth Obetz as its managing member at 85 White Oak

Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545,

or wherever he may be found.  Upon information and belief, Seth Obetz is the managing member

of 202 Greenfield General, LLC and the sole owner of 202 Greenfield, LP.  As such, 202

Greenfield General, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are

defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

31.     Defendant, **535 Stiegel Valley Road, LLC**, is a Pennsylvania limited liability

company, which may be served by serving Seth Obetz as its managing member at 85 White Oak

Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545,

or wherever he may be found.  Upon information and belief, Seth Obetz is the managing member

and sole owner of 535 Stiegel Valley Road, LLC.  As such, 535 Stiegel Valley Road, LLC is an

"affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

32.     Defendant, **Doe Run Road, LLC**, is a Pennsylvania limited liability company, which may be served by serving Seth Obetz as its managing member at 85 White Oak Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, Seth Obetz and Jeff Lyons are managing members of Doe Run Road, LLC.  As such, Doe Run Road, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

33.     Defendant, **OL Partners, LLC**, is a Pennsylvania limited liability company, which may be served by serving Seth Obetz as its managing member at 85 White Oak Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, Seth Obetz and Jeff Lyons are managing members and owners of OL Partners, LLC.  As such, OL Partners, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

34.     Defendant, **G-Force Sportfishing, Inc.**, is a Delaware corporation, which may be served at its registered office at 40127 Fenwick Avenue, Fenwick, Delaware 19944 or by serving Seth Obetz as its registered agent at 40127 Fenwick Avenue, Fenwick, Delaware 19944, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, Seth Obetz and Melissa Obetz are officers of G-Force Sportsfishing, Inc. and own one-hundred percent (100%) of its common stock.  As such, G-Force Sportsfishing, Inc.

is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

35.     Defendant, **JW Bishop Properties, LLC**, is a Pennsylvania limited liability company, which may be served by serving Seth Obetz as its managing member at 85 White Oak Road, Manheim, Pennsylvania 17545, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Upon information and belief, Seth Obetz and Melissa Obetz are the managing members and owners of JW Bishop Properties, LLC.  As such, JW Bishop Properties, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

36.     Defendant, **Lyons & Obetz** ("Lyons & Obetz"), is a Pennsylvania general partnership, which may be served by serving Seth Obetz, one of the general partners, at 917 White Oak Road, Manheim, Pennsylvania 17545, or wherever he may be found.  Lyons & Obetz may also be served by serving any one of its other general partners: (1) Mr. Lyons, who may be served with summons and civil process at 2601 Old Orchard Road, Lancaster, Pennsylvania 17601, or wherever he may be found; (2) Molly Obetz, who may be served with summons and civil process at 2551 S. Evergreen Lane, Coeur D'Alene, Idaho 83814, or wherever she may be found; or (3) Sam Obetz, who may be served with summons and civil process at 4303 Jackman Street, Port Townsend, Washington 98368, or wherever he may be found.  Upon information and belief, Seth Obetez, Jeff Lyons, Molly Obetz, and Sam Obetz own one-hundred percent (100%) of the partnership interest in Lyons & Obetz.  As such, Lyons & Obetz is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

37.     Defendant, **JSB Retention, LLC**, is a Pennsylvania limited liability company, which may be served at its registered office at 2601 Old Orchard Road, Lancaster, Pennsylvania

80291021

17601.  Upon information and belief, Jeff Lyons, Seth Obetz, and Bob Obetz are the sole members of JSB Retention, LLC.  As such, JSB Retention, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

38.    Defendant, **Seth Energy, LLC**, is a Pennsylvania limited liability company, which may be served at its principal place of business at 45 Doe Run Road, Manheim, Pennsylvania 17545.  Upon information and belief, Seth Obetz is the managing member and sole owner of Seth Energy, LLC.  Upon information and belief, Seth Energy, LLC is an "affiliate" of Shipley Energy Company, as such term is defined in 11 U.S.C. § 101(2).  As such, Seth Energy, LLC is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

39.    Upon information and belief, Defendant, **Shipley Energy Company**, is a Pennsylvania corporation, which may be served at its principal place of business at 500 East King Street, York, Pennsylvania 17403.  Upon information and belief, Seth Obetz is a partner, officer, and/or participant in a joint venture with Shipley Energy Company.  Upon information and belief, Shipley Energy Company is an "affiliate" of Seth Energy, LLC, as such term is defined in 11 U.S.C. § 101(2).  As such, Shipley Energy Company is an "affiliate" "insider" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).  In the alternative, Shipley Energy Company is a "non-statutory insider" under applicable case law.

40.    Accordingly, 149 Doe Run Road, LP, 149 Doe Run Road, GP, LLC, 202 Greenfield, LP, 202 Greenfield General, LLC, 535 Stiegel Valley Road, LLC,  Doe Run Road, LLC, OL Partners, LLC, G-Force Sportsfishing, Inc., JW Bishop Properties, LLC, Lyons & Obetz, JSB Retention, LLC, Seth Energy, LLC, and Shipley Energy Company are each an

"insider" "affiliate" of each of the Debtors, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

## STATEMENT OF FACTS

### A.   Background of Debtors' Businesses

41.     Seth Obetz, Bob Obetz, and Marjorie Obetz are the owners and 100% shareholders of W&O, either directly or through trusts they established and control (the "W&O Shareholders").

42.     Specifically, the Robert Seth Obetz Trust owns W&O's non-voting stock.  Upon information and belief, Seth Obetz's sons, Gavin and Grady Obetz (both of whom are minors) are the sole beneficiaries of the Robert Seth Obetz Trust.

43.     Bob Obetz and Marjorie Obetz own the majority of the shares of W&O's voting stock.

44.     Seth Obetz owns the balance of W&O's voting stock.

45.     W&O's officers included the following persons:  (1) Seth Obetz, President and Vice President, (2) Bob Obetz, Chairman, (3) Mr. Lyons, Chief Executive Officer, and (4) Ms. Connelly, Secretary (until 2015), and (5) Ms. Avilez, Secretary (beginning in 2016) (collectively, the "W&O's Officers").

46.     W&O's Board of Directors included the following persons: (1) Seth Obetz, (2) Bob Obetz, (3) Molly Obetz (until approximately 2015), (4) Marjorie Obetz, (5) Mr. Lyons, and (6) Sam Obetz (until approximately 2015) ("W&O's Directors").

47.     Seth Obetz, Bob Obetz, and Mr. Lyons (together, the "Amerigreen Shareholders") are also the owners and 100% shareholders of the Co-Debtor, Amerigreen Energy, Inc. ("Amerigreen Energy").

80291021

48.     Amerigreen Energy's officers included the following persons:  (1) Seth Obetz, Vice President, (2) Mr. Lyons, President, and (3) Bob Obetz, Treasurer (together, "Amerigreen's Officers").

49.     Amerigreen Energy's Board of Directors included the following persons:  (1) Seth Obetz, and (2) Bob Obetz (together, "Amerigreen's Directors")

50.     W&O is the 100% owner and parent of Co-Debtor, Americomfort, Inc. ("Americomfort").

51.     W&O also is the 100% owner and parent of Co-Debtor, Amerigreen Propane, LLC.

52.     W&O and Americomfort together own 100% of Co-Debtor RPHAC, Inc. ("RPHAC").

53.     RPHAC operated as a direct and/or indirect subsidiary of W&O and Americomfort.

54.     Together, W&O, Americomfort and RPHAC operated as a total energy provider, and provided certain other energy products and services to their commercial and residential customers, including, but not limited to, the following:

     A.     Fuel, gasoline, biodiesel, heating oil, kerosene, naptha, propane, and other forms of renewable energy;

     B.     Electricity and natural gas;

     C.     HVAC installation, repair, maintenance, and service; and,

     D.     Plumbing system installation, repair, and maintenance.

55.     Amerigreen Energy is the 100% owner and parent of the following additional Co-Debtors:  Advance Air, Inc.; Amerigreen Energy Brokers, LLC; Amerigreen Electricity, LLC;

80291021

Amerigreen Hedging Services, LLC; Amerigreen Lubricants, LLC; and Amerigreen Natural Gas, LLC (collectively, the "Amerigreen Subsidiaries").

56.     The Amerigreen Subsidiaries operated as separate entities under Amerigreen Energy.

57.     Amerigreen Energy and the Amerigreen Subsidiaries operated as an energy wholesaler to retail distributors in the Mid-Atlantic and New England markets and provided certain energy products and services to their retail fuel distributors, fuel stations, commercial clients, and commercial and residential clients of W&O, including, but not limited to, the following:

> A.     Ethanol and biodiesel inventory supply and delivery to retail fuel distributors and commercial clients;
>
> B.     Hedging and marketing services to fuel distributor customers;
>
> C.     Electricity and natural gas plans to commercial and residential clients;
>
> D.     Delivery and supply to W&O's commercial and residential customers of Amerigreen fuel, biodiesel, biofuels, petroleum, and diesel fuels; and
>
> E.     Operation, supply, and delivery of Amerigreen energy products to Amerigreen stations.

**B.      Events Leading to Bankruptcy**

58.     Prior to the Petition Date, on or about May 15, 2018, Mr. Lyons unexpectedly failed to appear for a meeting with Seth Obetz and a large commercial customer of W&O.

59.     On or about May 15, 2018, Mr. Lyons was terminated for cause.

60.     On or about May 21, 2018, the Debtors terminated forty-five (45) of their administrative and management employees.

80291021

61.     Just prior to the Petition Date, on June 4, 2018, the Debtors ceased operations and terminated all 150 remaining employees.

## C.     **The Primary Scheme**

62.     At all relevant times herein, the Debtors owned significant assets, many of which are subject to security interests and liens.

63.     After Mr. Lyons failed to appear at the meeting scheduled for May 15, 2018, the Debtors began conducting an investigation into Mr. Lyons's actions.

64.     A preliminary investigation has revealed that Mr. Lyons, and at least two controllers of W&O, including Ms. Avilez and Ms. Connelly (collectively, the "Co-Conspirators") engaged in a widespread and massive scheme by inducing multiple creditors to advance funds to the Debtors based upon the inflated and overstated financial performance of W&O and Amerigreen Energy for a period of at least five (5) years, and likely for more than ten (10) years prior thereto.[4]

65.     Mr. Lyons and his Co-Conspirators overstated W&O's annual revenues, costs of goods sold, accounts receivable, and net income.

66.     Mr. Lyons and his Co-Conspirators also overstated Amerigreen Energy's accounts receivable from non-related third-parties.

67.     Mr. Lyons and the Co-Conspirators submitted inaccurate financial statements, borrowing base certificates, and/or other financial documents to financial institutions with overstated revenue, net income, and accounts receivable, to obtain new loans, or further advances on existing lines of credit.

---

[4] As of the filing of this Complaint, the Trustee is unable to determine whether any of the remaining Co-Defendants were actively involved in this scheme.  The Trustee reserves the right to amend this Complaint as additional facts are uncovered during discovery.  Nonetheless, as set forth more fully herein, it is clear that the Co-Defendants benefited extraordinarily as a result of the scheme, while at the same time failing to implement any internal controls that would have uncovered and stopped the scheme.

80291021

68.     Ms. Connelly and Ms. Avilez both admitted their involvement in the scheme.  In fact, during the preliminary investigation, Ms. Avilez provided Seth Obetz with a written statement explaining how she and Ms. Connelly adjusted the Debtors' financial statements each month.  A true and correct copy of Ms. Avilez's written statement is attached hereto as **Exhibit "A"**.

69.     Upon information and belief, based upon the Trustee's investigation to date, for the five-year period ending on or about August 31, 2017, and September 30, 2017 respectively, W&O and Amerigreen Energy borrowed more than $38,692,000.00 from various financial institutions, based upon the fraudulent and grossly inflated financial documents.

70.     In addition, upon information and belief, as of February of 2017, the outstanding amounts due from the Debtors to their lenders exceeded $63,208,000.00.

71.     Moreover, upon information and belief, Mr. Lyons and his Co-Conspirators engaged in a further conspiracy to defraud the Debtors and their creditors, by diverting money from the Debtors to pay personal credit card expenses and other personal obligations in the approximate amount of $1,000,000.00.

72.     Additionally, using the funds he illegally diverted from the Debtors, Mr. Lyons and his wife, Ms. Lyons, purchased a $100,000.00 certificate of deposit ("CD"), which CD Mr. Lyons and Ms. Lyons attempted to withdraw upon shortly after the filing of the Petition.

**D.      The Failure of Management and Directors**

73.     While Mr. Lyons and his Co-Conspirators were perpetrating this scheme, the directors, officers, and managers of the Debtors failed to effectively oversee the Debtors' businesses by neglecting to establish and monitor sufficient financial controls, supervise and

80291021

direct the actions of Mr. Lyons and his Co-Conspirators, and other conduct to be determined during discovery.

74.     W&O's Directors and Officers and Amerigreen's Directors and Officers (collectively, the "D&O Defendants") breached their fiduciary duties to the Debtors and were negligent in their supervision and management of the Debtors as set forth herein.

75.     As a result of Defendants' conduct, the W&O shareholders, insiders, and other family members (collectively, the "Shareholder Defendants"), improperly received real and personal property, money, and other benefits from the Debtors that would not have been available but for the wrongful conduct of the D&O Defendants, Mr. Lyons and the Co-Conspirators.

E.     **Additional Fraudulent Actions, Dereliction of Duties, and Preferential and Fraudulent Transfers**

76.     As set forth herein, W&O, without consideration, advanced significant sums of money to the Shareholder Defendants, insiders or other single purpose entities that are owned by the Shareholder Defendants and insiders, which funds were used to purchase real and personal property.  The single purpose entities are co-defendants herein.

77.     Additionally, as set forth below, W&O made lease and rental payments to the Shareholder Defendants or single purpose entities owned and controlled by the Shareholder Defendants, which appear to have provided little or no economic benefit to the Debtors to the severe detriment of the Debtors and their creditors.

**Lyons & Obetz**

78.     On or about March 22, 2002, Mr. Lyons, Molly Obetz, Seth Obetz, and Sam Obetz, formed Defendant, Lyons & Obetz, a Pennsylvania general partnership, for the stated purpose of buying and selling real estate.

18

79.     On or about March 22, 2002, Lyons & Obetz purchased the real property and improvements at 55 Doe Run Road, Manheim, Pennsylvania ("55 Doe Run Road") for $1,600,000.00.

80.     Upon information and belief, Seth Obetz and/or Mr. Lyons directed W&O to improperly advance the down payment for the purchase of 55 Doe Run Road.

81.     The purchase of 55 Doe Run Road did not provide any economic benefit to W&O.

82.     On or about September 11, 2006, Lyons & Obetz obtained a loan from a financial institution in the amount of $1,360,000.00 to pay the balance of the purchase price of 55 Doe Run Road.  Upon information and belief, W&O guaranteed the repayment of the loan.

83.     In the fall of 2009, the original owner of the 55 Doe Run Road property, who had become a tenant, vacated the property.

84.     Thereafter, on or about September 1, 2009, W&O entered into a lease agreement with Lyons & Obetz, whereby W&O agreed to make rental payments of $13,000.00 per month to Lyons & Obetz, allegedly for storage and truck parking at 55 Doe Run Road.

85.     Upon information and belief, W&O did not benefit from the rental arrangement as the additional storage and parking was unnecessary to W&O's business, and the monthly rental amount was in excess of the market rent.

86.     As of the Petition Date, W&O continued to make monthly rental payments to Lyons & Obetz for 55 Doe Run Road in the approximate amount of $8,500.00.

87.     As the result of W&O's down payment for the purchase of 55 Doe Run Road, and W&O's monthly rental payments, which were used to pay the mortgage, maintenance, taxes, and

all other costs related to 55 Doe Run Road, W&O is the equitable owner of all interests in 55 Doe Run Road.

88.     Additionally, on or about June 29, 2007, Lyons & Obetz purchased the real property and improvements at 41 Doe Run Road, Manheim, Pennsylvania ("41 Doe Run Road") for $350,000.00.

89.     Upon information and belief, Seth Obetz and/or Mr. Lyons directed W&O to advance the sum of $35,000.00 as the down payment on 41 Doe Run Road.

90.     Thereafter, Lyons & Obetz obtained a mortgage loan to finance the balance of the purchase price in the amount of $230,000.00.  Upon information and belief, W&O guaranteed the mortgage loan.

91.     On September 1, 2016, W&O entered into a lease agreement with Lyons & Obetz, whereby W&O agreed to pay $1,500.00 per month, purportedly for the use of the second floor of 41 Doe Run Road.

92.     Upon information and belief, W&O's business did not benefit from the rental arrangement, and the lease was unnecessary to W&O's business.

93.     As of the Petition Date, W&O continued to make monthly rental payments to Lyons & Obetz in the approximate amount of $1,500.00, which rental payments paid in part the mortgage on 41 Doe Run Road.

94.     As the result of W&O's down payment for the purchase of 41 Doe Run Road, and W&O's monthly rental payments to Lyons & Obetz, which were used to pay the mortgage in part, and all maintenance, taxes, and other costs related to 41 Doe Run Road, W&O is the equitable owner of all interests in 41 Doe Run Road.

80291021

## 40127 Fenwick Avenue, Fenwick Island, Delaware

95.     Upon information and belief, in May 2009, Seth Obetz, Melissa Obetz, Mr. Lyons, and Ms. Lyons, purchased a vacation rental property located at 40127 Fenwick Avenue, Fenwick Island, Delaware ("40127 Fenwick Avenue").

96.     Upon information and belief, Seth Obetz and Mr. Lyons directed W&O, without consideration, to pay $540,000.00 as the down payment on the purchase of 40127 Fenwick Avenue.

97.     The purchase of 40127 Fenwick Avenue did not benefit W&O's business.

98.     Upon information and belief, Seth Obetz and/or Mr. Lyons improperly caused W&O to characterize the $540,000.00 payment as "bonuses" paid to Seth Obetz and Mr. Lyons. W&O received no economic benefit for the purported "bonuses" to Seth Obetz and Mr. Lyons.

99.     As the result of W&O's $540,000.00 down payment for the purchase of 40127 Fenwick Avenue, W&O is the equitable owner of all interests in 40127 Fenwick Avenue.

## 202 Greenfield Road, Manheim, Pennsylvania

100.    Upon information and belief, on or about November 25, 2009, W&O, at the direction of Seth Obetz, purchased the real property and improvements located at 202 Greenfield Road, Manheim, Pennsylvania ("202 Greenfield Road").

101.    Upon information and belief, W&O purchased 202 Greenfield Road, in part, with a $1,120,000.00 purchase-money mortgage loan.

102.    On or about April 3, 2012, Seth Obetz, as the sole limited partner, and 202 Greenfield General LLC, as the general partner, formed 202 Greenfield, LP.

103.    On or about August 30, 2013, 202 Greenfield, LP purchased the real property and improvements at 202 Greenfield Road from W&O for $1,374,253.00.

21

104.    A financial institution agreed to transfer the mortgage on 202 Greenfield Road from W&O to 202 Greenfield, LP at the request of Seth Obetz.

105.    Upon information and belief, W&O paid all the closing costs for the transfer of 202 Greenfield Road to 202 Greenfield, LP and W&O did not retain equity in 202 Greenfield Road at the time of the transfer to 202 Greenfield, LP.

106.    Additionally, as part of the payment for 202 Greenfield Road, on or about August 30, 2013, W&O and 202 Greenfield, LP entered into a Promissory Note, whereby 202 Greenfield, LP agreed to pay W&O the principal sum of $386,867.50, together with interest at 3.950% per year, in monthly installments of $3,908.88 until the principal and interest were paid in full (the "202 Greenfield, LP Promissory Note").  A true and correct copy of the 202 Greenfield LP Promissory Note is attached hereto as **Exhibit "B"**.

107.    202 Greenfield, LP defaulted under the 202 Greenfield, LP Promissory Note by failing to make all payments to W&O when due.

108.    As of July 13, 2018, the total amount due from 202 Greenfield, LP to W&O under the 202 Greenfield, LP Promissory Note is $235,946.94.

109.    As the result of W&O's down payment for the purchase of 202 Greenfield Road, W&O's payment of all of the closing costs for the transfer of 202 Greenfield Road to 202 Greenfield, LP, and 202 Greenfield, LP's default under the 202 Greenfield, LP Promissory Note and failure to make the payments due thereunder, W&O is the equitable owner of all interests in 202 Greenfield Road.

## Doe Run Road, LLC

110.    On or about November 16, 2007, Seth Obetz and Mr. Lyons formed Doe Run Road, LLC and are the only members.

22

80291021

111.    In or about January 2008, Doe Run Road, LLC purchased the real property and improvements at (i) 52 Doe Run Road, Manheim, Pennsylvania 17545 ("52 Doe Run Road"), (ii) 56 Doe Run Road, Manheim, Pennsylvania 17545 ("56 Doe Run Road"), (iii) 60 Doe Run Road, Manheim, Pennsylvania 17545 ("60 Doe Run Road"), and (iv) 62 Doe Run Road Manheim, Pennsylvania 17545 ("62 Doe Run Road" and together with 52 Doe Run Road, 56 Doe Run Road, and 60 Doe Run Road, the "Doe Run Road Property") for $1,800,000.00.

112.    Without consideration, W&O paid the approximate sum of $227,000.00 to the seller as a down payment and closing costs for the Doe Run Road Property, and the remainder of the purchase price was financed through a mortgage loan.  Upon information and belief, W&O guaranteed payment of the mortgage loan.

113.    Thereafter, upon information and belief, Seth Obetz and/or Mr. Lyons directed W&O to rent ten storage units at the Doe Run Road Property for $1,000.00 per month.  The rental of the storage units did not provide any economic benefit to W&O's business.

114.    Upon information and belief, when the storage units were not generating sufficient cash flow to make the required monthly mortgage payments, on or about June 1, 2012, Doe Run Road LLC entered into another lease agreement with W&O, whereby W&O agreed to pay an additional $2,000.00 per month, allegedly for parking.  W&O's business, however, did not benefit from the parking lease agreement and the lease agreement was unnecessary.

115.    Upon information and belief, in 2012 Doe Run Road, LLC transferred certain parcels of the Doe Run Road Property, without repaying W&O's contribution towards the original purchase of the Doe Run Road Property.

80291021

116.    Specifically, on or about May 4, 2012, Doe Run Road, LLC transferred, without consideration, 60 Doe Run Road, Manheim Pennsylvania to OL Partners, LLC – a newly formed entity that Seth Obetz and Mr. Lyons wholly own and control.

117.    Additionally, in October 2015, Doe Run Road LLC sold 52 and 56 Doe Run Road, Manheim, Pennsylvania to a third party for approximately $350,000.00.  W&O received no benefit from this transaction.

118.    Finally, Seth Obetz and Mr. Lyons subsequently directed W&O to advance an additional $300,000.00 to Doe Run Road LLC, so that Doe Run Road LLC could purchase the real property located at 45 Doe Run Road, Manheim, Pennsylvania, 17545 ("45 Doe Run Road") in cash.

119.    Again, W&O received no consideration for the significant advance of cash to Doe Run Road LLC and the transaction provided no benefit to W&O's business.

120.    As of the Petition Date, W&O had transferred the approximate sum of $430,000.00 to Doe Run Road LLC without consideration.

121.    As the result of W&O's down payment for the purchase of the Doe Run Road Property, W&O's monthly rental payments for the storage units, its monthly parking lease payments, and W&O's additional advance of $300,000.00 to Doe Run Road, LLC in connection with the purchase of 45 Doe Run Road, all of which were used to pay the mortgage, maintenance, taxes, and all other costs related to the Doe Run Road Property and 45 Doe Run Road, W&O is the equitable owner of all interests in the Doe Run Road Property and 45 Doe Run Road.

## 1075 White Oak Road, Manheim, Pennsylvania

122.    In 2009, Seth Obetz obtained 100% ownership of the real property and improvements located at 1075 White Oak Road, Manheim, Pennsylvania ("1075 White Oak Road") from his siblings.

123.    Upon information and belief, the initial purchase by the Obetz family and/or Seth Obetz's purchase of his sibling's interest in 1075 White Oak Road, was financed, in whole or in part, using funds and credit of W&O.

124.    On or about June 19, 2017, Seth and Melissa Obetz obtained a $650,000.00 commercial mortgage loan from Union Community Bank, using 1075 White Oak Road as collateral.

125.    Upon information and belief, Seth and Melissa Obetz made the monthly mortgage payments, in part, using cash improperly obtained from W&O, despite the fact that W&O's business derived no benefit from 1075 White Oak Road.

126.    As the result of Seth Obetz and Melissa Obetz's use of cash improperly obtained from W&O to make the monthly mortgage payments, in part, for 1075 White Oak Road, W&O is the equitable owner of all interests in 1075 White Oak Road.

## 149 Doe Run Road, LP

127.    On or about July 20, 2011, 149 Doe Run Road GP, LLC, as general partner, and Seth Obetz, as the limited partner, formed 149 Doe Run Road, LP.

128.    Seth Obetz is the managing member of 149 Doe Run Road, LLC and is the sole limited partner of 149 Doe Run Road, LP.  149 Doe Run Road, LLC owns 1% of 149 Doe Run Road, LP.

129.   On or about July 29, 2011, 149 Doe Run Road, LP purchased the real property and improvements at 149 Doe Run Road, Manheim, Pennsylvania ("149 Doe Run Road") for the sum of $850,000.00.

130.   At that time, W&O advanced $85,000.00 as the down payment to 149 Doe Run Road, LP and the remainder of the purchase price was financed with a mortgage loan to 149 Doe Run Road, LP, which was guaranteed by W&O.

131.   Upon information and belief, thereafter, Seth Obetz comingled W&O's funds and used W&O's funds for his own personal benefit to pay the monthly mortgage payments relating to 149 Doe Run Road.

132.   Additionally, upon information and belief, rather than repay the sum of $85,000.00 to W&O, Seth Obetz and/or Mr. Lyons directed W&O to re-characterize the payment to 149 Doe Run Road, LP as a bonus to Seth Obetz.  W&O received no economic benefit for this purported "bonus" to Seth Obetz.

133.   As the result of W&O's down payment for the purchase of 149 Doe Run Road, and Seth Obetz's use of cash improperly obtained from W&O to make the monthly mortgage payments, in part, relating to 149 Doe Run Road, W&O is the equitable owner of all interests in 149 Doe Run Road.

## JW Bishop Properties LLC

134.   On or about February 11, 2013, Seth and Melissa Obetz formed JW Bishop Properties LLC and are its sole members.

135.   JW Bishop Properties LLC purchased real property located at 316 and 318 North Elmer Avenue and 413, 415, and 417 North Lehigh Avenue, in Sayre Pennsylvania (the "Sayre Property") for $678,000.00.

80291021

136.    Seth Obetz directed W&O to loan JW Bishop Properties LLC the entire purchase price of the Sayre Property pursuant to a promissory note dated February 4, 2013 (the "JW Bishop Promissory Note").   A true and correct copy of the JW Bishop Promissory Note is attached hereto as **Exhibit "C"**.

137.    Pursuant to the JW Bishop Promissory Note, JW Bishop Properties, LLC was obligated to repay the purchase price in monthly installments of $6,940.11.   [See id.].

138.    JW Bishop Properties, LLC did not repay the purchase price of the Sayre Property.

139.    Instead, Seth Obetz and/or Mr. Lyons directed W&O to pay JW Bishop Properties, LLC $6,940.11 each month (the same amount as the monthly payment due under the JW Bishop Promissory Note) allegedly for "rent."   W&O did not benefit from this rental arrangement.

140.    JW Bishop Properties, LLC defaulted under the JW Bishop Promissory Note by failing to make all payments when due.

141.    As of July 13, 2018, the total amount due and owing from JW Bishop Properties, LLC to W&O under the JW Bishop Promissory Note is $371,605.37.

142.    As the result of the use of W&O's funds to purchase the Sayre Property, JW Bishop Properties, LLC's failure to repay the JW Bishop Promissory Note, and W&O's monthly payments to JW Bishop Properties, LLC alledgedly for "rent" in connection with the Sayre Properties (i.e., JW Bishop Properties, LLC repaying W&O with W&O's own funds), W&O is the equitable owner of all interests in the Sayre Property.

### 211 South Charlotte Street, Manheim, Pennsylvania

143.    On or about October 31, 2013, Seth and Melissa Obetz purchased the real property and improvements at 211 South Charlotte Street, Manheim Pennsylvania ("211 South Charlotte Street") for $139,000.00.

144.    Upon information and belief, Seth Obetz and/or Mr. Lyons directed W&O to advance the sum of $40,000.00 as the down payment and closing costs associated with the purchase of 211 South Charlotte Street.  The remainder of the purchase price was financed through a mortgage loan issued to Seth and Melissa Obetz.

145.    Upon information and belief, Seth and Melissa Obetz improperly co-mingled W&O's funds and used W&O's funds for their own personal benefit to make the monthly mortgage payments for 211 South Charlotte Street.

146.    As the result of W&O's down payment for the purchase of 211 South Charlotte Street, and Seth Obetz and Melissa Obetz's use of cash improperly obtained from W&O to make the monthly mortgage payments, relating to 211 South Charlotte Street, W&O is the equitable owner of all interests in 211 South Charlotte Street.

### 535 Stiegel Valley Road, Manheim, Pennsylvania

147.    On or about December 11, 2013, Seth Obetz formed 535 Stiegel Valley Road, LLC and is its sole member.

148.    On or about January 14, 2014, 535 Stiegel Valley Road, LLC purchased the property located at 535 Stiegel Valley Road, Manheim Pennsylvania ("535 Stiegel Valley Road") for $517,808.77.

149.    The purchase was 100% seller-financed.   W&O paid the closing costs of $15,000.00.  Upon information and belief, at the direction of Seth Obetz, the closing costs were

subsequently re-characterized as a "bonus" to Seth Obetz.  W&O received no economic benefit
for this purported bonus to Seth Obetz.

150.    On or about January 14, 2014, 535 Stiegel Valley Road LLC and W&O entered
into a lease agreement, whereby W&O agreed to make monthly rental payments to 535 Stiegel
Valley Road LLC in the amount of $6,000.00, allegedly for parking.  Again, the lease agreement
for 535 Stiegel Valley Road LLC provided no economic benefit to W&O's business.

151.    As of the Petition Date, W&O continued to pay 535 Stiegel Valley Road LLC
$2,000.00 per month in purported rental payments.

152.    As the result of W&O's down payment for the purchase of 535 Stiegel Valley
Road, and W&O's monthly rental payments 535  Stiegel Valley Road LLC, which was used to
pay the mortgage, maintenance, taxes, and all other costs related to 535 Stiegel Valley Road,
W&O is the equitable owner of all interests in 535 Stiegel Valley Road.

## G-Force Sportfishing, Inc.

153.    On or about July 20, 2015, Seth and Melissa Obetz incorporated G-Force
Sportfishing, Inc.

154.    Seth and Melissa Obetz jointly own G-Force Sportfishing, Inc.

155.    At the time of incorporation, Seth and Melissa Obetz contributed a 55' Hatteras
boat they personally owned to G-Force Sportfishing, Inc.

156.    Upon information and belief, Seth Obetz directed W&O and/or Amerigreen
Energy, to pay charter fees to G-Force Sportfishing, Inc. to entertain customers of W&O and
Amerigreen Energy.

157.    In or about March of 2017, Seth and Melissa Obetz sold the original 55' Hatteras
boat for $430,000.00.

80291021

158.    On or about March 10, 2017, Seth and Melissa Obetz purchased a 64' Caison boat for $1,550,000.00.

159.    Upon information and belief, W&O paid the sum of $155,000.00 as a down payment for the 62' Caison boat.  The remaining purchase price of $1,085,000.00 was financed through a loan issued to G-Force Sportfishing, Inc. with Seth and Melissa Obetz as co-borrowers.

160.    In late 2017 to early 2018, Seth and/or Melissa Obetz made "improvements" to the new boat.   Upon information and belief, Seth Obetz directed W&O to pay for the improvements, which at the Petition Date totaled approximately $780,000.00 in unsecured advances from W&O to Seth and Melissa Obetz's G-Force Sportfishing, Inc. entity.

161.    W&O's business received no economic benefit on account of these payments.

162.    Just prior to the Petition Date, Seth and Melissa Obetz sold the 62' Caison boat for hundreds of thousands of dollars and personally retained the proceeds of the sale.

### Bay House

163.    Seth Obetz, Melissa Obetz and Defendants, Mr. Cramer and Ms. Cramer, purchased a home on the bay in Rock Hall, Maryland, located at 6193 Walnut Landing Road, Rock Hall, MD 21661 (the "Bay House") shortly before the filing of the Petition.

164.    Upon information and belief, to fund his and his wife's half of the purchase price, Seth Obetz directed W&O to pay the sum of $180,000.00 for the purchase of the Bay House.

165.    W&O received no economic benefit on account of the payment to purchase the Bay House.

166.    As the result of W&O's $180,000.00 down payment for the purchase of the Bay House, W&O is the equitable owner of all interests in the Bay House.

80291021

**469 Mountain Boulevard, Wernersville, Pennsylvania**

167.    Upon information and belief, Mr. Lyons engaged in a romantic and adulterous relationship with W&O's human resources manager, Ms. Kelly.

168.    On or about March 22, 2013, Mr. Lyons and Ms. Kelly purchased a home located at 469 Mountain Boulevard, Wernersville, PA 19565 ("469 Mountain Boulevard"), using funds that Mr. Lyons illegally diverted from W&O.

169.    W&O received no economic benefit on account of the purchase of 469 Mountain Boulevard.

170.    As a result of Mr. Lyons and Ms. Kelly's use of cash improperly obtained from W&O to purchase 469 Mountain Boulevard, W&O is the equitable owner of all interests in 469 Mountain Boulevard.

**Captive Insurance Scheme**

171.    On or about June 27, 2009, Mr. Lyons, Seth Obetz, and Bob Obetz, formed Defendant, JSB Retention, LLC ("JSB Retention"), and are its sole members.

172.    Upon information and belief, on or about July 28, 2009, W&O and JSB Retention entered into a Subscription Agreement with Summit Insurance Ltd. ("Summit"), a small, offshore captive insurance company (the "Captive Insurance Scheme").

173.    Pursuant to the Captive Insurance Scheme, Mr. Lyons, Seth Obetz, and/or Bob Obetz directed or caused W&O to obtain shares in, and direct payments to, Summit.

174.    Mr. Lyons, Seth Obetz, Bob Obetz, and/or JSB Retention obtained preferred shares in Summit and reaped all of the dividends and benefits of the Captive Insurance Scheme, while W&O maintained all of the obligations, including paying all of the premiums.

80291021

175.    Upon information and belief, dividends or other payments have been made and are scheduled to continue to be made from the Captive Insurance Scheme to Mr. Lyons, Seth Obetz, Bob Obetz, and/or JSB Retention, to the detriment of W&O and its creditors.

### Seth Energy, LLC

176.    On or about September 12, 2018, Seth Obetz formed Defendant, Seth Energy, LLC ("Seth Energy"), which is an energy supplier serving Lancaster and other southeastern Pennsylvania counties.

177.    Upon information and belief, Seth Energy is affiliated with Defendant, Shipley Energy Company ("Shipley Energy"), which also is an energy supplier serving Lancaster and other southeastern Pennsylvania counties.

178.    Seth Energy and Shipley Energy compete directly with W&O, both in terms of the products and services sold (including heating oil, propane, natural gas, and electricity), and geographic market (southeastern Pennsylvania).

179.    Seth Obetz has solicited W&O's customers to do business with Seth Energy and Shipley Energy, in breach of his fiduciary obligations as an officer of W&O.

180.    Upon his resignation as the President of W&O, Seth Obetz took W&O's confidential and proprietary customer list, and gave the customer list to Shipley Energy.

181.    Upon information and belief, Seth Energy and Shipley Energy have been advising W&O's customers that Seth Energy and Shipley Energy have "taken over" W&O's propane deliveries, leaving customers with the impression that they had no choice in the matter.

182.    In fact, on or about September 24, 2018, after the bankruptcy auction of W&O's assets, Seth Obetz wrote to W&O's customers, providing them with directions on how to transfer

their business from W&O to Seth Energy.  A true and correct copy of the letter sent by Seth Obetz is attached hereto as **Exhibit "D"**.

183.    Additionally, after the filing of the Petition, Seth Energy and/or Shipley Energy used the Debtors' offices and trucks for purposes of their competing businesses, without the Debtors' authorization.

### Share Repurchases

184.    Upon information and belief, and based upon the Trustee's initial investigation, since at least December 1, 2012, W&O has been insolvent as a result of the above-described fraud and its shares have had little to no economic value.

185.    Despite W&O's insolvency, on or about December 19, 2012, W&O agreed to repurchase Molly Obetz's shares for the total principal sum of $1,500,000.00, pursuant to a promissory note (the "Molly Obetz Promissory Note", attached as **Exhibit "E"**).

186.    Upon information and belief, as of the Petition Date, W&O had paid Molly Obetz approximately $500,000.00 towards the purchase price of her shares, despite the fact that the shares are worthless.

187.    Additionally, on or about December 31, 2015, W&O agreed to repurchase Sam Obetz's shares for the total principal sum of $1,500,000.00, pursuant to a promissory note (the "Sam Obetz Promissory Note", attached as **Exhibit "F"**).

188.    Upon information and belief, as of the Petition Date, W&O has paid Sam Obetz approximately $333,680.14 towards the purchase price of his shares, despite the fact that the shares are worthless.

### Molly's Convenience Store

189.    On or about April 24, 1997, W&O entered into a commercial lease agreement with "Obetz Enterprises" (the "1997 Agreement"), whereby "Obetz Enterprises" agreed to lease the property located at 35 Doe Run Road, Manheim, Pennsylvania ("35 Doe Run Road")[5] to W&O for a term of fifteen (15) years, commencing on May 1, 1997, and ending on April 30, 2012.  [A true and correct copy of the 1997 Agreement is attached hereto as **Exhibit "G"**.  See Exh. G, at ¶ 2].

190.    Pursuant to the 1997 Agreement, W&O owned and operated "Molly's Convenience Store and Gas Station" ("Molly's"), a convenience store and gas station located at 35 Doe Run Road, along with all inventory located at Molly's (the "Goods").

191.    W&O's estate also owns certain fuel, gasoline, ethanol, biodiesel, heating oil, kerosene, naphtha, propane, and other renewable energy inventory located at the Molly's location.

192.    W&O's estate also owns certain fixtures, furniture, machinery, equipment and other tangible assets (collectively, the "Equipment") used in W&O's operation of Molly's and located on 35 Doe Run Road.

193.    In exchange for lease of the 35 Doe Run Road property, W&O agreed to pay "Obetz Enterprises" annual rent of $30,000.00 payable in equal, monthly installments of $2,500.00 each.  [Id., at ¶ 3].

---

[5] 55 Doe Run Road, 41 Doe Run Road, 40127 Fenwick Avenue, 202 Greenfield Road, the Doe Run Road Property, 45 Doe Run Road, 1075 White Oak Road, 149 Doe Run Road, the Sayre Property, 211 South Charlotte Street, 535 Stiegel Valley Road, the Bay House, 469 Mountain Boulevard, and 35 Doe Run Road are collectively defined herein as the "Real Properties".

80291021

194.   The 1997 Agreement provided that W&O could use the 35 Doe Run Road property only for the following purpose:  "retail space, convenience store, car wash and other lawful purposes desired by [W&O]."  [Id., at ¶ 4].

195.   At the time of execution of the 1997 Agreement, "Obetz Enterprises" constituted a fictitious name used by Defendants, Seth Obetz, Molly Obetz, and Sam Obetz.  [A true and correct copy of the Fictitious Name Registration for "Obetz Enterprises" is attached hereto as **Exhibit "H"**].

196.   At the time of execution of the 1997 Agreement, Seth Obetz was an owner and shareholder of W&O.

197.   Although the 1997 Agreement appears to have been signed by Seth Obetz, on behalf of "Obetz Enterprises," and Robert W. Obetz, Jr., on behalf of W&O, the notary page to the 1997 Agreement states that "Robert Seth Obetz" signed the 1997 Agreement on behalf of "Obetz Enterprises" and that "R. Seth Obetz" signed the 1997 Agreement on behalf of W&O. [See Exh. G, at p. 7].

198.   Thus, Seth Obetz signed the 1997 Agreement on behalf of both "Obetz Enterprises" (the landlord) and W&O (the tenant).

199.   After execution of the 1997 Agreement, W&O financed the construction of Molly's on the 35 Doe Run Road property in accordance with the intended use of the 35 Doe Run Road property as set forth in the 1997 Agreement.  [Id., at ¶ 4].

200.   W&O invested approximately $2.3 million in the construction of Molly's.

201.   Neither Seth Obetz nor "Obetz Enterprises" contributed money to the construction of Molly's.

202.    In addition to investing substantial financial resources in the construction of Molly's, W&O also made monthly rent payments to "Obetz Enterprises" in accordance with the terms of the 1997 Agreement for the period of May 1, 1997, through June 1, 2007.

203.    The monthly rent that W&O paid to "Obetz Enterprises" subsequently increased from $2,500.00 (as provided for in the 1997 Agreement) to $3,952.52—an increase not provided for in the 1997 Agreement.

204.    Further, W&O often made excessive, purported "rent payments" to "Obetz Enterprises" on occasions when "Obetz Enterprises" needed funds, even though W&O did not owe such payments to "Obetz Enterprises."

205.    For example, from September 1, 2005 – August 31, 2006, W&O paid "Obetz Enterprises" $135,134.00 in rent for the 35 Doe Run Road property, even though the 1997 Agreement provided for annual rent of only $30,000.00.

206.    On June 1, 2007, "Obetz Enterprises" and W&O executed an Amendment to the 1997 Agreement, increasing the annual rent for lease of the 35 Doe Run Road property from $30,000.00 to $78,000.00—a more than 150% increase.   [A true and correct copy of the Amendment is attached hereto as **Exhibit "I"**.  See Exh. I, at ¶ 2].

207.    The Amendment stated that the increase in the annual rent was effective as of September 1, 2006, and that all additional rents provided for under the Amendment for periods prior to execution of the Amendment must be paid within ten (10) days following execution of the Amendment.  [Id., at ¶ 3].

208.    Seth Obetz executed the Amendment on behalf of "Obetz Enterprises."  [See Exh. I, at p. 2].

36

209.    W&O paid the increased annual rent for the 35 Doe Run Road property in accordance with the Amendment.

210.    In or around late 2009, Seth Obetz purchased the other "Obetz Enterprises" partners' interests in the 35 Doe Run Road property and became sole owner of the 35 Doe Run Road property.   [A true and correct copy of the December 18, 2009 Deed transferring full ownership of the 35 Doe Run Road property to the Defendant is attached hereto as **Exhibit "J"**].

211.    When Seth Obetz purchased the other "Obetz Enterprises" partners' interests in the 35 Doe Run Road property, the property was valued at $1,300,000.00.

212.    $800,000.00 of the $1,300,000.00 value of the 35 Doe Run Road property was attributed directly to Molly's.

213.    The 1997 Agreement provided for a lease term ending on April 30, 2012, and stated that it was binding on all successors to "Obetz Enterprises."  [Exh. G, at ¶¶ 2, 20(v)].

214.    Nevertheless, on January 1, 2010, W&O entered into a new commercial lease agreement with Seth Obetz, individually, for lease of the 35 Doe Run Road property (the "2010 Agreement").   [A true and correct copy of the 2010 Agreement is attached hereto as **Exhibit "K"**].

215.    The 2010 Agreement provided for an initial term commencing on February 1, 2010, and ending on March 1, 2011,[6] which W&O could renew thereafter on a month-to-month basis. [Exh. K, at ¶ 1].

216.    In the 2010 Agreement, W&O agreed to pay Seth Obetz the annual rent of $78,000.00 payable in equal, monthly installments of $6,500.00 each.  [Id., at ¶ 2].

---

[6] The 2010 Agreement provides that the initial term commenced on February 1, 2010, and ended on March 1, 2010. [See Exh. K, at ¶ 1].  Upon information belief, this is a typographical error.  The initial term of the 2010 Agreement actually ended on March 1, 2011.

217.    W&O continued to operate Molly's on the 35 Doe Run Road property and continued to pay Seth Obetz monthly rent for the 35 Doe Run Road property in accordance with the terms of the 2010 Agreement.

218.    On January 1, 2011, W&O entered into another commercial lease agreement with Seth Obetz, individually, for lease of the 35 Doe Run Road property (the "2011 Agreement"). [A true and correct copy of the 2011 Agreement is attached hereto as **Exhibit "L"**].

219.    The 2011 Agreement provided for an initial term commencing on January 1, 2011, and ending on January 1, 2012, which W&O could renew thereafter on a month-to-month basis.  [Exh. L, at ¶ 1].

220.    In exchange for use of the 35 Doe Run Road property, W&O agreed to pay Seth Obetz annual rent of $98,000.00 payable in equal, monthly installments of $8,200.00 each, representing a more than $20,000.00 increase in annual rent for the 35 Doe Run Road property from the previous year.  [Id., at ¶ 2].

221.    W&O continued to operate Molly's on the 35 Doe Run Road property and continued to pay Seth Obetz rent for the 35 Doe Run Road property in accordance with the terms of the 2011 Agreement.

222.    On January 1, 2012, the last day of the initial term of the 2011 Agreement, Mr. Lyons sent Seth Obetz written notice that W&O was renewing the lease on the 35 Doe Run Road property on a month-to-month basis with the understanding that the terms and conditions set forth in the "original lease" were still in effect and that the monthly rental payment of $8,200.00 would continue unless Seth Obetz notified W&O otherwise.  [A true and correct copy of the January 1, 2012 renewal notice is attached hereto as **Exhibit "M"**].

223.    Thereafter, W&O continued to operate Molly's on the 35 Doe Run Road property and continued to pay Seth Obetz rent for the 35 Doe Run Road property in accordance with the terms of the 2011 Agreement.

224.    On September 1, 2012, W&O entered into another commercial lease agreement with Seth Obetz, individually, for lease of the 35 Doe Run Road property (the "2012 Agreement").  [A true and correct copy of the 2012 Agreement is attached hereto as **Exhibit "N"**].

225.    The 2012 Agreement provided for an initial term commencing on September 1, 2012, and ending on September 1, 2013, which W&O could renew thereafter on a month-to-month basis.  [Exh. N, at ¶ 1].

226.    In exchange for the lease of the 35 Doe Run Road property, W&O agreed to pay Seth Obetz annual rent of $144,000.00 payable in equal, monthly installments of $12,000.00 each, representing a nearly 50% increase in annual rent from the previous year.  [Id., at ¶ 2].

227.    The 2012 Agreement provides that, if W&O fails at any time to pay the rent due under the 2012 Agreement and the default continues for fifteen (15) days after Seth Obetz gives written notice of the default to W&O, or W&O defaults under any other covenant or condition of the 2012 Agreement and the default continues for thirty (30) days after Seth Obetz gives written notice of the default to W&O, Seth Obetz may declare the lease term ended and terminated by giving W&O written notice of such intention.  [Id., at ¶ 15].

228.    Following execution of the 2012 Agreement, W&O continued to operate Molly's on the 35 Doe Run Road property and continued to pay Seth Obetz rent for the 35 Doe Run Road property in accordance with the terms of the 2012 Agreement.

229.    Following expiration of the initial term of the 2012 Agreement on September 1, 2013, the leasehold under the 2012 Agreement continued on the same terms and conditions set forth in the 2012 Agreement.

230.    W&O continued to operate Molly's on the 35 Doe Run Road property until the filing of the Petition.

231.    Further, as of today's date, W&O is current on paying its rent for the 35 Doe Run Road property to the bank that holds the mortgage on the 35 Doe Run Road property, pursuant to an assignment of rents.

232.    On the Schedule G (Executory Contracts and Unexpired Leases) that W&O filed in the pending bankruptcy proceeding on July 24, 2018 [D.I. 220], and on the Amended Schedule G that W&O filed on October 2, 2018 [D.I. 449], W&O identified its lease of the 35 Doe Run Road property with Seth Obetz as "ongoing."  [True and correct copies of Schedule G and Amended Schedule G are attached hereto as **Exhibit "O"**].

233.    Seth Obetz has never provided W&O with written notice of any alleged default under the 2012 Agreement or any notice of termination of the 2012 Agreement.

234.    Thus, W&O retains a valid leasehold interest in the 35 Doe Run Road property.

235.    On multiple occasions between 2010 and 2018, Seth Obetz required W&O to pay rent on the 35 Doe Run Road property in excess of the amount of rent required under the terms of the 2010 Agreement, 2011 Agreement, and 2012 Agreement.

236.    Upon information and belief, Seth Obetz co-mingled the excess rent that W&O paid on the 35 Doe Run Road property to pay the monthly mortgage payments on several properties described above, including 1075 White Oak Road, 149 Doe Run Road, and 211 South Charlotte Street.

237.    Additionally, the annual rent for the 35 Doe Run Road property has significantly increased as set forth below:

| Year(s) | Annual Rent | Percentage Increase |
|---------|-------------|---------------------|
| 1997 – August 31, 2006 | $30,000.00 | N/A |
| September 1, 2006 – December 31, 2010 | $78,000.00 | 160% |
| January 1, 2011 – August 31, 2012 | $98,400.00 | 26% |
| September 1, 2012 – Present | $144,000.00 | 46% |

238.    On July 21, 2018, after W&O filed its Petition, Seth Obetz sent an email to the Trustee and its legal counsel advising that Seth Obetz intended to re-open Molly's and to operate Molly's out of the facility that W&O constructed on the 35 Doe Run Road property.

239.    Upon receiving Seth Obetz's email, legal counsel for the Trustee sent an email to Seth Obetz's legal counsel advising that W&O's estate owns Molly's and all of the personal property located in Molly's, and that any attempt by Seth Obetz to take control of and/or use such property would constitute a willful violation of the automatic stay.

240.    Seth Obetz's legal counsel responded that it disagreed with the Trustee's position regarding ownership of Molly's and the personal property located therein.  [A true and correct copy of the July 21, 2018 email communications is attached hereto as **Exhibit "P"**].

241.    Following these email communications, the Trustee obtained a July 27, 2018 news article reporting that Seth Obetz planned to re-open Molly's in mid-August 2018.  [A true and correct copy of the July 27, 2018 news article is attached hereto as **Exhibit "Q"**].

242.    Upon information and belief, Seth Obetz's wife, Melissa Obetz, is operating a Facebook page for "Molly's Convenience Store" on which she posted a July 20, 2018 entry,

80291021

stating that her family intends to reopen Molly's on the 35 Doe Run Road property.  [A true and correct copy of the Facebook Page is attached hereto as **Exhibit "R"**].

F.     **Debtors' Taxes**

243.    Upon information and belief, Seth Obetz, Bob Obetz, Mr. Lyons, Ms. Avilez, Ms. Connelly, Marjorie Obetz, Melissa Obetz, Ms. Lyons, Molly Obetz, Sam Obetz, and/or Ms. Kelly used the Debtors' funds to (i) purchase the Real Properties for their own personal benefit and for the benefit of 149 Doe Run Road, LP, 149 Doe Run Road, GP, LLC, 202 Greenfield, LP, 202 Greenfield General, LLC, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, OL Partners, LLC, JW Bishop Properties, LLC, and Lyons & Obetz, and (ii) pay personal expenses and/or the expenses of other business entities in which the Debtors and/or Seth Obetz, Bob Obetz, Mr. Lyons, Ms. Avilez, Ms. Connelly, Marjorie Obetz, Melissa Obetz, Ms. Lyons, Molly Obetz, Sam Obetz, or Ms. Kelly were involved, including, but not limited to, 149 Doe Run Road, LP, 149 Doe Run Road, GP, LLC, 202 Greenfield, LP, 202 Greenfield General, LLC, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, OL Partners, LLC, G-Force Sportsfishing, Inc., JW Bishop Properties, LLC and Lyons & Obetz.

244.    On W&O and Amerigreen Energy's Bankruptcy Schedule E/F, W&O and Amerigreen Energy list (i) the Pennsylvania Department of Revenue, Bureau of Trust Fund Taxes as a creditor holding a priority unsecured claim in an unknown amount on account of Pennsylvania Sales and Use Taxes collected, and (ii) the Pennsylvania Department of Revenue Bureau of Motor and Alternative Fuel Taxes as a creditor holding a priority unsecured claim in an unknown amount on account of Alternative Fuel Taxes.

245.    Upon information and belief, at all relevant times, the Pennsylvania Department of Revenue was a creditor of the Debtors and held matured or unmatured claims against the

42

Debtors that are allowable under 11 U.S.C. § 502 or that are not allowable only under 11 U.S.C. § 502(e).

## COUNT I – Against Mr. Lyons and the Co-Conspirators
### FRAUD

246.    The Trustee incorporates herein by reference the preceding paragraphs as if fully set forth herein at length.

247.    As set forth above, for at least the past five (5) years, Mr. Lyons and the Co-Conspirators routinely made material misrepresentations that they knew to be false, including grossly inflating and overstating the financial performance of the Debtors.

248.    Mr. Lyons and the Co-Conspirators made these material misrepresentations in a fraudulent manner to, among other things, induce multiple lenders to advance funds to the Debtors.

249.    The Debtors, their estates, and creditors justifiably relied on the material misrepresentations and were injured as a proximate result.

250.    Further, Mr. Lyons and the Co-Conspirators, on numerous occasions, (1) engaged in conduct to deceive and conceal their wrongful acts; and/or (2) failed to disclose material facts with the intent that others would rely upon the misrepresentations or failures to disclose, and/or with the intent that such other parties would act in reliance without material information they were concealing and which, under the circumstances, they had a duty to disclose.

251.    The Debtors, their estates and creditors, in fact, justifiably relied on these misrepresentations and omissions and were injured as a proximate result.

252.    Accordingly, Mr. Lyons and the Co-Conspirators are liable in damages for such injuries for which the Trustee on behalf of the Debtors now sues them to recover, jointly and severally.

80291021

253.     The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the fraud perpetuated by Mr. Lyons and the Co-Conspirators nor its overall duration has not yet been determined.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Mr. Lyons and the Co-Conspirators:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

### COUNT II – Against Mr. Lyons and the Co-Conspirators
### CIVIL CONSPIRACY TO COMMIT FRAUD

254.     The Trustee incorporates herein by reference the preceding paragraphs as if fully set forth herein at length.

255.     Mr. Lyons and the Co-Conspirators conspired and combined to engage in a common scheme to commit fraud as described herein.

256.     As a direct and proximate result of the agreement for an unlawful or improper purpose, including the acts described above, which were taken by Mr. Lyons and the Co-Conspirators in furtherance of the conspiracy, the Debtors, their estates and creditors have sustained substantial damages for which Mr. Lyons, Ms. Avilez and Ms. Connelly are liable and for which the Trustee now sues them to recover.

257.     The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because the full extent of the fraud committed by Mr. Lyons and the Co-Conspirators has not yet been determined.

80291021

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Mr. Lyons and the Co-Conspirators:

(a)    awarding the Trustee monetary damages in an amount to be determined;

(b)    awarding the Trustee its reasonable attorneys' fees and costs;

(c)    awarding the Trustee punitive damages; and

(d)    awarding the Trustee such other and further relief as the Court deems just and proper.

**COUNT III – Against the D&O Defendants**
**BREACH OF FIDUCIARY DUTY**

258.    The Trustee incorporates herein by reference the preceding paragraphs as if fully set forth herein at length.

259.    By reason of their positions as officers and directors of the Debtors, the D&O Defendants owed the Debtors the fiduciary obligations of good faith, loyalty, and due care.

260.    Each of the D&O Defendants owed the Debtors the fiduciary duty to:

A.    Exercise good faith and diligence in the administration of the affairs of the Debtors;

B.    Act with an honesty of purpose and in the best interests and welfare of the Debtors;

C.    Implement adequate internal controls and procedures;

D.    Assure that the financial condition and business prospects of the Debtors were reported truthfully and accurately;

E.    Disclose material information in their possession;

F.    Ensure that a reasonable information and reporting system existed;

G.    Ensure that the Debtors complied with all applicable state and federal laws; and

H.    Put the affairs of the Debtors above their own.

80291021

261.   Upon the Debtors' ultimate insolvency, the D&O Defendants also owed fiduciary duties to the Debtors' creditors as well.

262.   By engaging in, consenting to, or ignoring the specific acts of wrongful mismanagement described above, the D&O Defendants in their positions of control and as a control group, each breached their fiduciary obligations in the following ways:

A.   Converting money or other assets belonging to the Debtors;

B.   Usurping the Debtors' credit or opportunities for personal gain;

C.   Causing and/or allowing the Debtors to misrepresent their financial condition and business prospects;

D.   Failing to implement or cause to be implemented internal controls that would have prevented the wrongdoing alleged above;

E.   Abusing or allowing abuse of positions of authority in the Debtors' business to the detriment of the Debtors;

F.   Failing to conduct proper and effective coordination of activities associated with operations and proper disclosure of economic, operational and financial information;

G.   Failing to hire and retain knowledgeable persons rather than favoring former associates for key positions;

H.   Failing to fulfill their fiduciary obligation to manage the Debtors' business with the best interests of the Debtors in mind;

I.   Failing to consult with professionals or make informed decisions by seeking advice from financial and legal advisors in evaluating the Debtors' financial status and the best course of action for the Debtors;

J.   Failing to timely, regularly and accurately provide financial information;

K.   Misapplying funds and loan proceeds received under improper circumstances;

L.      Using assets, proceeds, funds and other property of the Debtors for personal gain or use;

M.      Usurpation of opportunities belonging to the Debtors for personal gain;

N.      Withholding information concerning their activities, the Debtors' affairs and condition; and

O.      Such other acts as will be determined during discovery.

263.    The D&O Defendants' wrongful mismanagement was either intentionally wrongful, uninformed, unreasonable or was not undertaken with due care, independence, in good faith, or with an honest belief that the actions were in the best interests of the Debtors.

264.    Similarly, the wrongful acts, neglect, misstatements and omissions were not in accordance with a plausible strategy to maximize the Debtors' profits, or as a result of valid business judgment.

265.    Instead, the D&O Defendants' breach of their fiduciary duties showed a disregard for the best interests of the Debtors.

266.    As a direct and proximate result of the D&O Defendants' wrongful actions, omissions, mismanagement, including breaches of fiduciary duty, neglect, misstatements, omissions and/or acts described herein, the Debtors, their estates and creditors have sustained substantial damages for which the D&O Defendants are liable and for which the Trustee, on behalf of the Debtors, now sues them to recover, jointly and severally as allowed by law.

267.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the D&O Defendants nor its duration has been determined.

80291021

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the D&O Defendants:

(a)  awarding the Trustee monetary damages in an amount to be determined;

(b)  awarding the Trustee its reasonable attorneys' fees and costs;

(c)  awarding the Trustee punitive damages; and

(d)  awarding the Trustee such other and further relief as the Court deems just and proper.

**COUNT IV – Against the D&O Defendants**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

268.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

269.    As set forth more fully above, one or more of the D&O Defendants breached the fiduciary duties that they owed to the Debtors.

270.    At all relevant times, each of the D&O Defendants knowingly participated in, and gave substantial assistance or encouragement to, the breach of fiduciary duties and wrongful mismanagement that permeated the day-to-day management of the Debtors as described herein.

271.    Upon information and belief, each of the D&O Defendants assisted, actively participated in, or failed to perform his/her obligation to monitor against: (i) the wrongful mismanagement of the Debtors; (ii) theft; (iii) improper diversion of funds; (iv) defrauding of financial institutions and other creditors; (v) the usurpation of opportunities belonging to the Debtors for personal gain; and (vi) the failure to disclose the true financial condition and business prospects of the Debtors.

272.    As a direct and proximate result of the D&O Defendants' wrongful actions, omissions, and mismanagement, including breaches of fiduciary duty, neglect, misstatements,

80291021

omissions and/or acts and omissions described above, the Debtors, their estates and creditors have sustained substantial damages for which the D&O Defendants are liable.

273.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the D&O Defendants nor its duration has been determined.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the D&O Defendants:

(a)    awarding the Trustee monetary damages in an amount to be determined;

(b)    awarding the Trustee its reasonable attorneys' fees and costs;

(c)    awarding the Trustee punitive damages; and

(d)    awarding the Trustee such other and further relief as the Court deems just and proper.

## COUNT V – Against the D&O Defendants and the Co-Conspirators
### NEGLIGENCE

274.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

275.    Each of the D&O Defendants and Co-Conspirators owed a duty of care to the Debtors to perform their duties as officers and directors in a reasonable manner.

276.    Each of the D&O Defendants and Co-Conspirators breached their duties to the Debtors by failing to perform their duties as officers and directors in a reasonable manner.

277.    By engaging in the foregoing misconduct and/or omissions, the D&O Defendants and the Co-Conspirators have acted with negligence and/or gross negligence as further described herein toward the Debtors.

278.    The negligence of the D&O Defendants and Co-Conspirators is the direct and proximate cause of the damages suffered by the Debtors, their estates and creditors.

279.     The D&O Defendants and Co-Conspirators actions were willful, wanton, and malicious, and undertaken with the specific intent to harm the Debtors economically, thereby warranting the imposition of punitive damages.

280.     The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the D&O Defendants and their Co-Conspirators nor its duration has been determined.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the D&O Defendants and Co-Conspirators:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

### COUNT VI – Against the D&O Defendants and Co-Conspirators
### NEGLIGENT MISREPRESENTATION

281.     The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

282.     As set forth above, the D&O Defendants and Co-Conspirators misrepresented the true financial condition and business prospects of the Debtors to certain stockholders, creditors and other interested parties.

283.     The D&O Defendants and Co-Conspirators either knew of the misrepresentations, made the misrepresentations without knowledge of their truth or falsity, or under circumstances in which they should have known they were false.

284.     The misrepresentations were made with the intent to induce others to act or rely upon the misrepresentations.

80291021

285.    The Debtors and creditors justifiably relied upon the D&O Defendants and Co-Conspirators' negligent misrepresentations and non-disclosures concerning a seemingly financially secure company.

286.    The reliance on these misrepresentations was to the detriment of the Debtors, estate and creditors and caused significant harm to the same.

287.    The D&O Defendants and Co-Conspirators actions were willful, wanton, and malicious, and undertaken with the specific intent to economically harm the Debtors, thereby warranting the imposition of punitive damages.

288.    As a direct and proximate result of the D&O Defendants and Co-Conspirators' actions, omissions and wrongful mismanagement, including breaches of fiduciary duty, neglect, misstatements, negligence, negligent statements, omissions and/or acts described above, the Debtors, their estates and creditors have sustained substantial damages for which the D&O Defendants and Co-Conspirators are liable.

289.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the D&O Defendants and their Co-Conspirators nor its duration has been determined.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the D&O Defendants and Co-Conspirators:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

80291021

<u>**COUNT VII – Against the D&O Defendants and Co-Conspirators**</u>
**CIVIL CONSPIRACY**

290.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

291.    In the alternative, the D&O Defendants and Co-Conspirators conspired and combined to engage in a common scheme of wrongful mismanagement described herein.

292.    As a direct and proximate result of the agreement for an unlawful or improper purpose, and acts in furtherance thereof, including wrongful mismanagement, breaches of fiduciary duty, neglect, misstatements, omissions and/or acts as described herein by the D&O Defendants and Co-Conspirators, the Debtors, their estate and creditors have sustained substantial damages for which the D&O Defendants and Co-Conspirators are liable.

293.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the D&O Defendants and their Co-Conspirators nor its duration has been determined.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against the D&O Defendants and Co-Conspirators:

(a)    awarding the Trustee monetary damages in an amount to be determined;

(b)    awarding the Trustee its reasonable attorneys' fees and costs;

(c)    awarding the Trustee punitive damages; and

(d)    awarding the Trustee such other and further relief as the Court deems just and proper.

<u>**COUNT VIII – Against 202 Greenfield LP**</u>
**BREACH OF THE 202 GREENFIELD LP PROMISSORY NOTE**

294.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

295.   The 202 Greenfield Promissory Note is a valid and binding contract.

296.   202 Greenfield LP breached the 202 Greenfield Promissory Note by, among other things, failing to make all payments when due.

297.   As a result of 202 Greenfield LP's breach of the 202 Greenfield Promissory Note, W&O has suffered damages in the amount of $235,946.94, plus continuing contractual interest from July 13, 2018, and attorneys' fees and costs.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against 202 Greenfield LP:

(a)   awarding the Trustee monetary damages in an amount to be determined;

(b)   awarding the Trustee its reasonable attorneys' fees and costs; and

(c)   awarding the Trustee such other and further relief as the Court deems just and proper.

## COUNT IX – Against JW Bishop Properties, LLC
**BREACH OF THE JW BISHOP PROMISSORY NOTE**

298.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

299.   The JW Bishop Promissory Note is a valid and binding contract.

300.   JW Bishop Properties, LLC breached the JW Bishop Promissory Note by, among other defaults, failing to make all payments when due.

301.   As a result of JW Bishop Properties, LLC's breach of the JW Bishop Promissory Note, W&O has suffered damages in the amount of $371,605.37, plus continuing contractual interest from July 13, 2018, and attorneys' fees and costs.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against JW Bishop Properties, LLC:

(a)   awarding the Trustee monetary damages in an amount to be determined;

(b)      awarding the Trustee its reasonable attorneys' fees and costs; and

(c)      awarding the Trustee such other and further relief as the Court deems just and proper.

## COUNT X – Against All Defendants
## UNJUST ENRICHMENT

302.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

303.    As set forth above, Defendants have received substantial benefits conferred upon them through their wrongful conduct, including, but not limited to, the taking of the Debtors' customer list and information.

304.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because the full extent of the wrongful conduct by Defendants has not yet been determined.

305.    It would be inequitable for Defendants to retain the benefits conferred upon them.

306.    Additionally, it would be unjust for the spouses, families members, and paramours of Mr. Lyons, Seth Obetz, and Bob Obetz (including, Mr. and Ms. Cramer and Ms. Kelly), to retain the benefit of assets that were obtained from the Debtors as a result of the wrongful conduct of the Defendants as set forth fully herein.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against all Defendants:

(a)      awarding the Trustee monetary damages in an amount to be determined;

(b)      awarding the Trustee its reasonable attorneys' fees and costs;

(c)      awarding the Trustee punitive damages; and

(d)      awarding the Trustee such other and further relief as the Court deems just and proper.

80291021

<u>**COUNT XI– Against All Defendants**</u>
**CONVERSION**

307.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

308.    As set forth above, Defendants have taken possession of property, including, but not limited to, substantial sums of money and customer lists and information, belonging to the Debtors.

309.    In doing so, they have wrongfully converted property belonging to the Debtors for their own benefit.

310.    The Debtors have been injured as a result of Defendants' wrongful conversion of the Debtors' property.

311.    The exact amount of the damages sustained by the Debtors, creditors and estates is currently unknown because neither the full extent of the wrongful conduct of the Defendants nor its duration has been determined.

312.    Defendants' actions were willful, wanton, and malicious, and undertaken with the specific intent to economically harm the Debtors, thereby warranting the imposition of punitive damages.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against all Defendants:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

80291021

## COUNT XII – Against Seth Obetz
### AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547

313.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

314.    On or within one (1) year before the Petition Date (the "Preference Period"), certain Debtors transferred and/or caused to be transferred, to or for the benefit of Seth Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $452,805.00 as more specifically set forth and listed as SO Tr. 1 – SO Tr. 19 (the "Seth Obetz Preferential Transfers") in the schedule attached hereto as **Exhibit "S"** and incorporated by reference herein.  See **Exhibit "S"** at SO Tr. 1 – SO Tr. 19.

315.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Seth Obetz during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Seth Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Seth Obetz Preferential Transfers and/or the debts paid thereby, (b) additional Seth Obetz Preferential Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Seth Obetz, and/or (d) additional causes of action (including, but not limited to, additional causes of action under Chapter 5 of the Bankruptcy Code) (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

80291021

316.    At the time that each Seth Obetz Preferential Transfer was made, Seth Obetz was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

317.    Each Seth Obetz Preferential Transfer constituted a transfer of an interest in property of the Debtors.  The bank account from which each Seth Obetz Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

318.    Each Seth Obetz Preferential Transfer was made, or caused to be made, to or for the benefit of Seth Obetz.

319.    Each Seth Obetz Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Seth Obetz.  Upon information and belief, the proceeds of certain Seth Obetz Preferential Transfers that were paid to "Molly's Convenience Store" were directly received by Seth Obetz and/or subsequently transferred by "Molly's Convenience Store" to, or for the benefit of Seth Obetz.

320.    Each Seth Obetz Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Seth Obetz prior to the date on which such Seth Obetz Preferential Transfer was made.

321.    Seth Obetz was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Seth Obetz Preferential Transfer was made.

322.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Seth Obetz Preferential Transfers were made.

323.    The Seth Obetz Preferential Transfers enabled Seth Obetz to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Seth

80291021

Obetz Preferential Transfers had not been made and if Seth Obetz received payment of the debt(s) relating to each such Seth Obetz Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

324.    Based on the foregoing, the Seth Obetz Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Seth Obetz:

(a)    declaring that the Seth Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Seth Obetz constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the Seth Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Seth Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Seth Obetz in an amount equal to (i) the Seth Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Seth Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Seth Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XIII – Against Seth Obetz
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

325.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

326.    On or within two (2) years before the Petition Date (the "Fraudulent Transfer Period"), certain Debtors transferred and/or caused to be transferred, to or for the benefit of Seth

80291021

Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $970,287.00, as more specifically set forth and listed on **Exhibit "S"** as SO Tr. 1 – SO Tr. 39 (the "Seth Obetz Fraudulent Transfers").

327.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Seth Obetz and not in the ordinary course of business during the Fraudulent Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Seth Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Seth Obetz Fraudulent Transfers and/or the debts paid thereby, (b) additional Seth Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Seth Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

328.     Each of the Seth Obetz Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

329.     The Seth Obetz Fraudulent Transfers were made within two (2) years prior to the Petition Date.

330.     The Seth Obetz Fraudulent Transfers were made to or for the benefit of Seth Obetz.

331.     At the time that each Seth Obetz Fraudulent Transfer was made, Seth Obetz was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an

"insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

332.    The Seth Obetz Fraudulent Transfers made to Seth Obetz were not made in the ordinary course of business.

333.    To the extent that one or more of the Seth Obetz Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Seth Obetz Fraudulent Transfers.

334.    The Debtors were insolvent on the dates of the Seth Obetz Fraudulent Transfers or became insolvent as a result of the Seth Obetz Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Seth Obetz Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

335.    Based upon the foregoing, the Seth Obetz Fraudulent Transfers made by the Debtors to Seth Obetz constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Seth Obetz:

(a)    declaring that the Seth Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Seth Obetz constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the Seth Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Seth Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the

60

full value of, and awarding judgment against Seth Obetz in an amount equal to (i) the Seth Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Seth Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Seth Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)       awarding the Trustee such other and further relief as may be just and proper.

**COUNT XIV– Against Seth Obetz**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544**

336.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

337.    On or within four (4) years before the Petition Date (the "PUVTA Transfer Period"), certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Seth Obetz, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $1,846,563.64 as more specifically set forth and listed on **Exhibit "S"** as SO Tr. 1 – SO Tr. 77 (the "Seth Obetz PUVTA Transfers" and collectively with the Seth Obetz Preferential Transfers and the Seth Obetz Fraudulent Transfers, the "Seth Obetz Transfers").

338.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Seth Obetz and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of Seth Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers

61

that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date. The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Seth Obetz PUVTA Transfers and/or the debts paid thereby, (b) additional Seth Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Seth Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

339.    Each Seth Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

340.    Each Seth Obetz PUVTA Transfer was made to or for the benefit of Seth Obetz.

341.    At all times relevant to the Seth Obetz PUVTA Transfers, Seth Obetz held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

342.    At the time that each Seth Obetz PUVTA Transfer was made, Seth Obetz (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Seth Obetz PUVTA Transfers from each Debtor to himself. As such, each Seth Obetz PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

343.    Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the

80291021

Debtors.  Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Seth Obetz in the form of property in exchange for each Seth Obetz PUVTA Transfer.  Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Seth Obetz in the form of satisfaction of an antecedent debt due to Seth Obetz.

344.    At the time that each Seth Obetz PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

345.    Each Seth Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

346.    Each Seth Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Seth Obetz.

347.    Based upon the foregoing, the Seth Obetz PUVTA Transfers made by the Debtors to Seth Obetz constitute fraudulent transfers under 12 Pa. C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Seth Obetz pursuant to 11 U.S.C. § 550.

348.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania

Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and

may recover such fraudulent transfers from Seth Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Seth Obetz:

(a)  declaring that the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Seth Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa. C.S.A. § 5104 and 11 U.S.C. § 544;

(b)  avoiding the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Seth Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Seth Obetz in an amount equal to (i) the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Seth Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)  awarding the Trustee such other and further relief as may be just and proper.

## COUNT XV– Against Seth Obetz
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

349.  The Trustee incorporates herein by reference the preceding paragraphs of the

Complaint as if set forth at length herein.

350.  On or within the PUVTA Transfer Period, certain Debtors transferred and/or

caused to be transferred, to or for the benefit of, Seth Obetz, the Seth Obetz PUVTA Transfers,

as more specifically set forth and listed on **Exhibit "S"** as SO Tr. 1 – SO Tr. 77.

64

351.     Each Seth Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

352.     Each Seth Obetz PUVTA Transfer was made to or for the benefit of Seth Obetz.

353.     At all times relevant to the Seth Obetz PUVTA Transfers, Seth Obetz held a matured or unmatured unsecured claim against the Debtors that arose prior to the Seth Obetz PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

354.     At the time that each Seth Obetz PUVTA Transfer was made, Seth Obetz (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Seth Obetz PUVTA Transfers from each Debtor to himself.

355.     Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Seth Obetz in the form of property in exchange for each Seth Obetz PUVTA Transfer.  Each Seth Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Seth Obetz in the form of satisfaction of an antecedent debt due to Seth Obetz.

356.     At the time of each Seth Obetz PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Seth Obetz PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of

80291021

assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

357.    Each Seth Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

358.    Each Seth Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Seth Obetz.

359.    Based upon the foregoing, the Seth Obetz PUVTA Transfers made by the Debtors to Seth Obetz constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Seth Obetz pursuant to 11 U.S.C. § 550.

360.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Seth Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Seth Obetz:

(a)    declaring that the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Seth Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)    avoiding the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Seth Obetz return to the Trustee, pursuant to 11 U.S.C. § 550,

the full value of, and awarding judgment against Seth Obetz in an amount equal to (i) the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Seth Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Seth Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

<u>COUNT XVI – Against Bob Obetz</u>
**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**

361.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

362.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Bob Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $60,000.00, as more specifically set forth and listed as BO Tr. 1 (the "<u>Bob Obetz Preferential Transfers</u>") in the schedule attached hereto as **Exhibit "T"** and incorporated by reference herein.  <u>See</u> **Exhibit "T"** at BO Tr. 1.

363.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Bob Obetz and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Bob Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Bob Obetz Fraudulent Transfers and/or the debts paid thereby, (b) additional Bob Obetz Transfers (as defined below), (c) additional defendants,

67

including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Bob Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

364.    At the time that each Bob Obetz Preferential Transfer was made, Bob Obetz was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

365.    Each Bob Obetz Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Bob Obetz Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

366.    Each Bob Obetz Preferential Transfer was made, or caused to be made, to or for the benefit of Bob Obetz.

367.    Each Bob Obetz Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Bob Obetz.

368.    Each Bob Obetz Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Bob Obetz prior to the date on which such Bob Obetz Preferential Transfer was made.

369.    Bob Obetz was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Bob Obetz Preferential Transfer was made.

370.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Bob Obetz Preferential Transfers were made.

371.    The Bob Obetz Preferential Transfers enabled Bob Obetz to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Bob Obetz Preferential Transfers had not been made and if Bob Obetz received payment of the debt(s) relating to each such Bob Obetz Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

372.    Based on the foregoing, the Bob Obetz Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Bob Obetz:

(a)    declaring that the Bob Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Bob Obetz constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the Bob Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Bob Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Bob Obetz in an amount equal to (i) the Bob Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Bob Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Bob Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## <u>COUNT XVII – Against Bob Obetz</u>
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

373.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

374.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Bob Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $153,860.00, as more specifically set forth and listed on **Exhibit "T"** as BO Tr. 1 – BO Tr. 13 (the "Bob Obetz Fraudulent Transfers").

375.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Bob Obetz and not in the ordinary course of business during the Fraudulent Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Bob Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Bob Obetz Fraudulent Transfers and/or the debts paid thereby, (b) additional Bob Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Bob Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

376.    Each of the Bob Obetz Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

377.    The Bob Obetz Fraudulent Transfers were made within two (2) years prior to the Petition Date.

378.    The Bob Obetz Fraudulent Transfers were made to or for the benefit of Bob Obetz.

80291021

379.     At the time that each Bob Obetz Fraudulent Transfer was made, Bob Obetz was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

380.     The Bob Obetz Fraudulent Transfers made to Bob Obetz were not made in the ordinary course of business.

381.     To the extent that one or more of the Bob Obetz Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Bob Obetz Fraudulent Transfers.

382.     The Debtors were insolvent on the dates of the Bob Obetz Fraudulent Transfers or became insolvent as a result of the Bob Obetz Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Bob Obetz Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

383.     Based upon the foregoing, the Bob Obetz Fraudulent Transfers made by the Debtors to Bob Obetz constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Bob Obetz:

(a)      declaring that the Bob Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Bob Obetz constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

80291021

(b)     avoiding the Bob Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Bob Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Bob Obetz in an amount equal to (i) the Bob Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Bob Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Bob Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XVIII– Against Bob Obetz
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

384.     The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

385.     On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Bob Obetz, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $354,960.00, as more specifically set forth and listed on **Exhibit "T"** as BO Tr. 1 – BO Tr. 38 (the "Bob Obetz PUVTA Transfers" and collectively with the Bob Obetz Preferential Transfers and the Bob Obetz Fraudulent Transfers, the "Bob Obetz Transfers").

386.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Bob Obetz and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were

made to or for the benefit of the Bob Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date. The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Bob Obetz PUVTA Transfers and/or the debts paid thereby, (b) additional Bob Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Bob Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

387.    Each Bob Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

388.    Each Bob Obetz PUVTA Transfer was made to or for the benefit of Bob Obetz.

389.    At all times relevant to the Bob Obetz PUVTA Transfers, Bob Obetz held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

390.    At the time that each Bob Obetz PUVTA Transfer was made, Bob Obetz (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Bob Obetz PUVTA Transfers from each Debtor to himself. As such, each Bob Obetz PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

80291021

391.     Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.   Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Bob Obetz in the form of property in exchange for each Bob Obetz PUVTA Transfer.   Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Bob Obetz in the form of satisfaction of an antecedent debt due to Bob Obetz.

392.     At the time that each Bob Obetz PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

393.     Each Bob Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

394.     Each Bob Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Bob Obetz.

395.     Based upon the foregoing, the Bob Obetz PUVTA Transfers made by the Debtors to Bob Obetz constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Bob Obetz pursuant to 11 U.S.C. § 550.

396.     To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.   Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor

of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania

Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and

may recover such fraudulent transfers from Bob Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Bob Obetz:

(a)    declaring that the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Bob Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Bob Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Bob Obetz in an amount equal to (i) the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Bob Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

**COUNT XIX– Against Bob Obetz**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544**

397.    The Trustee incorporates herein by reference the preceding paragraphs of the

Complaint as if set forth at length herein.

398.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or

caused to be transferred, to or for the benefit of, Bob Obetz, the Bob Obetz PUVTA Transfers, as

more specifically set forth and listed on **Exhibit "T"** as BO Tr. 1 – BO Tr. 38.

399.    Each Bob Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

400.    Each Bob Obetz PUVTA Transfer was made to or for the benefit of Bob Obetz.

401.    At all times relevant to the Bob Obetz PUVTA Transfers, Bob Obetz held a matured or unmatured unsecured claim against the Debtors that arose prior to the Bob Obetz PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

402.    At the time that each Bob Obetz PUVTA Transfer was made, Bob Obetz (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Bob Obetz PUVTA Transfers from each Debtor to himself.

403.    Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Bob Obetz in the form of property in exchange for each Bob Obetz PUVTA Transfer.  Each Bob Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Bob Obetz in the form of satisfaction of an antecedent debt due to Bob Obetz.

404.    At the time of each Bob Obetz PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Bob Obetz PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of

76

assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

405.    Each Bob Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

406.    Each Bob Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Bob Obetz.

407.    Based upon the foregoing, the Bob Obetz PUVTA Transfers made by the Debtors to Bob Obetz constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Bob Obetz pursuant to 11 U.S.C. § 550.

408.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Bob Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Bob Obetz:

(a)     declaring that the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Bob Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)     avoiding the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Bob Obetz return to the Trustee, pursuant to 11 U.S.C. § 550,

77

the full value of, and awarding judgment against Bob Obetz in an amount equal to (i) the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Bob Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Bob Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Bob Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XX– Against Jeff B. Lyons**</u>
**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**

409.      The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

410.      On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Mr. Lyons, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $702,288.94, as more specifically set forth and listed as JL Tr. 1 – JL Tr. 4 (the "<u>Jeff Lyons Preferential Transfers</u>") in the schedule attached hereto as **<u>Exhibit "U"</u>** and incorporated by reference herein.  <u>See</u> **<u>Exhibit "U"</u>** at JL Tr. 1 – JL Tr. 4.

411.      During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Mr. Lyons and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Mr. Lyons, and his affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Jeff Lyons Fraudulent Transfers and/or the debts

paid thereby, (b) additional Jeff Lyons Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Jeff Lyons, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

412.    At the time that each Jeff Lyons Preferential Transfer was made, Mr. Lyons was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

413.    Each Jeff Lyons Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Jeff Lyons Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

414.    Each Jeff Lyons Preferential Transfer was made, or caused to be made, to or for the benefit of Mr. Lyons.

415.    Each Jeff Lyons Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Mr. Lyons.  Upon information and belief, the proceeds of certain Jeff Lyons Preferential Transfers that were paid to Elan Financial were for the direct benefit of Mr. Lyons' personal non-reimbursable use of the Elan Financial line of credit.

416.    Each Jeff Lyons Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Mr. Lyons prior to the date on which such Jeff Lyons Preferential Transfer was made.

417.    Mr. Lyons was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Jeff Lyons Preferential Transfer was made.

80291021

418.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Jeff Lyons Preferential Transfers were made.

419.    The Jeff Lyons Preferential Transfers enabled Mr. Lyons to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Jeff Lyons Preferential Transfers had not been made and if Mr. Lyons received payment of the debt(s) relating to each such Jeff Lyons Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

420.    Based on the foregoing, the Jeff Lyons Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Mr. Lyons:

(a)    declaring that the Jeff Lyons Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Mr. Lyons constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the Jeff Lyons Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Mr. Lyons return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Mr. Lyons in an amount equal to (i) the Jeff Lyons Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Mr. Lyons to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Jeff Lyons Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXI – Against Jeff B. Lyons
### AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

421.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

422.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Mr. Lyons, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $831,785.11, as more specifically set forth and listed on **Exhibit "U"** as JL Tr. 1 – JL Tr. 10 (the "Jeff Lyons Fraudulent Transfers").

423.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Mr. Lyons and not in the ordinary course of business during the Fraudulent Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Mr. Lyons, and his affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Jeff Lyons Fraudulent Transfers and/or the debts paid thereby, (b) additional Jeff Lyons Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Mr. Lyons, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

424.    Each of the Jeff Lyons Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

425.    The Jeff Lyons Fraudulent Transfers were made within two (2) years prior to the Petition Date.

426.    The Jeff Lyons Fraudulent Transfers were made to or for the benefit of Mr. Lyons.  Upon information and belief, the proceeds of certain Jeff Lyons Fraudulent Transfers that were paid to Bank of America were for the direct benefit of Mr. Lyons' personal non-reimbursable use of the Bank of America line of credit.

427.    At the time that each Jeff Lyons Fraudulent Transfer was made, Mr. Lyons was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

428.    The Jeff Lyons Fraudulent Transfers made to Mr. Lyons were not made in the ordinary course of business.

429.    To the extent that one or more of the Jeff Lyons Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Jeff Lyons Fraudulent Transfers.

430.    The Debtors were insolvent on the dates of the Jeff Lyons Fraudulent Transfers or became insolvent as a result of the Jeff Lyons Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Jeff Lyons Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

431.    Based upon the foregoing, the Jeff Lyons Fraudulent Transfers made by the

Debtors to Mr. Lyons constitute avoidable fraudulent transfers pursuant to Section 548(a) of the

Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Mr. Lyons:

(a)    declaring that the Jeff Lyons Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Mr. Lyons constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the Jeff Lyons Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Mr. Lyons return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Mr. Lyons in an amount equal to (i) the Jeff Lyons Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Mr. Lyons to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Jeff Lyons Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXII– Against Jeff B. Lyons
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

432.    The Trustee incorporates herein by reference the preceding paragraphs of the

Complaint as if set forth at length herein.

433.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or

caused to be transferred, to or for the benefit of, Mr. Lyons, assets of the Debtors in the form of

one or more payments of  monies and/or transfers of goods in, at least, the total amount of

80291021

$1,179,188.77, as more specifically set forth and listed on **Exhibit "U"** as JL Tr. 1 – JL Tr. 29 (the "Jeff Lyons PUVTA Transfers" and collectively with the Jeff Lyons Preferential Transfers and the Jeff Lyons Fraudulent Transfers, the "Jeff Lyons Transfers").

434.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Mr. Lyons and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Mr. Lyons, and his affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Jeff Lyons PUVTA Transfers and/or the debts paid thereby, (b) additional Jeff Lyons Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Mr. Lyons, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

435.    Each Jeff Lyons PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

436.    Each Jeff Lyons PUVTA Transfer was made to or for the benefit of Mr. Lyons. Upon information and belief, the proceeds of certain Jeff Lyons PUVTA Transfers that were paid to Bank of America were for the direct benefit of Jeff Lyons' personal non-reimbursable use of the Bank of America line of credit.

437.    At all times relevant to the Jeff Lyons PUVTA Transfers, Mr. Lyons held a

matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. §

502 or that is not allowable only under 11 U.S.C. § 502(e).

438.    At the time that each Jeff Lyons PUVTA Transfer was made, Mr. Lyons (i) was

an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an

"insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2),

101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the

transfer of the Jeff Lyons PUVTA Transfers from each Debtor to himself.  As such, each Jeff

Lyons PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of

the Debtors.

439.    Each Jeff Lyons PUVTA Transfer was made by the Debtors without the Debtors

receiving any reasonably equivalent value in exchange for each transfer of assets from the

Debtors.  Each Jeff Lyons PUVTA Transfer was made by the Debtors without the Debtors

receiving any consideration from Mr. Lyons in the form of property in exchange for each Jeff

Lyons PUVTA Transfer.  Each Jeff Lyons PUVTA Transfer was made by the Debtors without

the Debtors receiving any consideration from Mr. Lyons in the form of satisfaction of an

antecedent debt due to Mr. Lyons.

440.    At the time that each Jeff Lyons PUVTA Transfer was made, the Debtors (i) were

engaged or were about to engage in a business or a transaction for which the remaining assets of

the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended

to incur, or believed or reasonably should have believed that the Debtors would incur, debts

beyond the Debtors' ability to pay as they became due.

441.    Each Jeff Lyons PUVTA Transfer was made within the PUVTA Transfer Period.

442.    Each Jeff Lyons PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Mr. Lyons.

443.    Based upon the foregoing, the Jeff Lyons PUVTA Transfers made by the Debtors to Mr. Lyons constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Mr. Lyons pursuant to 11 U.S.C. § 550.

444.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Mr. Lyons pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Jeff Lyons:

(a)    declaring that the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Mr. Lyons constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Mr. Lyons return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Mr. Lyons in an amount equal to (i) the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Jeff Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Mr. Lyons to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Mr. Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the

86

PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

### COUNT XXIII– Against Jeff B. Lyons
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

445.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

446.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Mr. Lyons, the Jeff Lyons PUVTA Transfers, as more specifically set forth and listed on **Exhibit "U"** as JL Tr. 1 – JL Tr. 29.

447.    Each Jeff Lyons PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

448.    Each Jeff Lyons PUVTA Transfer was made to or for the benefit of Mr. Lyons. Upon information and belief, the proceeds of certain Jeff Lyons PUVTA Transfers that were paid to Bank of America were for the direct benefit of Mr. Lyons' personal non-reimbursable use of the Bank of America line of credit.

449.    At all times relevant to the Jeff Lyons PUVTA Transfers, Mr. Lyons held a matured or unmatured unsecured claim against the Debtors that arose prior to the Jeff Lyons PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

450.    At the time that each Jeff Lyons PUVTA Transfer was made, Mr. Lyons (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2),

101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Jeff Lyons PUVTA Transfers from each Debtor to himself.

451.    Each Jeff Lyons PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.   Each Jeff Lyons PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Mr. Lyons in the form of property in exchange for each Jeff Lyons PUVTA Transfer.   Each Jeff Lyons PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Mr. Lyons in the form of satisfaction of an antecedent debt due to Mr. Lyons.

452.    At the time of each Jeff Lyons PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Jeff Lyons PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

453.    Each Jeff Lyons PUVTA Transfer was made within the PUVTA Transfer Period.

454.    Each Jeff Lyons PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Mr. Lyons.

455.    Based upon the foregoing, the Jeff Lyons PUVTA Transfers made by the Debtors to Mr. Lyons constitute fraudulent transfers under 12 Pa. C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Mr. Lyons pursuant to 11 U.S.C. § 550.

80291021

456.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Mr. Lyons pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Jeff Lyons:

(a)    declaring that the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Jeff Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Jeff Lyons constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)    avoiding the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Jeff Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Jeff Lyons return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Jeff Lyons in an amount equal to (i) the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Jeff Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Jeff Lyons to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Jeff Lyons PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Jeff Lyons, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXIV – Against Molly Obetz
### AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547

457.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

80291021

458.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Molly Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $132,767.43, as more specifically set forth and listed as Molly O Tr. 1 – Molly O Tr. 4 (the "Molly Obetz Preferential Transfers") in the schedule attached hereto as **Exhibit "V"** and incorporated by reference herein. See **Exhibit "V"** at Molly O Tr. 1 – Molly O Tr. 4.

459.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Molly Obetz and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Molly Obetz, and her affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Molly Obetz Fraudulent Transfers and/or the debts paid thereby, (b) additional Molly Obetz Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Molly Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

460.    At the time that each Molly Obetz Preferential Transfer was made, Molly Obetz was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B).

461.    Each Molly Obetz Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Molly Obetz Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

462.    Each Molly Obetz Preferential Transfer was made, or caused to be made, to or for the benefit of Molly Obetz.

463.    Each Molly Obetz Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Molly Obetz.

464.    Each Molly Obetz Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Molly Obetz prior to the date on which such Molly Obetz Preferential Transfer was made.

465.    Molly Obetz was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Molly Obetz Preferential Transfer was made.

466.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Molly Obetz Preferential Transfers were made.

467.    The Molly Obetz Preferential Transfers enabled Molly Obetz to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Molly Obetz Preferential Transfers had not been made and if Molly Obetz received payment of the debt(s) relating to each such Molly Obetz Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

468.    Based on the foregoing, the Molly Obetz Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Molly Obetz:

(a)    declaring that the Molly Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Molly Obetz constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the Molly Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Preference Period, that

discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Molly Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Molly Obetz in an amount equal to (i) the Molly Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Molly Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Molly Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XXV – Against Molly Obetz**</u>
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)**

469.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

470.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Molly Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $246,957.23, as more specifically set forth and listed on **Exhibit "V"** as Molly O Tr. 1 – Molly O Tr. 8 (the "Molly Obetz Fraudulent Transfers").

471.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Molly Obetz and not in the ordinary course of business during the Fraudulent Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Molly Obetz, and her affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Molly Obetz Fraudulent

Transfers and/or the debts paid thereby, (b) additional Molly Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Molly Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

472.    Each of the Molly Obetz Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

473.    The Molly Obetz Fraudulent Transfers were made within two (2) years prior to the Petition Date.

474.    The Molly Obetz Fraudulent Transfers were made to or for the benefit of Molly Obetz.

475.    At the time that each Molly Obetz Fraudulent Transfer was made, Molly Obetz was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B).

476.    The Molly Obetz Fraudulent Transfers made to Molly Obetz were not made in the ordinary course of business.

477.    To the extent that one or more of the Molly Obetz Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Molly Obetz Fraudulent Transfers.

478.    The Debtors were insolvent on the dates of the Molly Obetz Fraudulent Transfers or became insolvent as a result of the Molly Obetz Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Molly Obetz Fraudulent Transfers;

80291021

or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

479.     Based upon the foregoing, the Molly Obetz Fraudulent Transfers made by the Debtors to Molly Obetz constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Molly Obetz:

(a)     declaring that the Molly Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Molly Obetz constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)     avoiding the Molly Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Molly Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Molly Obetz in an amount equal to (i) the Molly Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Molly Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Molly Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXVI– Against Molly Obetz
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

480.     The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

80291021

481.     On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Molly Obetz, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $398,672.24, as more specifically set forth and listed on **Exhibit "V"** as Molly O Tr. 1 – Molly O Tr. 17 (the "Molly Obetz PUVTA Transfers" and collectively with the Molly Obetz Preferential Transfers and the Molly Obetz Fraudulent Transfers, the "Molly Obetz Transfers").

482.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Molly Obetz and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Molly Obetz, and her affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Molly Obetz PUVTA Transfers and/or the debts paid thereby, (b) additional Molly Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Molly Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

483.     Each Molly Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

484.     Each Molly Obetz PUVTA Transfer was made to or for the benefit of Molly Obetz.

485.     At all times relevant to the Molly Obetz PUVTA Transfers, Molly Obetz held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

486.     At the time that each Molly Obetz PUVTA Transfer was made, (i) Molly Obetz was an "insider" of each of the Debtors as that term is defined in 11 U.S.C. § 101(31)(B); (ii) Seth Obetz was an "insider" of each Debtor as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz and/or Molly Obetz dominated and controlled each debtor and the transfer of the Molly Obetz PUVTA Transfers from each Debtor to Molly Obetz.  As such, each Molly Obetz PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

487.     Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Molly Obetz in the form of property in exchange for each Molly Obetz PUVTA Transfer.  Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Molly Obetz in the form of satisfaction of an antecedent debt due to Molly Obetz.

488.     At the time that each Molly Obetz PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii)

intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

489.    Each Molly Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

490.    Each Molly Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Molly Obetz.

491.    Based upon the foregoing, the Molly Obetz PUVTA Transfers made by the Debtors to Molly Obetz constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Molly Obetz pursuant to 11 U.S.C. § 550.

492.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Molly Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Molly Obetz:

(a)    declaring that the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Molly Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Molly Obetz return to the Trustee, pursuant to 11 U.S.C. § 550,

80291021

the full value of, and awarding judgment against Molly Obetz in an amount equal to (i) the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Molly Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXVII– Against Molly Obetz
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

493.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

494.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Molly Obetz, the Molly Obetz PUVTA Transfers, as more specifically set forth and listed on **Exhibit "V"** as Molly O Tr. 1 – Molly O Tr. 17.

495.    Each Molly Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

496.    Each Molly Obetz PUVTA Transfer was made to or for the benefit of Molly Obetz.

497.    At all times relevant to the Molly Obetz PUVTA Transfers, Molly Obetz held a matured or unmatured unsecured claim against the Debtors that arose prior to the Molly Obetz PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

498.    At the time that each Molly Obetz PUVTA Transfer was made, Molly Obetz (i) was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) was an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E); and (iii) dominated and controlled each Debtor and the transfer of the Molly Obetz PUVTA Transfers from each Debtor to himself.

499.    Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Molly Obetz in the form of property in exchange for each Molly Obetz PUVTA Transfer.  Each Molly Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Molly Obetz in the form of satisfaction of an antecedent debt due to Molly Obetz.

500.    At the time of each Molly Obetz PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Molly Obetz PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

501.    Each Molly Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

502.    Each Molly Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Molly Obetz.

503.    Based upon the foregoing, the Molly Obetz PUVTA Transfers made by the Debtors to Molly Obetz constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Molly Obetz pursuant to 11 U.S.C. § 550.

504.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Molly Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Molly Obetz:

(a)     declaring that the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Molly Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)     avoiding the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Molly Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Molly Obetz in an amount equal to (i) the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Molly Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Molly Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Molly Obetz, and any of her affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XXVIII – Against Sam Obetz**</u>
**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**

505.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

506.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Sam Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $148,349.51 as more specifically set forth and listed as SO Tr. 1 – SO Tr. 4 (the "<u>Sam Obetz Preferential Transfers</u>") in the schedule attached hereto as **Exhibit "W"** and incorporated by reference herein.  <u>See</u> **Exhibit "W"** at SO Tr. 1 – SO Tr. 4.

507.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Sam Obetz and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Sam Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Sam Obetz Preferential Transfers and/or the debts paid thereby, (b) additional Sam Obetz Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Sam Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

80291021

508.     At the time that each Sam Obetz Preferential Transfer was made, Sam Obetz was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B).

509.     Each Sam Obetz Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Sam Obetz Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

510.     Each Sam Obetz Preferential Transfer was made, or caused to be made, to or for the benefit of Sam Obetz.

511.     Each Sam Obetz Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Sam Obetz.

512.     Each Sam Obetz Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Sam Obetz prior to the date on which such Sam Obetz Preferential Transfer was made.

513.     Sam Obetz was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Sam Obetz Preferential Transfer was made.

514.     The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Sam Obetz Preferential Transfers were made.

515.     The Sam Obetz Preferential Transfers enabled Sam Obetz to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Sam Obetz Preferential Transfers had not been made and if Sam Obetz received payment of the debt(s) relating to each such Sam Obetz Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

516.     Based on the foregoing, the Sam Obetz Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Sam Obetz:

(a)     declaring that the Sam Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Sam Obetz constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)     avoiding the Sam Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Sam Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Sam Obetz in an amount equal to (i) the Sam Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Sam Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Sam Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXIX – Against Sam Obetz
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

517.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

518.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Sam Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $310,368.27, as more specifically set forth and listed on **Exhibit "W"** as SO Tr. 1 – SO Tr. 9 (the "<u>Sam Obetz Fraudulent Transfers</u>").

519.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit

of Sam Obetz and not in the ordinary course of business during the Fraudulent Transfer Period.

It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were

made to or for the benefit of the Sam Obetz, and his affiliates, insiders, subsidiaries, or any other

transferee during the Fraudulent Transfer Period.   The Trustee reserves the right to amend this

Complaint to include: (a) further information regarding the Sam Obetz Fraudulent Transfers

and/or the debts paid thereby, (b) additional Sam Obetz Transfers, (c) additional defendants,

including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Sam Obetz,

and/or (d) Amendments that may become known to the Trustee at any time during this adversary

proceeding, through formal discovery or otherwise, and for the Amendments to relate back to

this Complaint.

520.    Each of the Sam Obetz Fraudulent Transfers constituted a transfer of an interest in

property of the Debtors.

521.    The Sam Obetz Fraudulent Transfers were made within two (2) years prior to the

Petition Date.

522.    The Sam Obetz Fraudulent Transfers were made to or for the benefit of Sam

Obetz.

523.    At the time that each Sam Obetz Fraudulent Transfer was made, Sam Obetz was

an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B).

524.    The Sam Obetz Fraudulent Transfers made to Sam Obetz were not made in the

ordinary course of business.

525.    To the extent that one or more of the Sam Obetz Fraudulent Transfers were not on

account of an antecedent debt or were prepayments for goods or services subsequently received,

the Debtors received less than reasonably equivalent value in exchange for the Sam Obetz Fraudulent Transfers.

526.     The Debtors were insolvent on the dates of the Sam Obetz Fraudulent Transfers or became insolvent as a result of the Sam Obetz Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Sam Obetz Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

527.     Based upon the foregoing, the Sam Obetz Fraudulent Transfers made by the Debtors to Sam Obetz constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Sam Obetz:

(a)     declaring that the Sam Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Sam Obetz constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)     avoiding the Sam Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Sam Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Sam Obetz in an amount equal to (i) the Sam Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Sam Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Sam Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXX– Against Sam Obetz
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

528.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

529.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Sam Obetz, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $333,993.27, as more specifically set forth and listed on **Exhibit "W"** as SO Tr. 1 – SO Tr. 16 (the "Sam Obetz PUVTA Transfers" and collectively with the Sam Obetz Preferential Transfers and the Sam Obetz Fraudulent Transfers, the "Sam Obetz Transfers").

530.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Sam Obetz and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Sam Obetz, and his affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Sam Obetz PUVTA Transfers and/or the debts paid thereby, (b) additional Sam Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Sam Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this

106

adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

531.    Each Sam Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

532.    Each Sam Obetz PUVTA Transfer was made to or for the benefit of Sam Obetz.

533.    At all times relevant to the Sam Obetz PUVTA Transfers, Sam Obetz held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

534.    At the time that each Sam Obetz PUVTA Transfer was made, (i) Sam Obetz was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) Seth Obetz was an "insider" of each Debtor as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz and/or Sam Obetz dominated and controlled each Debtor and the transfer of the Sam Obetz PUVTA Transfers from each Debtor to Sam Obetz.  As such, each Sam Obetz PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

535.    Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Sam Obetz in the form of property in exchange for each Sam Obetz PUVTA Transfer.  Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Sam Obetz in the form of satisfaction of an antecedent debt due to Sam Obetz.

536.    At the time that each Sam Obetz PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of

80291021

the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended

to incur, or believed or reasonably should have believed that the Debtors would incur, debts

beyond the Debtors' ability to pay as they became due.

537.    Each Sam Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

538.    Each Sam Obetz PUVTA Transfer was made payable to and cashed by, or wired

directly or indirectly to and accepted by, Sam Obetz.

539.    Based upon the foregoing, the Sam Obetz PUVTA Transfers made by the Debtors

to Sam Obetz constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1) and are

avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Sam Obetz

pursuant to 11 U.S.C. § 550.

540.    To the extent that any fraudulent transfers occurred (i) more than four (4) years

prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such

transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C.

§ 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor

of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania

Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and

may recover such fraudulent transfers from Sam Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Sam Obetz:

(a)    declaring that the Sam Obetz PUVTA Transfers (plus the amount of any
additional transfers of property of the Debtors to Sam Obetz, and any of his
affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that
discovery may reveal) to Sam Obetz constitute avoidable fraudulent transfers
pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Sam Obetz PUVTA Transfers (plus the amount of any additional
transfers of property of the Debtors to Sam Obetz, and any of his affiliates,
insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery
may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing
and ordering that Sam Obetz return to the Trustee, pursuant to 11 U.S.C. § 550,

80291021

the full value of, and awarding judgment against Sam Obetz in an amount equal to (i) the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Sam Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XXXI– Against Sam Obetz**</u>

**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544**

541.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

542.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Sam Obetz, the Sam Obetz PUVTA Transfers, as more specifically set forth and listed on **Exhibit "W"** as SO Tr. 1 – SO Tr. 16.

543.    Each Sam Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

544.    Each Sam Obetz PUVTA Transfer was made to or for the benefit of Sam Obetz.

545.    At all times relevant to the Sam Obetz PUVTA Transfers, Sam Obetz held a matured or unmatured unsecured claim against the Debtors that arose prior to the Sam Obetz PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

546.    At the time that each Sam Obetz PUVTA Transfer was made, (i) Sam Obetz was an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); (ii) Seth Obetz was an "insider" of each Debtor as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth

Obetz and/or Sam Obetz dominated and controlled each Debtor and the transfer of the Sam Obetz PUVTA Transfers from each Debtor to Sam Obetz.

547.     Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.   Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Sam Obetz in the form of property in exchange for each Sam Obetz PUVTA Transfer.   Each Sam Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Sam Obetz in the form of satisfaction of an antecedent debt due to Sam Obetz.

548.     At the time of each Sam Obetz PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Sam Obetz PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

549.     Each Sam Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

550.     Each Sam Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Sam Obetz.

551.     Based upon the foregoing, the Sam Obetz PUVTA Transfers made by the Debtors to Sam Obetz constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Sam Obetz pursuant to 11 U.S.C. § 550.

80291021

552.   To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.   Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Sam Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Sam Obetz:

(a)   declaring that the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Sam Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)   avoiding the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Sam Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Sam Obetz in an amount equal to (i) the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Sam Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Sam Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Sam Obetz, and any of his affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)   awarding the Trustee such other and further relief as may be just and proper.

**COUNT XXXII– Against 202 Greenfield, LP & 202 Greenfield General, LLC**
**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**

553.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

80291021

554.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $201,000.00, as more specifically set forth and listed as GF Tr. 1 – GF Tr. 13 (the "202 Greenfield Preferential Transfers") in the schedule attached hereto as **Exhibit "X"** and incorporated by reference herein.  See **Exhibit "X"** at GF Tr. 1 – GF Tr. 13.

555.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 202 Greenfield, LP & 202 Greenfield General, LLC, and their affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 202 Greenfield Preferential Transfers and/or the debts paid thereby, (b) additional 202 Greenfield Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 202 Greenfield, LP & 202 Greenfield General, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

556.    At the time that each 202 Greenfield Preferential Transfer was made, 202 Greenfield, LP & 202 Greenfield General, LLC were each an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

557.    Each 202 Greenfield Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each 202 Greenfield Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

558.    Each 202 Greenfield Preferential Transfer was made, or caused to be made, to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC.

559.    Each 202 Greenfield Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, 202 Greenfield, LP.  Upon information and belief, the proceeds of the 202 Greenfield Preferential Transfers that were paid to 202 Greenfield, LP were subsequently transferred or disbursed to, or for the benefit of, 202 Greenfield General, LLC.

560.    Each 202 Greenfield Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to 202 Greenfield, LP prior to the date on which such 202 Greenfield, LP Preferential Transfer was made.

561.    202 Greenfield, LP was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each 202 Greenfield Preferential Transfer was made.

562.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the 202 Greenfield Preferential Transfers were made.

563.    The 202 Greenfield Preferential Transfers enabled 202 Greenfield, LP & 202 Greenfield General, LLC to receive more than they would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the 202 Greenfield Preferential Transfers had not been made and if 202 Greenfield, LP & 202 Greenfield General, LLC received payment of the debt(s) relating to each such 202 Greenfield Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

80291021

564.    Based on the foregoing, the 202 Greenfield Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against 202 Greenfield, LP & 202 Greenfield General, LLC:

(a)    declaring that the 202 Greenfield Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to 202 Greenfield, LP & 202 Greenfield General, LLC constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the 202 Greenfield Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that 202 Greenfield, LP & 202 Greenfield General, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 202 Greenfield, LP & 202 Greenfield General, LLC in an amount equal to (i) the 202 Greenfield Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring 202 Greenfield, LP & 202 Greenfield General, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 202 Greenfield Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXXIII – Against 202 Greenfield, LP & 202 Greenfield General, LLC
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

565.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

566.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of 202 Greenfield, LP & 202 Greenfield General,

LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $396,000, as more specifically set forth and listed on **Exhibit "X"** as GF Tr. 1 – GF Tr. 26 (the "202 Greenfield Fraudulent Transfers").

567.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 202 Greenfield, LP or 202 Greenfield General, LLC and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 202 Greenfield, LP, 202 Greenfield General, LLC, and their affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 202 Greenfield Fraudulent Transfers and/or the debts paid thereby, (b) additional 202 Greenfield Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 202 Greenfield, LP & 202 Greenfield General, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

568.    Each of the 202 Greenfield Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

569.    The 202 Greenfield Fraudulent Transfers were made within two (2) years prior to the Petition Date.

570.    The 202 Greenfield Fraudulent Transfers were made to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC.  Upon information and belief, the proceeds of

80291021

the 202 Greenfield Preferential Transfers that were paid to 202 Greenfield, LP were subsequently

transferred or disbursed to, or for the benefit of, 202 Greenfield General, LLC.

571.   At the time that each 202 Greenfield Fraudulent Transfer was made, 202

Greenfield, LP & 202 Greenfield General, LLC were each an "insider" and "affiliate" of each

Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

572.   The 202 Greenfield Fraudulent Transfers made to 202 Greenfield, LP & 202

Greenfield General, LLC were not made in the ordinary course of business.

573.   To the extent that one or more of the 202 Greenfield Fraudulent Transfers were

not on account of an antecedent debt or were prepayments for goods or services subsequently

received, the Debtors received less than reasonably equivalent value in exchange for the 202

Greenfield Fraudulent Transfers.

574.   The Debtors were insolvent on the dates of the 202 Greenfield Fraudulent

Transfers or became insolvent as a result of the 202 Greenfield Fraudulent Transfers; or (ii) were

engaged in business or a transaction for which any property remaining with the Debtors was an

unreasonably small capital at the time of, or as a result of the 202 Greenfield Fraudulent

Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to

pay as such debts matured.

575.   Based upon the foregoing, the 202 Greenfield Fraudulent Transfers made by the

Debtors to 202 Greenfield, LP & 202 Greenfield General, LLC constitute avoidable fraudulent

transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Sam Obetz:

(a)    declaring that the 202 Greenfield Fraudulent Transfers (plus the amount of any
       additional transfers of property of the Debtors to 202 Greenfield, LP or 202
       Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries,
       during the Fraudulent Transfer Period, that discovery may reveal) to 202

Greenfield, LP & 202 Greenfield General, LLC constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the 202 Greenfield Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that 202 Greenfield, LP & 202 Greenfield General, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 202 Greenfield, LP & 202 Greenfield General, LLC in an amount equal to (i) the 202 Greenfield Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring 202 Greenfield, LP & 202 Greenfield General, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 202 Greenfield Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

### COUNT XXXIV– Against 202 Greenfield, LP & 202 Greenfield General, LLC
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

576.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

577.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, 202 Greenfield, LP & 202 Greenfield General, LLC, assets of the Debtors in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $787,000, as more specifically set forth and listed on **Exhibit "X"** as GF Tr. 1 – GF Tr. 50 (the "202 Greenfield PUVTA Transfers" and collectively with the 202 Greenfield Preferential Transfers and the 202 Greenfield Fraudulent Transfers, the "202 Greenfield Transfers").

117

578.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 202 Greenfield, LP or 202 Greenfield General, LLC and not in the ordinary course of business during the PUVTA Transfer Period.   It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 202 Greenfield, LP, 202 Greenfield General, LLC, and their affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.   The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 202 Greenfield PUVTA Transfers and/or the debts paid thereby, (b) additional 202 Greenfield Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 202 Greenfield, LP & 202 Greenfield General, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

579.     Each 202 Greenfield PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

580.     Each 202 Greenfield PUVTA Transfer was made to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC.

581.     At all times relevant to the 202 Greenfield PUVTA Transfers, 202 Greenfield, LP and/or 202 Greenfield General, LLC held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

582.    At the time that each 202 Greenfield PUVTA Transfer was made, (i) 202 Greenfield, LP & 202 Greenfield General, LLC were each an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of 202 Greenfield, LP & 202 Greenfield General, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the 202 Greenfield PUVTA Transfers from each Debtor to 202 Greenfield, LP & 202 Greenfield General, LLC.  As such, each 202 Greenfield PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

583.    Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 202 Greenfield, LP or 202 Greenfield General, LLC in the form of property in exchange for each 202 Greenfield PUVTA Transfer.  Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 202 Greenfield, LP or 202 Greenfield General, LLC in the form of satisfaction of an antecedent debt due to 202 Greenfield, LP and/or 202 Greenfield General, LLC.

584.    At the time that each 202 Greenfield PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

585.    Each 202 Greenfield PUVTA Transfer was made within the PUVTA Transfer Period.

586.    Each 202 Greenfield PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, 202 Greenfield, LP.  Upon information and belief, the proceeds of the 202 Greenfield Preferential Transfers that were paid to 202 Greenfield, LP were subsequently transferred or disbursed to, or for the benefit of, 202 Greenfield General, LLC.

587.    Based upon the foregoing, the 202 Greenfield PUVTA Transfers made by the Debtors to 202 Greenfield, LP & 202 Greenfield General, LLC constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from 202 Greenfield, LP & 202 Greenfield General, LLC pursuant to 11 U.S.C. § 550.

588.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from 202 Greenfield, LP & 202 Greenfield General, LLC pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against 202 Greenfield, LP & 202 Greenfield General, LLC:

(a)    declaring that the 202 Greenfield PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202

Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to 202 Greenfield, LP & 202 Greenfield General, LLC constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)     avoiding the 202 Greenfield PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that 202 Greenfield, LP & 202 Greenfield General, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 202 Greenfield, LP & 202 Greenfield General, LLC in an amount equal to (i) the 202 Greenfield PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring 202 Greenfield, LP & 202 Greenfield General, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 202 Greenfield PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXXV– Against 202 Greenfield, LP & 202 Greenfield General, LLC
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

589.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

590.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, 202 Greenfield, LP & 202 Greenfield General, LLC, the 202 Greenfield PUVTA Transfers, as more specifically set forth and listed on **Exhibit "X"** as GF Tr. 1 – GF Tr. 50.

591.    Each 202 Greenfield PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

592.    Each 202 Greenfield PUVTA Transfer was made to or for the benefit of 202 Greenfield, LP & 202 Greenfield General, LLC.

593.    At all times relevant to the 202 Greenfield PUVTA Transfers, 202 Greenfield, LP and/or 202 Greenfield General, LLC held a matured or unmatured unsecured claim against the Debtors that arose prior to the 202 Greenfield PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

594.    At the time that each 202 Greenfield PUVTA Transfer was made, (i) 202 Greenfield, LP & 202 Greenfield General, LLC were each an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of 202 Greenfield, LP & 202 Greenfield General, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the 202 Greenfield PUVTA Transfers from each Debtor to 202 Greenfield, LP & 202 Greenfield General, LLC.

595.    Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 202 Greenfield, LP or 202 Greenfield General, LLC in the form of property in exchange for each 202 Greenfield PUVTA Transfer.  Each 202 Greenfield PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 202 Greenfield, LP or 202 Greenfield General, LLC in the form of satisfaction of an antecedent debt due to 202 Greenfield, LP and/or 202 Greenfield General, LLC.

596.    At the time of each 202 Greenfield PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the 202 Greenfield PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

597.    Each 202 Greenfield PUVTA Transfer was made within the PUVTA Transfer Period.

598.    Each 202 Greenfield PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, 202 Greenfield, LP.  Upon information and belief, the proceeds of the 202 Greenfield Preferential Transfers that were paid to 202 Greenfield, LP were subsequently transferred or disbursed to, or for the benefit of, 202 Greenfield General, LLC.

599.    Based upon the foregoing, the 202 Greenfield PUVTA Transfers made by the Debtors to 202 Greenfield, LP & 202 Greenfield General, LLC constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from 202 Greenfield, LP & 202 Greenfield General, LLC pursuant to 11 U.S.C. § 550.

600.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor

80291021

of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania

Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and

may recover such fraudulent transfers from 202 Greenfield, LP & 202 Greenfield General, LLC

pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against 202 Greenfield, LP & 202 Greenfield

General, LLC:

(a)     declaring that the 202 Greenfield PUVTA Transfers (plus the amount of any
        additional transfers of property of the Debtors to 202 Greenfield, LP or 202
        Greenfield General, LLC, and any of their affiliates, insiders, and/or subsidiaries,
        during the PUVTA Transfer Period, that discovery may reveal) to 202 Greenfield,
        LP & 202 Greenfield General, LLC constitute avoidable fraudulent transfers
        pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)     avoiding the 202 Greenfield PUVTA Transfers (plus the amount of any additional
        transfers of property of the Debtors to 202 Greenfield, LP or 202 Greenfield
        General, LLC, and any of their affiliates, insiders, and/or subsidiaries, during the
        PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. §
        5105 and 11 U.S.C. § 544 and directing and ordering that 202 Greenfield, LP &
        202 Greenfield General, LLC return to the Trustee, pursuant to 11 U.S.C. § 550,
        the full value of, and awarding judgment against 202 Greenfield, LP & 202
        Greenfield General, LLC in an amount equal to (i) the 202 Greenfield PUVTA
        Transfers (plus the amount of any additional transfers of property of the Debtors
        to 202 Greenfield, LP or 202 Greenfield General, LLC, and any of their affiliates,
        insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery
        may reveal), and requiring 202 Greenfield, LP & 202 Greenfield General, LLC to
        immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-
        judgment interest from the date of the 202 Greenfield PUVTA Transfers (plus the
        amount of any additional transfers of property of the Debtors to 202 Greenfield,
        LP or 202 Greenfield General, LLC, and any of their affiliates, insiders, and/or
        subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were
        made through the date of the payment at the maximum legal rate, and (iii) the
        Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XXXVI – Against 535 Stiegel Valley Road, LLC**</u>
**AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547**

601.    The Trustee incorporates herein by reference the preceding paragraphs of the

Complaint as if set forth at length herein.

124

602.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of 535 Stiegel Valley Road, LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $18,000.00, as more specifically set forth and listed as Stiegel Tr. 1 – Stiegel Tr. 9 (the "<u>535 Stiegel Valley Road, LLC Preferential Transfers</u>") in the schedule attached hereto as **Exhibit "Y"** and incorporated by reference herein.  <u>See</u> **Exhibit "Y"** at Stiegel Tr. 1 – Stiegel Tr. 9.

603.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 535 Stiegel Valley Road, LLC and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 535 Stiegel Valley Road, LLC, and its affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 535 Stiegel Valley Road, LLC Preferential Transfers and/or the debts paid thereby, (b) additional 535 Stiegel Valley Road, LLC Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 535 Stiegel Valley Road, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

604.    At the time that each 535 Stiegel Valley Road, LLC Preferential Transfer was made, (i) 535 Stiegel Valley Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of

each Debtor and of 535 Stiegel Valley Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B).

605.   535 Stiegel Valley Road, LLC was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

606.   Each 535 Stiegel Valley Road, LLC Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each 535 Stiegel Valley Road, LLC Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

607.   Each 535 Stiegel Valley Road, LLC Preferential Transfer was made, or caused to be made, to or for the benefit of 535 Stiegel Valley Road, LLC.

608.   Each 535 Stiegel Valley Road, LLC Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, 535 Stiegel Valley Road, LLC.

609.   Each 535 Stiegel Valley Road, LLC Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to 535 Stiegel Valley Road, LLC prior to the date on which such 535 Stiegel Valley Road, LLC Preferential Transfer was made.

610.   535 Stiegel Valley Road, LLC was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each 535 Stiegel Valley Road, LLC Preferential Transfer was made.

611.   The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the 535 Stiegel Valley Road, LLC Preferential Transfers were made.

80291021

612.    The 535 Stiegel Valley Road, LLC Preferential Transfers enabled 535 Stiegel Valley Road, LLC to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the 535 Stiegel Valley Road, LLC Preferential Transfers had not been made and if 535 Stiegel Valley Road, LLC received payment of the debt(s) relating to each such 535 Stiegel Valley Road, LLC Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

613.    Based on the foregoing, the 535 Stiegel Valley Road, LLC Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against 535 Stiegel Valley Road, LLC:

(a)     declaring that the 535 Stiegel Valley Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to 535 Stiegel Valley Road, LLC constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)     avoiding the 535 Stiegel Valley Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that 535 Stiegel Valley Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 535 Stiegel Valley Road, LLC in an amount equal to (i) the 535 Stiegel Valley Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring 535 Stiegel Valley Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 535 Stiegel Valley Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

80291021

## COUNT XXXVII – Against 535 Stiegel Valley Road, LLC
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

614.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

615.   On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of 535 Stiegel Valley Road, LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $38,000.00, as more specifically set forth and listed on **Exhibit "Y"** as Stiegel Tr. 1 – Stiegel Tr. 19 (the "535 Stiegel Valley Road, LLC Fraudulent Transfers").

616.   During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 535 Stiegel Valley Road, LLC and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 535 Stiegel Valley Road, LLC, and its affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 535 Stiegel Valley Road, LLC Fraudulent Transfers and/or the debts paid thereby, (b) additional 535 Stiegel Valley Road, LLC Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 535 Stiegel Valley Road, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

617.   Each of the 535 Stiegel Valley Road, LLC Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

80291021

618.     The 535 Stiegel Valley Road, LLC Fraudulent Transfers were made within two (2) years prior to the Petition Date.

619.     The 535 Stiegel Valley Road, LLC Fraudulent Transfers were made to or for the benefit of 535 Stiegel Valley Road, LLC.

620.     At the time that each 535 Stiegel Valley Road, LLC Fraudulent Transfer was made, (i) 535 Stiegel Valley Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of 535 Stiegel Valley Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B).

621.     The 535 Stiegel Valley Road, LLC Fraudulent Transfers made to 535 Stiegel Valley Road, LLC were not made in the ordinary course of business.

622.     To the extent that one or more of the 535 Stiegel Valley Road, LLC Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the 535 Stiegel Valley Road, LLC Fraudulent Transfers.

623.     The Debtors were insolvent on the dates of the 535 Stiegel Valley Road, LLC Fraudulent Transfers or became insolvent as a result of the 535 Stiegel Valley Road, LLC Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the 535 Stiegel Valley Road, LLC Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

624.    Based upon the foregoing, the 535 Stiegel Valley Road, LLC Fraudulent Transfers made by the Debtors to 535 Stiegel Valley Road, LLC constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against 535 Stiegel Valley Road, LLC:

(a)    declaring that the 535 Stiegel Valley Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to 535 Stiegel Valley Road, LLC constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the 535 Stiegel Valley Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that 535 Stiegel Valley Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 535 Stiegel Valley Road, LLC in an amount equal to (i) the 535 Stiegel Valley Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring 535 Stiegel Valley Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 535 Stiegel Valley Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT XXXVIII– Against 535 Stiegel Valley Road, LLC**</u>
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544**

625.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

626.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, 535 Stiegel Valley Road, LLC, assets of the

130

Debtors in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $118,000, as more specifically set forth and listed on **Exhibit "Y"** as Stiegel Tr. 1 – Stiegel 42 (the "535 Stiegel Valley Road, LLC PUVTA Transfers" and collectively with the 535 Stiegel Valley Road, LLC Preferential Transfers and the 535 Stiegel Valley Road, LLC Fraudulent Transfers, the "535 Stiegel Valley Road, LLC Transfers").

627.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of 535 Stiegel Valley Road, LLC and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the 535 Stiegel Valley Road, LLC, and its affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the 535 Stiegel Valley Road, LLC PUVTA Transfers and/or the debts paid thereby, (b) additional 535 Stiegel Valley Road, LLC Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of 535 Stiegel Valley Road, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

628.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

629.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made to or for the benefit of 535 Stiegel Valley Road, LLC.

630.    At all times relevant to the 535 Stiegel Valley Road, LLC PUVTA Transfers, 535 Stiegel Valley Road, LLC held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

631.    At the time that each 535 Stiegel Valley Road, LLC PUVTA Transfer was made, (i) 535 Stiegel Valley Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of 535 Stiegel Valley Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the 535 Stiegel Valley Road, LLC PUVTA Transfers from each Debtor to 535 Stiegel Valley Road, LLC.  As such, each 535 Stiegel Valley Road, LLC PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

632.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 535 Stiegel Valley Road, LLC in the form of property in exchange for each 535 Stiegel Valley Road, LLC PUVTA Transfer. Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 535 Stiegel Valley Road, LLC in the form of satisfaction of an antecedent debt due to 535 Stiegel Valley Road, LLC.

633.    At the time that each 535 Stiegel Valley Road, LLC PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the

remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

634.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made within the PUVTA Transfer Period.

635.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, 535 Stiegel Valley Road, LLC.

636.    Based upon the foregoing, the 535 Stiegel Valley Road, LLC PUVTA Transfers made by the Debtors to 535 Stiegel Valley Road, LLC constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from 535 Stiegel Valley Road, LLC pursuant to 11 U.S.C. § 550.

637.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from 535 Stiegel Valley Road, LLC pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against 535 Stiegel Valley Road, LLC:

(a)    declaring that the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to 535 Stiegel Valley Road, LLC constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that 535 Stiegel Valley Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 535 Stiegel Valley Road, LLC in an amount equal to (i) the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring 535 Stiegel Valley Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XXXIX– Against 535 Stiegel Valley Road, LLC
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

638.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

639.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, 535 Stiegel Valley Road, LLC, the 535 Stiegel Valley Road, LLC PUVTA Transfers, as more specifically set forth and listed on **Exhibit "Y"** as Stiegel. 1 – Stiegel Tr. 42.

640.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

641.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made to or for the benefit of 535 Stiegel Valley Road, LLC.

642.     At all times relevant to the 535 Stiegel Valley Road, LLC PUVTA Transfers, 535 Stiegel Valley Road, LLC held a matured or unmatured unsecured claim against the Debtors that arose prior to the 535 Stiegel Valley Road, LLC PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

643.     At the time that each 535 Stiegel Valley Road, LLC PUVTA Transfer was made, (i) 535 Stiegel Valley Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of 535 Stiegel Valley Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the 535 Stiegel Valley Road, LLC PUVTA Transfers from each Debtor to 535 Stiegel Valley Road, LLC.

644.     Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 535 Stiegel Valley Road, LLC in the form of property in exchange for each 535 Stiegel Valley Road, LLC PUVTA Transfer. Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from 535 Stiegel Valley Road, LLC in the form of satisfaction of an antecedent debt due to 535 Stiegel Valley Road, LLC.

645.     At the time of each 535 Stiegel Valley Road, LLC PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the 535 Stiegel Valley Road, LLC PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent

to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

646.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made within the PUVTA Transfer Period.

647.    Each 535 Stiegel Valley Road, LLC PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, 535 Stiegel Valley Road, LLC.

648.    Based upon the foregoing, the 535 Stiegel Valley Road, LLC PUVTA Transfers made by the Debtors to 535 Stiegel Valley Road, LLC constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from 535 Stiegel Valley Road, LLC pursuant to 11 U.S.C. § 550.

649.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from 535 Stiegel Valley Road, LLC pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against 535 Stiegel Valley Road, LLC:

(a)     declaring that the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to 535 Stiegel Valley Road, LLC constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)     avoiding the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road,

LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that 535 Stiegel Valley Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against 535 Stiegel Valley Road, LLC in an amount equal to (i) the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring 535 Stiegel Valley Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the 535 Stiegel Valley Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to 535 Stiegel Valley Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XL – Against Doe Run Road, LLC
## AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547

650.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

651.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Doe Run Road, LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $44,500.00 as more specifically set forth and listed as Doe Run Tr. 1 – Doe Run Tr. 12 (the "Doe Run Road, LLC Preferential Transfers") in the schedule attached hereto as **Exhibit "Z"** and incorporated by reference herein.  See **Exhibit "Z"** at Doe Run Tr. 1 – Doe Run Tr. 12.

652.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Doe Run Road, LLC and not in the ordinary course of business during the Preference Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Doe Run Road, LLC, and its affiliates, insiders, subsidiaries, or

80291021

any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Doe Run Road, LLC Preferential Transfers and/or the debts paid thereby, (b) additional Doe Run Road, LLC Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Doe Run Road, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

653.    At the time that each Doe Run Road, LLC Preferential Transfer was made, (i) Doe Run Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of Doe Run Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B).

654.    Doe Run Road, LLC was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

655.    Each Doe Run Road, LLC Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Doe Run Road, LLC Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

656.    Each Doe Run Road, LLC Preferential Transfer was made, or caused to be made, to or for the benefit of Doe Run Road, LLC.

657.    Each Doe Run Road, LLC Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Doe Run Road, LLC.

80291021

658.    Each Doe Run Road, LLC Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Doe Run Road, LLC prior to the date on which such Doe Run Road, LLC Preferential Transfer was made.

659.    Doe Run Road, LLC was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Doe Run Road, LLC Preferential Transfer was made.

660.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Doe Run Road, LLC Preferential Transfers were made.

661.    The Doe Run Road, LLC Preferential Transfers enabled Doe Run Road, LLC to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Doe Run Road, LLC Preferential Transfers had not been made and if Doe Run Road, LLC received payment of the debt(s) relating to each such Doe Run Road, LLC Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

662.    Based on the foregoing, the Doe Run Road, LLC Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Doe Run Road, LLC:

(a)    declaring that the Doe Run Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Doe Run Road, LLC constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)    avoiding the Doe Run Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Doe Run Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Doe Run Road, LLC in an amount equal to (i) the Doe Run Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Doe Run Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-

judgment interest from the date of the Doe Run Road, LLC Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)        awarding the Trustee such other and further relief as may be just and proper.

**COUNT XLI – Against Doe Run Road, LLC**
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)**

663.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

664.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Doe Run Road, LLC, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $99,044.59, as more specifically set forth and listed on **Exhibit "Z"** as Doe Run Tr. 1 – Doe Run Tr. 25 (the "Doe Run Road, LLC Fraudulent Transfers").

665.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Doe Run Road, LLC and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Doe Run Road, LLC, and its affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Doe Run Road, LLC Fraudulent Transfers and/or the debts paid thereby, (b) additional Doe Run Road, LLC Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Doe Run Road, LLC, and/or (d) Amendments that may become

known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

666.    Each of the Doe Run Road, LLC Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

667.    The Doe Run Road, LLC Fraudulent Transfers were made within two (2) years prior to the Petition Date.

668.    The Doe Run Road, LLC Fraudulent Transfers were made to or for the benefit of Doe Run Road, LLC.

669.    At the time that each Doe Run Road, LLC Fraudulent Transfer was made, (i) Doe Run Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of Doe Run Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B).

670.    The Doe Run Road, LLC Fraudulent Transfers made to Doe Run Road, LLC were not made in the ordinary course of business.

671.    To the extent that one or more of the Doe Run Road, LLC Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Doe Run Road, LLC Fraudulent Transfers.

672.    The Debtors were insolvent on the dates of the Doe Run Road, LLC Fraudulent Transfers or became insolvent as a result of the Doe Run Road, LLC Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Doe Run Road, LLC

Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

673.    Based upon the foregoing, the Doe Run Road, LLC Fraudulent Transfers made by the Debtors to Doe Run Road, LLC constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Doe Run Road, LLC:

(a)    declaring that the Doe Run Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Doe Run Road, LLC constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the Doe Run Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Doe Run Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Doe Run Road, LLC in an amount equal to (i) the Doe Run Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Doe Run Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Doe Run Road, LLC Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XLII– Against Doe Run Road, LLC
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

674.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

675.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Doe Run Road, LLC, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $557,764.13, as more specifically set forth and listed on **Exhibit "Z"** as Doe Run Tr. 1 – Doe Run 54 (the "Doe Run Road, LLC PUVTA Transfers" and collectively with the Doe Run Road, LLC Preferential Transfers and the Doe Run Road, LLC Fraudulent Transfers, the "Doe Run Road, LLC Transfers").

676.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Doe Run Road, LLC and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Doe Run Road, LLC, and its affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Doe Run Road, LLC PUVTA Transfers and/or the debts paid thereby, (b) additional Doe Run Road, LLC Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Doe Run Road, LLC, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

677.    Each Doe Run Road, LLC PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

678.    Each Doe Run Road, LLC PUVTA Transfer was made to or for the benefit of Doe Run Road, LLC.

679.    At all times relevant to the Doe Run Road, LLC PUVTA Transfers, Doe Run Road, LLC held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

680.    At the time that each Doe Run Road, LLC PUVTA Transfer was made, (i) Doe Run Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of Doe Run Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the Doe Run Road, LLC PUVTA Transfers from each Debtor to Doe Run Road, LLC.  As such, each Doe Run Road, LLC PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

681.    Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Doe Run Road, LLC in the form of property in exchange for each Doe Run Road, LLC PUVTA Transfer.  Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Doe Run Road, LLC in the form of satisfaction of an antecedent debt due to Doe Run Road, LLC.

682.    At the time that each Doe Run Road, LLC PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or

80291021

transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

683.    Each Doe Run Road, LLC PUVTA Transfer was made within the PUVTA Transfer Period.

684.    Each Doe Run Road, LLC PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Doe Run Road, LLC.

685.    Based upon the foregoing, the Doe Run Road, LLC PUVTA Transfers made by the Debtors to Doe Run Road, LLC constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Doe Run Road, LLC pursuant to 11 U.S.C. § 550.

686.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Doe Run Road, LLC pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Doe Run Road, LLC:

(a)    declaring that the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Doe Run Road, LLC constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Doe Run Road, LLC return to the Trustee, pursuant to

11 U.S.C. § 550, the full value of, and awarding judgment against Doe Run Road, LLC in an amount equal to (i) the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Doe Run Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

### COUNT XLIII– Against Doe Run Road, LLC
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544**

687.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

688.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Doe Run Road, LLC, the Doe Run Road, LLC PUVTA Transfers, as more specifically set forth and listed on **Exhibit "Z"** as Doe Run 1 – Doe Run Tr. 54.

689.    Each Doe Run Road, LLC PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

690.    Each Doe Run Road, LLC PUVTA Transfer was made to or for the benefit of Doe Run Road, LLC.

691.    At all times relevant to the Doe Run Road, LLC PUVTA Transfers, Doe Run Road, LLC held a matured or unmatured unsecured claim against the Debtors that arose prior to the Doe Run Road, LLC PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

146

692.    At the time that each Doe Run Road, LLC PUVTA Transfer was made, (i) Doe Run Road, LLC was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of Doe Run Road, LLC, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the Doe Run Road, LLC PUVTA Transfers from each Debtor to Doe Run Road, LLC.

693.    Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Doe Run Road, LLC in the form of property in exchange for each Doe Run Road, LLC PUVTA Transfer.  Each Doe Run Road, LLC PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Doe Run Road, LLC in the form of satisfaction of an antecedent debt due to Doe Run Road, LLC.

694.    At the time of each Doe Run Road, LLC PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Doe Run Road, LLC PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

695.    Each Doe Run Road, LLC PUVTA Transfer was made within the PUVTA Transfer Period.

80291021

696.    Each Doe Run Road, LLC PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Doe Run Road, LLC.

697.    Based upon the foregoing, the Doe Run Road, LLC PUVTA Transfers made by the Debtors to Doe Run Road, LLC constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Doe Run Road, LLC pursuant to 11 U.S.C. § 550.

698.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Doe Run Road, LLC pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Doe Run Road, LLC:

(a)    declaring that the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Doe Run Road, LLC constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)    avoiding the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Doe Run Road, LLC return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Doe Run Road, LLC in an amount equal to (i) the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Doe Run Road, LLC to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Doe Run Road, LLC PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors

to Doe Run Road, LLC, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XLIV – Against G-Force Sportsfishing, Inc.
## AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547

699.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

700.   On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of G-Force Sportsfishing, Inc., in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $548,100.00 as more specifically set forth and listed as G-Force Tr. 1 – G-Force Tr. 21 (the "G-Force Sportsfishing, Inc. Preferential Transfers") in the schedule attached hereto as **Exhibit "AA"** and incorporated by reference herein.  See **Exhibit "AA"** at G-Force Tr. 1 – G-Force Tr. 20.

701.   During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of G-Force Sportsfishing, Inc. and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the G-Force Sportsfishing, Inc., and its affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the G-Force Sportsfishing, Inc. Preferential Transfers and/or the debts paid thereby, (b) additional G-Force Sportsfishing, Inc. Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of G-Force Sportsfishing, Inc., and/or (d) Amendments that may become known to the Trustee at any time during this adversary

149

proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

702.     At the time that each G-Force Sportsfishing, Inc. Preferential Transfer was made, (i) G-Force Sportsfishing, Inc. was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of G-Force Sportsfishing, Inc., as that term is defined in 11 U.S.C. § 101(31)(B).

703.     G-Force Sportsfishing, Inc. was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

704.     Each G-Force Sportsfishing, Inc. Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each G-Force Sportsfishing, Inc. Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

705.     Each G-Force Sportsfishing, Inc. Preferential Transfer was made, or caused to be made, to or for the benefit of G-Force Sportsfishing, Inc.

706.     Each G-Force Sportsfishing, Inc. Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, G-Force Sportsfishing, Inc.

707.     Each G-Force Sportsfishing, Inc. Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to G-Force Sportsfishing, Inc. prior to the date on which such G-Force Sportsfishing, Inc. Preferential Transfer was made.

708.    G-Force Sportsfishing, Inc. was a creditor of the Debtors, within the meaning of

11 U.S.C. § 101(10), at the time that each G-Force Sportsfishing, Inc. Preferential Transfer was

made.

709.    The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy

Code when each of the G-Force Sportsfishing, Inc. Preferential Transfers were made.

710.    The G-Force Sportsfishing, Inc. Preferential Transfers enabled G-Force

Sportsfishing, Inc. to receive more than he would have received if the cases were cases under

chapter 7 of the Bankruptcy Code, if the G-Force Sportsfishing, Inc. Preferential Transfers had

not been made and if G-Force Sportsfishing, Inc. received payment of the debt(s) relating to each

such G-Force Sportsfishing, Inc. Preferential Transfer to the extent provided by the provisions of

the Bankruptcy Code.

711.    Based on the foregoing, the G-Force Sportsfishing, Inc. Preferential Transfers

constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against G-Force Sportsfishing, Inc.:

(a)     declaring that the G-Force Sportsfishing, Inc. Preferential Transfers (plus the
        amount of any additional transfers of property of the Debtors to G-Force
        Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during
        the Preference Period, that discovery may reveal) to G-Force Sportsfishing, Inc.
        constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)     avoiding the G-Force Sportsfishing, Inc. Preferential Transfers (plus the amount
        of any additional transfers of property of the Debtors to G-Force Sportsfishing,
        Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Preference
        Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy
        Code and directing and ordering that G-Force Sportsfishing, Inc. return to the
        Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment
        against G-Force Sportsfishing, Inc. in an amount equal to (i) the G-Force
        Sportsfishing, Inc. Preferential Transfers (plus the amount of any additional
        transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its
        affiliates, insiders, and/or subsidiaries, during the Preference Period, that
        discovery may reveal), and requiring G-Force Sportsfishing, Inc. to immediately
        pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest
        from the date of the G-Force Sportsfishing, Inc. Preferential Transfers (plus the

amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

## COUNT XLV – Against G-Force Sportsfishing, Inc.
## AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)

712.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

713.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of G-Force Sportsfishing, Inc., in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $838,300.00, as more specifically set forth and listed on **Exhibit "AA"** as G-Force Tr. 1 – G-Force Tr. 38 (the "G-Force Sportsfishing, Inc. Fraudulent Transfers").

714.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of G-Force Sportsfishing, Inc. and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the G-Force Sportsfishing, Inc., and its affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the G-Force Sportsfishing, Inc. Fraudulent Transfers and/or the debts paid thereby, (b) additional G-Force Sportsfishing, Inc. Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of G-Force Sportsfishing, Inc., and/or (d) Amendments that may become known to the Trustee at any time during this adversary

proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

715.   Each of the G-Force Sportsfishing, Inc. Fraudulent Transfers constituted a transfer of an interest in property of the Debtors.

716.   The G-Force Sportsfishing, Inc. Fraudulent Transfers were made within two (2) years prior to the Petition Date.

717.   The G-Force Sportsfishing, Inc. Fraudulent Transfers were made to or for the benefit of G-Force Sportsfishing, Inc.

718.   At the time that each G-Force Sportsfishing, Inc. Fraudulent Transfer was made, (i) G-Force Sportsfishing, Inc. was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of G-Force Sportsfishing, Inc., as that term is defined in 11 U.S.C. § 101(31)(B).

719.   The G-Force Sportsfishing, Inc. Fraudulent Transfers made to G-Force Sportsfishing, Inc. were not made in the ordinary course of business.

720.   To the extent that one or more of the G-Force Sportsfishing, Inc. Fraudulent Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the G-Force Sportsfishing, Inc. Fraudulent Transfers.

721.   The Debtors were insolvent on the dates of the G-Force Sportsfishing, Inc. Fraudulent Transfers or became insolvent as a result of the G-Force Sportsfishing, Inc. Fraudulent Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the

G-Force Sportsfishing, Inc. Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

722.    Based upon the foregoing, the G-Force Sportsfishing, Inc. Fraudulent Transfers made by the Debtors to G-Force Sportsfishing, Inc. constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against G-Force Sportsfishing, Inc.:

(a)    declaring that the G-Force Sportsfishing, Inc. Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to G-Force Sportsfishing, Inc. constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the G-Force Sportsfishing, Inc. Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that G-Force Sportsfishing, Inc. return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against G-Force Sportsfishing, Inc. in an amount equal to (i) the G-Force Sportsfishing, Inc. Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring G-Force Sportsfishing, Inc. to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the G-Force Sportsfishing, Inc. Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT XLVI– Against G-Force Sportsfishing, Inc.
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544

723.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

724.     On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, G-Force Sportsfishing, Inc., assets of the Debtors in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $1,015,700.00, as more specifically set forth and listed on **Exhibit "AA"** as G-Force Tr. 1 – G-Force Tr. 51 (the "G-Force Sportsfishing, Inc. PUVTA Transfers" and collectively with the G-Force Sportsfishing, Inc. Preferential Transfers and the G-Force Sportsfishing, Inc. Fraudulent Transfers, the "G-Force Sportsfishing, Inc. Transfers").

725.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of G-Force Sportsfishing, Inc. and not in the ordinary course of business during the PUVTA Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the G-Force Sportsfishing, Inc., and its affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date. The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the G-Force Sportsfishing, Inc. PUVTA Transfers and/or the debts paid thereby, (b) additional G-Force Sportsfishing, Inc. Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of G-Force Sportsfishing, Inc., and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

726.    Each G-Force Sportsfishing, Inc. PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

727.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made to or for the benefit of G-Force Sportsfishing, Inc.

728.    At all times relevant to the G-Force Sportsfishing, Inc. PUVTA Transfers, G-Force Sportsfishing, Inc. held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

729.    At the time that each G-Force Sportsfishing, Inc. PUVTA Transfer was made, (i) G-Force Sportsfishing, Inc. was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of G-Force Sportsfishing, Inc., as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the G-Force Sportsfishing, Inc. PUVTA Transfers from each Debtor to G-Force Sportsfishing, Inc..  As such, each G-Force Sportsfishing, Inc. PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

730.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from G-Force Sportsfishing, Inc. in the form of property in exchange for each G-Force Sportsfishing, Inc. PUVTA Transfer.  Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from G-Force Sportsfishing, Inc. in the form of satisfaction of an antecedent debt due to G-Force Sportsfishing, Inc.

731.    At the time that each G-Force Sportsfishing, Inc. PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii) intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

732.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made within the PUVTA Transfer Period.

733.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, G-Force Sportsfishing, Inc.

734.    Based upon the foregoing, the G-Force Sportsfishing, Inc. PUVTA Transfers made by the Debtors to G-Force Sportsfishing, Inc. constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from G-Force Sportsfishing, Inc. pursuant to 11 U.S.C. § 550.

735.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from G-Force Sportsfishing, Inc. pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against G-Force Sportsfishing, Inc.:

(a)     declaring that the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing,

Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to G-Force Sportsfishing, Inc. constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)     avoiding the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that G-Force Sportsfishing, Inc. return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against G-Force Sportsfishing, Inc. in an amount equal to (i) the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring G-Force Sportsfishing, Inc. to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

### COUNT XLVII– Against G-Force Sportsfishing, Inc.
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544

736.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

737.   On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, G-Force Sportsfishing, Inc., the G-Force Sportsfishing, Inc. PUVTA Transfers, as more specifically set forth and listed on **Exhibit "AA"** as G-Force Tr. 1 – G-Force Tr. 51.

738.   Each G-Force Sportsfishing, Inc. PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

80291021

739.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made to or for the benefit of G-Force Sportsfishing, Inc.

740.    At all times relevant to the G-Force Sportsfishing, Inc. PUVTA Transfers, G-Force Sportsfishing, Inc. held a matured or unmatured unsecured claim against the Debtors that arose prior to the G-Force Sportsfishing, Inc. PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

741.    At the time that each G-Force Sportsfishing, Inc. PUVTA Transfer was made, (i) G-Force Sportsfishing, Inc. was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of G-Force Sportsfishing, Inc., as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the G-Force Sportsfishing, Inc. PUVTA Transfers from each Debtor to G-Force Sportsfishing, Inc..

742.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from G-Force Sportsfishing, Inc. in the form of property in exchange for each G-Force Sportsfishing, Inc. PUVTA Transfer.  Each G-Force Sportsfishing, Inc. PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from G-Force Sportsfishing, Inc. in the form of satisfaction of an antecedent debt due to G-Force Sportsfishing, Inc.

743.    At the time of each G-Force Sportsfishing, Inc. PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the G-Force Sportsfishing, Inc. PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses

or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

744.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made within the PUVTA Transfer Period.

745.    Each G-Force Sportsfishing, Inc. PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, G-Force Sportsfishing, Inc.

746.    Based upon the foregoing, the G-Force Sportsfishing, Inc. PUVTA Transfers made by the Debtors to G-Force Sportsfishing, Inc. constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from G-Force Sportsfishing, Inc. pursuant to 11 U.S.C. § 550.

747.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from G-Force Sportsfishing, Inc. pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against G-Force Sportsfishing, Inc.:

(a)      declaring that the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to G-Force Sportsfishing, Inc.

constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)     avoiding the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that G-Force Sportsfishing, Inc. return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against G-Force Sportsfishing, Inc. in an amount equal to (i) the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring G-Force Sportsfishing, Inc. to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the G-Force Sportsfishing, Inc. PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to G-Force Sportsfishing, Inc., and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT XLVIII – Against Lyons & Obetz
## AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547

748.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

749.    On or within the Preference Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Lyons & Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $108,250.00 as more specifically set forth and listed as L&O Tr. 1 – L&O Tr. 21 (the "Lyons & Obetz Preferential Transfers") in the schedule attached hereto as **Exhibit "BB"** and incorporated by reference herein. See **Exhibit "BB"** at L&O Tr. 1 – L&O Tr. 21.

750.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit

of Lyons & Obetz and not in the ordinary course of business during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Lyons & Obetz, and its affiliates, insiders, subsidiaries, or any other transferee during the Preference Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Lyons & Obetz Preferential Transfers and/or the debts paid thereby, (b) additional Lyons & Obetz Transfers (as defined below), (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Lyons & Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

751.    At the time that each Lyons & Obetz Preferential Transfer was made, (i) Lyons & Obetz was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of Lyons & Obetz, as that term is defined in 11 U.S.C. § 101(31)(B).

752.    Lyons & Obetz was (i) an "insider" of each Debtor, as that term is defined in 11 U.S.C. § 101(31)(B); and (ii) an "insider" and "affiliate" of each Defendant, as those terms are defined in 11 U.S.C. §§ 101(2), 101(31)(B), 101(31)(C), and 101(31)(E).

753.    Each Lyons & Obetz Preferential Transfer constituted a transfer of an interest in property of the Debtors. The bank account from which each Lyons & Obetz Preferential Transfer was drawn was owned by either Debtor W&O or Debtor Amerigreen Energy.

754.    Each Lyons & Obetz Preferential Transfer was made, or caused to be made, to or for the benefit of Lyons & Obetz.

80291021

755.   Each Lyons & Obetz Preferential Transfer was made payable to and cashed by, or wired directly to and accepted by, Lyons & Obetz.

756.   Each Lyons & Obetz Preferential Transfer was made, or caused to be made, for or on account of one or more antecedent debts owed by the Debtors to Lyons & Obetz prior to the date on which such Lyons & Obetz Preferential Transfer was made.

757.   Lyons & Obetz was a creditor of the Debtors, within the meaning of 11 U.S.C. § 101(10), at the time that each Lyons & Obetz Preferential Transfer was made.

758.   The Debtors were insolvent for purposes of Section 547(b) of the Bankruptcy Code when each of the Lyons & Obetz Preferential Transfers were made.

759.   The Lyons & Obetz Preferential Transfers enabled Lyons & Obetz to receive more than he would have received if the cases were cases under chapter 7 of the Bankruptcy Code, if the Lyons & Obetz Preferential Transfers had not been made and if Lyons & Obetz received payment of the debt(s) relating to each such Lyons & Obetz Preferential Transfer to the extent provided by the provisions of the Bankruptcy Code.

760.   Based on the foregoing, the Lyons & Obetz Preferential Transfers constitute avoidable preferential transfers pursuant to Section 547(b) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Lyons & Obetz:

(a)   declaring that the Lyons & Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) to Lyons & Obetz constitute avoidable preferential transfers pursuant to 11 U.S.C. § 547;

(b)   avoiding the Lyons & Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) pursuant to Section 547 of the Bankruptcy Code and directing and ordering that Lyons & Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Lyons & Obetz in an amount equal to (i) the Lyons & Obetz Preferential Transfers (plus the amount

of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal), and requiring Lyons & Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Lyons & Obetz Preferential Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Preference Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

<u>COUNT XLIX – Against Lyons & Obetz</u>
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)**

761.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

762.    On or within the Fraudulent Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of Lyons & Obetz, in the form of one or more payments of monies and/or transfers of goods in, at least, the total amount of $230,785.58, as more specifically set forth and listed on **Exhibit "BB"** as L&O Tr. 1 – L&O Tr. 46 (the "<u>Lyons & Obetz Fraudulent Transfers</u>").

763.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Lyons & Obetz and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Lyons & Obetz, and its affiliates, insiders, subsidiaries, or any other transferee during the Fraudulent Transfer Period.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Lyons & Obetz Fraudulent Transfers and/or the debts paid thereby, (b) additional Lyons & Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders,

80291021

and/or subsidiaries of Lyons & Obetz, and/or (d) Amendments that may become known to the

Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and

for the Amendments to relate back to this Complaint.

764.    Each of the Lyons & Obetz Fraudulent Transfers constituted a transfer of an

interest in property of the Debtors.

765.    The Lyons & Obetz Fraudulent Transfers were made within two (2) years prior to

the Petition Date.

766.    The Lyons & Obetz Fraudulent Transfers were made to or for the benefit of

Lyons & Obetz.

767.    At the time that each Lyons & Obetz Fraudulent Transfer was made, (i) Lyons &

Obetz was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§

101(2) and 101(31)(E); and (ii) Seth Obetz was an "insider" of each Debtor and of Lyons &

Obetz, as that term is defined in 11 U.S.C. § 101(31)(B).

768.    The Lyons & Obetz Fraudulent Transfers made to Lyons & Obetz were not made

in the ordinary course of business.

769.    To the extent that one or more of the Lyons & Obetz Fraudulent Transfers were

not on account of an antecedent debt or were prepayments for goods or services subsequently

received, the Debtors received less than reasonably equivalent value in exchange for the Lyons

& Obetz Fraudulent Transfers.

770.    The Debtors were insolvent on the dates of the Lyons & Obetz Fraudulent

Transfers or became insolvent as a result of the Lyons & Obetz Fraudulent Transfers; or (ii) were

engaged in business or a transaction for which any property remaining with the Debtors was an

unreasonably small capital at the time of, or as a result of the Lyons & Obetz Fraudulent

80291021

Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

771.    Based upon the foregoing, the Lyons & Obetz Fraudulent Transfers made by the Debtors to Lyons & Obetz constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Lyons & Obetz:

(a)    declaring that the Lyons & Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Lyons & Obetz constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)    avoiding the Lyons & Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Lyons & Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Lyons & Obetz in an amount equal to (i) the Lyons & Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Lyons & Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Lyons & Obetz Fraudulent Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

**COUNT L– Against Lyons & Obetz**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5104 OF PUVTA AND 11 U.S.C. § 544**

772.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

773.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Lyons & Obetz, assets of the Debtors in the form of one or more payments of  monies and/or transfers of goods in, at least, the total amount of $471,986.08, as more specifically set forth and listed on **Exhibit "BB"** as L&O Tr. 1 – L&O 99 (the "Lyons & Obetz PUVTA Transfers" and collectively with the Lyons & Obetz Preferential Transfers and the Lyons & Obetz Fraudulent Transfers, the "Lyons & Obetz Transfers").

774.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Lyons & Obetz and not in the ordinary course of business during the PUVTA Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the Lyons & Obetz, and its affiliates, insiders, subsidiaries, or any other transferee during the PUVTA Transfer Period, including, but not limited to, fraudulent transfers that occurred more than four (4) years prior to the Petition Date, and fraudulent transfers that occurred more than ten (10) years prior to the Petition Date.  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Lyons & Obetz PUVTA Transfers and/or the debts paid thereby, (b) additional Lyons & Obetz Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Lyons & Obetz, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

775.    Each Lyons & Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa.C.S.A. § 5101(b).

776.     Each Lyons & Obetz PUVTA Transfer was made to or for the benefit of Lyons & Obetz.

777.     At all times relevant to the Lyons & Obetz PUVTA Transfers, Lyons & Obetz held a matured or unmatured unsecured claim against the Debtors that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

778.     At the time that each Lyons & Obetz PUVTA Transfer was made, (i) Lyons & Obetz was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of Lyons & Obetz, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the Lyons & Obetz PUVTA Transfers from each Debtor to Lyons & Obetz.  As such, each Lyons & Obetz PUVTA Transfer was made with the actual intent to hinder, delay or defraud creditors of the Debtors.

779.     Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Lyons & Obetz in the form of property in exchange for each Lyons & Obetz PUVTA Transfer.  Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Lyons & Obetz in the form of satisfaction of an antecedent debt due to Lyons & Obetz.

780.     At the time that each Lyons & Obetz PUVTA Transfer was made, the Debtors (i) were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to their business or transactions, or (ii)

intended to incur, or believed or reasonably should have believed that the Debtors would incur, debts beyond the Debtors' ability to pay as they became due.

781.    Each Lyons & Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

782.    Each Lyons & Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Lyons & Obetz.

783.    Based upon the foregoing, the Lyons & Obetz PUVTA Transfers made by the Debtors to Lyons & Obetz constitute fraudulent transfers under 12 Pa.C.S.A. §§ 5104, 5109(1), and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Lyons & Obetz pursuant to 11 U.S.C. § 550.

784.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5104.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Lyons & Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Lyons & Obetz:

(a)    declaring that the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Lyons & Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544;

(b)    avoiding the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5104 and 11 U.S.C. § 544 and directing and ordering that Lyons & Obetz return to the Trustee, pursuant to 11 U.S.C. §

550, the full value of, and awarding judgment against Lyons & Obetz in an amount equal to (i) the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Lyons & Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

### COUNT LI Against Lyons & Obetz
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 5105 OF PUVTA AND 11 U.S.C. § 544**

785.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

786.    On or within the PUVTA Transfer Period, certain Debtors transferred and/or caused to be transferred, to or for the benefit of, Lyons & Obetz, the Lyons & Obetz PUVTA Transfers, as more specifically set forth and listed on **Exhibit "BB"** as L&O Tr. 1 – L&O Tr. 99.

787.    Each Lyons & Obetz PUVTA Transfer constituted a transfer of an "asset" of the Debtors, as that term is defined in 12 Pa. C.S.A. § 5101(b).

788.    Each Lyons & Obetz PUVTA Transfer was made to or for the benefit of Lyons & Obetz.

789.    At all times relevant to the Lyons & Obetz PUVTA Transfers, Lyons & Obetz held a matured or unmatured unsecured claim against the Debtors that arose prior to the Lyons & Obetz PUVTA Transfers that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

790.    At the time that each Lyons & Obetz PUVTA Transfer was made, (i) Lyons & Obetz was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§

80291021

101(2) and 101(31)(E); (ii) Seth Obetz was an "insider" of each Debtor and of Lyons & Obetz, as that term is defined in 11 U.S.C. § 101(31)(B); and (iii) Seth Obetz dominated and controlled each Debtor and the transfer of the Lyons & Obetz PUVTA Transfers from each Debtor to Lyons & Obetz.

791.    Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any reasonably equivalent value in exchange for each transfer of assets from the Debtors.  Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Lyons & Obetz in the form of property in exchange for each Lyons & Obetz PUVTA Transfer.  Each Lyons & Obetz PUVTA Transfer was made by the Debtors without the Debtors receiving any consideration from Lyons & Obetz in the form of satisfaction of an antecedent debt due to Lyons & Obetz.

792.    At the time of each Lyons & Obetz PUVTA Transfer, the Debtors were insolvent, or became insolvent as a result of the Lyons & Obetz PUVTA Transfers, because (i) the Debtors had unreasonably small capital in relation to their businesses or their transactions and/or (ii) the sum of the Debtors' debts was greater than all of the Debtors' assets, at a fair valuation, exclusive of assets transferred, concealed, or removed with the intent to hinder, delay or defraud the Debtors' creditors, and assets that may be exempt from property of the Debtors' estates under 11 U.S.C. § 522.

793.    Each Lyons & Obetz PUVTA Transfer was made within the PUVTA Transfer Period.

794.    Each Lyons & Obetz PUVTA Transfer was made payable to and cashed by, or wired directly or indirectly to and accepted by, Lyons & Obetz.

80291021

795.    Based upon the foregoing, the Lyons & Obetz PUVTA Transfers made by the Debtors to Lyons & Obetz constitute fraudulent transfers under 12 Pa.C.S.A. § 5105, and are avoidable by the Trustee pursuant to 11 U.S.C. § 544(b) and recoverable from Lyons & Obetz pursuant to 11 U.S.C. § 550.

796.    To the extent that any fraudulent transfers occurred (i) more than four (4) years prior to the Petition Date, and/or (ii) more than ten (10) years prior to the Petition Date, such transfers constitute fraudulent transfers under 12 Pa. C.S.A. § 5105.  Pursuant to 11 U.S.C. § 544(b), the Trustee may use the applicable statute of limitations available to any actual creditor of the Debtors, including, but not limited to, the Internal Revenue Service and the Pennsylvania Department of Revenue, to avoid such fraudulent transfers pursuant to 11 U.S.C. § 544(b), and may recover such fraudulent transfers from Lyons & Obetz pursuant to 11 U.S.C. § 550.

WHEREFORE, the Trustee seeks judgment against Lyons & Obetz:

(a)    declaring that the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) to Lyons & Obetz constitute avoidable fraudulent transfers pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544;

(b)    avoiding the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) pursuant to 12 Pa.C.S.A. § 5105 and 11 U.S.C. § 544 and directing and ordering that Lyons & Obetz return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Lyons & Obetz in an amount equal to (i) the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal), and requiring Lyons & Obetz to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Lyons & Obetz PUVTA Transfers (plus the amount of any additional transfers of property of the Debtors to Lyons & Obetz, and any of its affiliates, insiders, and/or subsidiaries, during the PUVTA Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

**COUNT LII – Against Shipley Energy Company**
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)**

797.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

798.    On or within the Fraudulent Transfer Period, Seth Obetz caused the Debtors to transfer their confidential and proprietary customer list to Shipley Energy, for no consideration.

799.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Shipley Energy and not in the ordinary course of business during the Fraudulent Transfer Period.  It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of Shipley Energy during the Fraudulent Transfer Period (the "Shipley Energy Transfers").  The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Shipley Energy Transfers and/or the debts paid thereby, (b) additional Shipley Energy Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Shipley Energy, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

800.    Each of the Shipley Energy Transfers constituted a transfer of an interest in property of the Debtors.

801.    The Shipley Energy Transfers were made within two (2) years prior to the Petition Date.

802.    The Shipley Energy Transfers were made to or for the benefit of Shipley Energy.

80291021

803.    At the time that each of the Shipley Energy Transfers were made, Shipley Energy was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

804.    The Shipley Energy Transfers were not made in the ordinary course of business.

805.    To the extent that one or more of the Shipley Energy Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Shipley Energy Transfers.

806.    The Debtors were insolvent on the dates of the Shipley Energy Transfers or became insolvent as a result of the Shipley Energy Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Shipley Energy Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

807.    Based upon the foregoing, the Shipley Energy Transfers made by the Debtors to Shipley Energy constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Shipley Energy:

(a)     declaring that the Shipley Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Shipley Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Shipley Energy constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)     avoiding the Shipley Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Shipley Energy, and any of their affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Shipley Energy return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Shipley Energy in an amount equal to (i) the Shipley Energy Transfers (plus the amount of any additional

transfers of property of the Debtors to Shipley Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Shipley Energy to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Shipley Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Shipley Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)      awarding the Trustee such other and further relief as may be just and proper

<u>**COUNT LIII – Against Seth Energy LLC**</u>
**AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)**

808.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

809.   On or within the Fraudulent Transfer Period, Seth Obetz caused the Debtors to transfer their confidential and proprietary customer list to Seth Energy, for no consideration.

810.   During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers of property of the Debtors that were made to or for the benefit of Seth Energy and not in the ordinary course of business during the Fraudulent Transfer Period. It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of Seth Energy during the Fraudulent Transfer Period (the "<u>Seth Energy Transfers</u>").   The Trustee reserves the right to amend this Complaint to include: (a) further information regarding the Seth Energy Transfers and/or the debts paid thereby, (b) additional Seth Energy Transfers, (c) additional defendants, including, but not limited to, any other affiliates, insiders, and/or subsidiaries of Seth Energy, and/or (d) Amendments that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

80291021

811.    Each of the Seth Energy Transfers constituted a transfer of an interest in property of the Debtors.

812.    The Seth Energy Transfers were made within two (2) years prior to the Petition Date.

813.    The Seth Energy Transfers were made to or for the benefit of Seth Energy.

814.    At the time that each of the Seth Energy Transfer were made, Seth Energy was an "insider" and "affiliate" of each Debtor, as those terms are defined in 11 U.S.C. §§ 101(2) and 101(31)(E).

815.    The Seth Energy Transfers made to Seth Energy were not made in the ordinary course of business.

816.    To the extent that one or more of the Seth Energy Transfers were not on account of an antecedent debt or were prepayments for goods or services subsequently received, the Debtors received less than reasonably equivalent value in exchange for the Seth Energy Transfers.

817.    The Debtors were insolvent on the dates of the Seth Energy Transfers or became insolvent as a result of the Seth Energy Transfers; or (ii) were engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of the Seth Energy Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

818.    Based upon the foregoing, the Seth Energy Transfers made by the Debtors to Seth Energy constitute avoidable fraudulent transfers pursuant to Section 548(a) of the Bankruptcy Code.

WHEREFORE, the Trustee seeks judgment against Seth Energy:

80291021

(a)     declaring that the Seth Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) to Seth Energy constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a);

(b)     avoiding the Seth Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Energy, and any of their affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) pursuant to Section 548(a) of the Bankruptcy Code and directing and ordering that Seth Energy return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of, and awarding judgment against Seth Energy in an amount equal to (i) the Seth Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal), and requiring Seth Energy to immediately pay the foregoing to the Trustee, (ii) pre-judgment and post-judgment interest from the date of the Seth Energy Transfers (plus the amount of any additional transfers of property of the Debtors to Seth Energy, and any of its affiliates, insiders, and/or subsidiaries, during the Fraudulent Transfer Period, that discovery may reveal) were made through the date of the payment at the maximum legal rate, and (iii) the Trustee's attorneys' fees and costs incurred in this suit; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

### COUNT LIV – Against All Defendants
### RECOVERY OF FRAUDULENT TRANSFERS PURSUANT
### TO PUVTA AND BANKRUPTCY CODE § 544

819.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

820.    Upon information and belief, investigation and discovery will reveal that Defendants fraudulently transferred additional monies and assets belonging to the Debtors, which transfers have not yet been uncovered.

821.    The Transfers were fraudulent because they were made with the actual intent to hinder, delay, or defraud the Debtors' creditors; or were made by the Debtors without the Debtors receiving a reasonably equivalent value in exchange for the transfer or obligation.

80291021

822.    At the time of the Transfers, the Debtors were insolvent, or became insolvent as a result of the Transfers, and/or had unreasonably small capital in relation to their business or their transactions at the time or as a result of the Transfers, the Debtors' debts were greater than all of the Debtors' property, at a fair valuation, exclusive of the property transferred, concealed, or removed with intent to hinder, delay, or defraud the Debtors' creditors, and property that may be exempted from property of the estate under Section 522 of the Bankruptcy Code.

823.    At the time of the Transfers, the Debtors were engaged in a business or a transaction, or were about to engage in a business or transaction, for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction; or the Debtors intended to incur, or believed, or reasonably should have believed that the Debtors would incur debts beyond the Debtors' ability to pay as they became due.

824.    Based on the foregoing, the Transfers constituted fraudulent transfers under 12 Pa. C.S. §§ 5101, et seq., and are avoidable by the Trustee pursuant to Section 544(b) of the Bankruptcy Code and recoverable from Defendants pursuant to Section 550(a) of the Bankruptcy Code.

**WHEREFORE**, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Defendants on Count LIV of the Complaint:

(a)    awarding the Trustee a return of and clear title to the property fraudulently transferred;

(b)    awarding the Trustee monetary damages in an amount to be determined;

(c)    awarding the Trustee punitive damages; and

(d)    awarding the Trustee such other and further relief as the Court deems just and proper.

80291021

## COUNT LV - Against 149 Doe Run Road, LP
## TURNOVER PURSUANT TO 11 U.S.C. § 542

825.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

826.    W&O's books and records provide that a receivable in the amount of $15,217.74 is due and owing from 149 Doe Run Road, LP to W&O on account of amounts loaned by W&O to 149 Doe Run Road, LP (the "149 Doe Run Road Account Receivable") prior to the Petition Date.

827.    By Letter, dated July 13, 2018, from the Trustee to 149 Doe Run Road, LP, the Trustee demanded that 149 Doe Run Road, LP remit payment of the full amount of the 149 Doe Run Road Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that 149 Doe Run Road, LP claims excludes the 149 Doe Run Road Account Receivable from recovery by the Trustee.  A true and correct copy of the letter, dated July 13, 2018, from the Trustee to 149 Doe Run Road, LP is attached hereto as **Exhibit "CC"** and incorporated by reference herein.

828.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the 149 Doe Run Road Account Receivable.

829.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. 793, 800 (Bankr. S.D.Fla. 2002).

80291021

830.    The 149 Doe Run Road Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

831.    As property of the Debtors' estates under 11 U.S.C. § 541, the 149 Doe Run Road Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

832.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

833.    149 Doe Run Road, LP is in possession, custody, and/or control of the proceeds of the loan from W&O to 149 Doe Run Road, LP, which 149 Doe Run Road, LP is obligated to repay the full amount of the 149 Doe Run Road Account Receivable to W&O on account of such loan.

834.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the 149 Doe Run Road Account Receivable under 11 U.S.C. § 363.

835.    The 149 Doe Run Road Account Receivable is valuable and beneficial to the Debtors' estates.

836.    Turnover and payment of the 149 Doe Run Road Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

837.    The 149 Doe Run Road Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

80291021

WHEREFORE, the Trustee seeks judgment against 149 Doe Run Road, LP:

(a)     declaring that the 149 Doe Run Road Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)     directing turnover and payment of the full amount of the 149 Doe Run Road Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by 149 Doe Run Road, LP; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT LVI - Against 202 Greenfield, LP
## TURNOVER PURSUANT TO 11 U.S.C. § 542

838.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

839.    W&O's books and records provide that a receivable in the amount of $235,946.94 is due and owing from 202 Greenfield, LP to W&O on account of amounts loaned by W&O to 202 Greenfield, LP (the "202 Greenfield Account Receivable") prior to the Petition Date.

840.    By Letter, dated July 13, 2018, from the Trustee to 202 Greenfield, LP, the Trustee demanded that 202 Greenfield, LP remit payment of the full amount of the 202 Greenfield Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that 202 Greenfield, LP claims excludes the 202 Greenfield Account Receivable from recovery by the Trustee.  A true and correct copy of the letter, dated July 13, 2018, from the Trustee to 202 Greenfield, LP is attached hereto as **Exhibit "DD"** and incorporated by reference herein.

841.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the 202 Greenfield Account Receivable.

842.     11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. at 800.

843.     The 202 Greenfield Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

844.     As property of the Debtors' estates under 11 U.S.C. § 541, the 202 Greenfield Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

845.     11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

846.     202 Greenfield, LP is in possession, custody, and/or control of the proceeds of the loan from W&O to 202 Greenfield, LP, which 202 Greenfield, LP is obligated to repay the full amount of the 202 Greenfield Account Receivable to W&O on account of such loan.

847.     The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the 202 Greenfield Account Receivable under 11 U.S.C. § 363.

848.     The 202 Greenfield Account Receivable is valuable and beneficial to the Debtors' estates.

849.   Turnover and payment of the 202 Greenfield Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

850.   The 202 Greenfield Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against 202 Greenfield, LP:

(a)   declaring that the 202 Greenfield Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)   directing turnover and payment of the full amount of the 202 Greenfield Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by 202 Greenfield, LP; and

(c)   awarding the Trustee such other and further relief as may be just and proper.

### COUNT LVII - Against Doe Run Road, LLC
### TURNOVER PURSUANT TO 11 U.S.C. § 542

851.   The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

852.   W&O's books and records provide that a receivable in the amount of $428,860.90 is due and owing from Doe Run Road, LLC to W&O on account of amounts loaned by W&O to Doe Run Road, LLC (the "Doe Run Road Account Receivable") prior to the Petition Date.

853.   By Letter, dated July 13, 2018, from the Trustee to Doe Run Road, LLC, the Trustee demanded that Doe Run Road, LLC remit payment of the full amount of the Doe Run Road Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that Doe Run Road, LLC claims excludes the Doe Run Road Account Receivable from recovery by the Trustee.  A

true and correct copy of the letter, dated July 13, 2018, from the Trustee to Doe Run Road, LLC is attached hereto as **Exhibit "EE"** and incorporated by reference herein.

854.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the Doe Run Road Account Receivable.

855.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. at 800.

856.    The Doe Run Road Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

857.    As property of the Debtors' estates under 11 U.S.C. § 541, the Doe Run Road Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

858.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

859.    Doe Run Road, LLC is in possession, custody, and/or control of the proceeds of the loan from W&O to Doe Run Road, LLC, which Doe Run Road, LLC is obligated to repay the full amount of the Doe Run Road Account Receivable to W&O on account of such loan.

80291021

860.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the Doe Run Road Account Receivable under 11 U.S.C. § 363.

861.    The Doe Run Road Account Receivable is valuable and beneficial to the Debtors' estates.

862.    Turnover and payment of the Doe Run Road Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

863.    The Doe Run Road Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Doe Run Road, LLC:

(a)    declaring that the Doe Run Road Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)    directing turnover and payment of the full amount of the Doe Run Road Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by Doe Run Road, LLC; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

## COUNT LVIII - Against G-Force Sportsfishing, Inc.
### TURNOVER PURSUANT TO 11 U.S.C. § 542

864.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

865.    W&O's books and records provide that a receivable in the amount of $683,696.42 is due and owing from G-Force Sportsfishing, Inc. to W&O on account of amounts loaned by W&O to G-Force Sportsfishing, Inc. (the "G-Force Account Receivable") prior to the Petition Date.

866.    By Letter, dated July 13, 2018, from the Trustee to G-Force Sportsfishing, Inc., the Trustee demanded that G-Force Sportsfishing, Inc. remit payment of the full amount of the G-Force Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that G-Force Sportsfishing, Inc. claims excludes the G-Force Account Receivable from recovery by the Trustee.  A true and correct copy of the letter, dated July 13, 2018, from the Trustee to G-Force Sportsfishing, Inc. is attached hereto as **Exhibit "FF"** and incorporated by reference herein.

867.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the G-Force Account Receivable.

868.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. at 800.

869.    The G-Force Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

870.    As property of the Debtors' estates under 11 U.S.C. § 541, the G-Force Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

871.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the

value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

872.    G-Force Sportsfishing, Inc. is in possession, custody, and/or control of the proceeds of the loan from W&O to G-Force Sportsfishing, Inc., which G-Force Sportsfishing, Inc.  is obligated to repay the full amount of the G-Force Account Receivable to W&O on account of such loan.

873.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the G-Force Account Receivable under 11 U.S.C. § 363.

874.    The G-Force Account Receivable is valuable and beneficial to the Debtors' estates.

875.    Turnover and payment of the G-Force Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

876.    The G-Force Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against G-Force Sportsfishing, Inc.:

(a)    declaring that the G-Force Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)    directing turnover and payment of the full amount of the G-Force Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by G-Force Sportsfishing, Inc.; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

80291021

## COUNT LIX - Against JW Bishop Properties, LLC
### TURNOVER PURSUANT TO 11 U.S.C. § 542

877.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

878.    W&O's books and records provide that a receivable in the amount of $371,605.37 is due and owing from JW Bishop Properties, LLC to W&O on account of amounts loaned by W&O to JW Bishop Properties, LLC (the "JW Bishop Account Receivable") prior to the Petition Date.

879.    By Letter, dated July 13, 2018, from the Trustee to JW Bishop Properties, LLC, the Trustee demanded that JW Bishop Properties, LLC remit payment of the full amount of the JW Bishop Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that JW Bishop Properties, LLC claims excludes the JW Bishop Account Receivable from recovery by the Trustee.  A true and correct copy of the letter, dated July 13, 2018, from the Trustee to JW Bishop Properties, LLC is attached hereto as **Exhibit "GG"** and incorporated by reference herein.

880.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the JW Bishop Account Receivable.

881.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. at 800.

80291021

882.    The JW Bishop Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

883.    As property of the Debtors' estates under 11 U.S.C. § 541, the JW Bishop Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

884.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

885.    JW Bishop Properties, LLC is in possession, custody, and/or control of the proceeds of the loan from W&O to JW Bishop Properties, LLC, which JW Bishop Properties, LLC is obligated to repay the full amount of the JW Bishop Account Receivable to W&O on account of such loan.

886.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the JW Bishop Account Receivable under 11 U.S.C. § 363.

887.    The JW Bishop Account Receivable is valuable and beneficial to the Debtors' estates.

888.    Turnover and payment of the JW Bishop Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

889.    The JW Bishop Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

80291021

WHEREFORE, the Trustee seeks judgment against JW Bishop Properties, LLC:

(a)     declaring that the JW Bishop Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)     directing turnover and payment of the full amount of the JW Bishop Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by JW Bishop Properties, LLC; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

<u>**COUNT LX - Against Lyons & Obetz**</u>
**TURNOVER PURSUANT TO 11 U.S.C. § 542**

890.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

891.    W&O's books and records provide that a receivable in the amount of $12,959.50 is due and owing from Lyons & Obetz to W&O on account of amounts loaned by W&O to Lyons & Obetz (the "<u>L&O Account Receivable</u>") prior to the Petition Date.

892.    By Letter, dated July 13, 2018, from the Trustee to Lyons & Obetz, the Trustee demanded that Lyons & Obetz remit payment of the full amount of the L&O Account Receivable, plus any accrued and unpaid interest and other charges, to the Trustee, or notify the Trustee in writing with specificity of any defenses that Lyons & Obetz claims excludes the L&O Account Receivable from recovery by the Trustee.  A true and correct copy of the letter, dated July 13, 2018, from the Trustee to Lyons & Obetz is attached hereto as **Exhibit "HH"** and incorporated by reference herein.

893.    Despite the Trustee's request, the Trustee received no response to her demand for payment of the L&O Account Receivable.

80291021

894.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate.  See In re Santaella, 298 B.R. at 800.

895.    The L&O Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

896.    As property of the Debtors' estates under 11 U.S.C. § 541, the L&O Account Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

897.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

898.    Lyons & Obetz is in possession, custody, and/or control of the proceeds of the loan from W&O to Lyons & Obetz, which Lyons & Obetz is obligated to repay the full amount of the L&O Account Receivable to W&O on account of such loan.

899.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the L&O Account Receivable under 11 U.S.C. § 363.

900.    The L&O Account Receivable is valuable and beneficial to the Debtors' estates.

80291021

901.    Turnover and payment of the L&O Account Receivable is appropriate pursuant to 11 U.S.C. § 542.

902.    The L&O Account Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Lyons & Obetz:

(a)    declaring that the L&O Account Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)    directing turnover and payment of the full amount of the L&O Account Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the loan from W&O to the date of turnover and payment by Lyons & Obetz; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

**COUNT LXI - Against Seth Obetz**
**TURNOVER PURSUANT TO 11 U.S.C. § 542**

903.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

904.    W&O's books and records provide that a loan receivable in the amount of $419,923.79 is due and owing from Seth Obetz to W&O on account of stockholder loans made by W&O to Seth Obetz (the "Seth Obetz Stockholder Loan Receivable") prior to the Petition Date.  The amount due and owing to W&O on account of the Seth Obetz Stockholder Loan Receivable is reflected in the Detailed Trial Balance for 2018 of Worley & Obetz's General Ledger, a true and correct copy of which is attached hereto as **Exhibit "II"** and incorporated by reference herein.

905.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   All property in which a debtor had a legal or equitable interest as of the commencement of the

192

bankruptcy case, "wherever located throughout the world and by whomever held," is property of

the estate.  See In re Santaella, 298 B.R. at 800.

906.    The Seth Obetz Stockholder Loan Receivable is property of the Debtors' estates

under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in

property as of the commencement of the case."

907.    As property of the Debtors' estates under 11 U.S.C. § 541, the Seth Obetz

Stockholder Loan Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

908.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a

debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during
> the case, of property that the trustee may use, sell, or lease under section
> 363 of this title, or that the debtor may exempt under section 522 of this
> title, shall deliver to the trustee, and account for, such property or the
> value of such property, unless such property is of inconsequential value or
> benefit to the estate.

11 U.S.C. § 542.

909.    Seth Obetz is in possession, custody, and/or control of the proceeds of the

stockholder loan from W&O to Seth Obetz, which Seth Obetz is obligated to repay the full

amount of the Seth Obetz Stockholder Loan Receivable to W&O on account of such loan.

910.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on

account of the Seth Obetz Stockholder Loan Receivable under 11 U.S.C. § 363.

911.    The Seth Obetz Stockholder Loan Receivable is valuable and beneficial to the

Debtors' estates.

912.    Turnover and payment of the Seth Obetz Stockholder Loan Receivable is

appropriate pursuant to 11 U.S.C. § 542.

80291021

913.    The Seth Obetz Stockholder Loan Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Seth Obetz:

(a)    declaring that the Seth Obetz Stockholder Loan Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)    directing turnover and payment of the full amount of the Seth Obetz Stockholder Loan Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the stockholder loan from W&O to the date of turnover and payment by Seth Obetz; and

(c)    awarding the Trustee such other and further relief as may be just and proper.

**COUNT LXII - Against Bob Obetz**
**TURNOVER PURSUANT TO 11 U.S.C. § 542**

914.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

915.    W&O's books and records provide that a loan receivable in the amount of $75,536.67 is due and owing from Bob Obetz to W&O on account of stockholder loans made by W&O to Seth Obetz (the "Bob Obetz Stockholder Loan Receivable") prior to the Petition Date. The amount due and owing to W&O on account of the Bob Obetz Stockholder Loan Receivable is reflected in the Detailed Trial Balance for 2018 of Worley & Obetz's General Ledger, attached hereto as **Exhibit "II"**.

916.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate. See In re Santaella, 298 B.R. at 800.

917.   The Bob Obetz Stockholder Loan Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

918.   As property of the Debtors' estates under 11 U.S.C. § 541, the Bob Obetz Stockholder Loan Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

919.   11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

920.   Bob Obetz is in possession, custody, and/or control of the proceeds of the stockholder loan from W&O to Bob Obetz, which Bob Obetz is obligated to repay the full amount of the Bob Obetz Stockholder Loan Receivable to W&O on account of such loan.

921.   The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the Bob Obetz Stockholder Loan Receivable under 11 U.S.C. § 363.

922.   The Bob Obetz Stockholder Loan Receivable is valuable and beneficial to the Debtors' estates.

923.   Turnover and payment of the Bob Obetz Stockholder Loan Receivable is appropriate pursuant to 11 U.S.C. § 542.

924.   The Bob Obetz Stockholder Loan Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Bob Obetz:

80291021

(a)     declaring that the Bob Obetz Stockholder Loan Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)     directing turnover and payment of the full amount of the Bob Obetz Stockholder Loan Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542, as well as reasonable interest to be calculated from the date of receipt of the proceeds of the stockholder loan from W&O to the date of turnover and payment by Bob Obetz; and

(c)     awarding the Trustee such other and further relief as may be just and proper.

## COUNT LXIII - Against Jeff Lyons
## TURNOVER PURSUANT TO 11 U.S.C. § 542

925.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

926.    W&O's books and records provide that a loan receivable in the amount of $57,352.01 is due and owing from Jeff Lyons to W&O on account of stockholder loans made by W&O to Jeff Lyons (the "Jeff Lyons Stockholder Loan Receivable") prior to the Petition Date. The amount due and owing to W&O on account of the Jeff Lyons Stockholder Loan Receivable is reflected in the Detailed Trial Balance for 2018 of Worley & Obetz's General Ledger, attached hereto as **Exhibit "II"**.

927.    11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). All property in which a debtor had a legal or equitable interest as of the commencement of the bankruptcy case, "wherever located throughout the world and by whomever held," is property of the estate. See In re Santaella, 298 B.R at 800.

928.    The Jeff Lyons Stockholder Loan Receivable is property of the Debtors' estates under 11 U.S.C. § 541 because it constitutes as "legal or equitable interest of the debtor in property as of the commencement of the case."

80291021

929.    As property of the Debtors' estates under 11 U.S.C. § 541, the Jeff Lyons Stockholder Loan Receivable is subject to turnover pursuant to 11 U.S.C. § 542.

930.    11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

931.    Jeff Lyons is in possession, custody, and/or control of the proceeds of the stockholder loan from W&O to Jeff Lyons, which Jeff Lyons is obligated to repay the full amount of the Jeff Lyons Stockholder Loan Receivable to W&O on account of such loan.

932.    The Trustee may use, sell, or lease the proceeds due and owing to W&O on account of the Jeff Lyons Stockholder Loan Receivable under 11 U.S.C. § 363.

933.    The Jeff Lyons Stockholder Loan Receivable is valuable and beneficial to the Debtors' estates.

934.    Turnover and payment of the Jeff Lyons Stockholder Loan Receivable is appropriate pursuant to 11 U.S.C. § 542.

935.    The Jeff Lyons Stockholder Loan Receivable is property of the Debtors' estates pursuant to 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Jeff Lyons:

(a)     declaring that the Jeff Lyons Stockholder Loan Receivable is property of the Debtors' estates under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. § 542;

(b)     directing turnover and payment of the full amount of the Jeff Lyons Stockholder Loan Receivable to the Trustee immediately in accordance with 11 U.S.C. § 542,

as well as reasonable interest to be calculated from the date of receipt of the proceeds of the stockholder loan from W&O to the date of turnover and payment by Jeff Lyons; and

(c)      awarding the Trustee such other and further relief as may be just and proper.

**COUNT LXIV - Against Seth Obetz, Melissa Obetz, Jeff Lyons, Julie Lyons, Mr. Cramer, Ms. Cramer, Ms. Kelly, 149 Doe Run Road, LP, 202 Greenfield, LP, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, JW Bishop Properties, LLC & Lyons & Obetz TURNOVER PURSUANT TO 11 U.S.C. § 542**

936.     The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

937.     Upon information and belief, the Real Properties were purchased with funds from the Debtors' bank accounts.

938.     11 U.S.C. § 541 defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

939.     The Real Properties were purchased with funds from W&O's bank account and/or with funds from other accounts funded by the Debtors. The funds that were used to purchase the Real Properties were either (i) directly paid by W&O at closing, (ii) flowed from W&O to Seth Obetz and/or Jeff Lyons through a contra-equity account in the form of distributions to Seth Obetz and Jeff Lyons as shareholders, or (iii) flowed from W&O to 149 Doe Run Road, LP, 202 Greenfield, LP, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, JW Bishop Properties, LLC and/or Lyons & Obetz through a note payable back to W&O against which no actual payments were made.  W&O also paid the monthly mortgage payments due and owing on the Real Properties in the form of rental payments.

940.     Any and all right, title, and equitable interest in the Real Properties were acquired with funds from W&O and the other Debtors.

941.     As such, the Real Properties, and any proceeds from any sales of the Real Properties, are property of the Debtors' estates under 11 U.S.C. § 541 because the Debtors' right, title, and interest in the Real Properties constitutes a "legal or equitable interest of the debtor in property as of the commencement of the case.

942.     As property of the Debtors' estates under 11 U.S.C. § 541, the Real Properties are subject to turnover pursuant to 11 U.S.C. § 542.

943.     11 U.S.C. § 542 gives a trustee the power to seek turnover of all property of a debtor's estate.  See 11 U.S.C. § 542.  11 U.S.C. § 542 states, in pertinent part, that:

> An entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

944.     Seth Obetz, Melissa Obetz, Jeff Lyons, Julie Lyons, Mr. Cramer, Ms. Cramer, Ms. Kelly, 149 Doe Run Road, LP, 202 Greenfield, LP, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, JW Bishop Properties, LLC, and Lyons & Obetz are in possession, custody, and/or control of their respective pieces of Real Property.

945.     The Trustee may use, sell, or lease the Real Properties, and any proceeds received therefrom, under 11 U.S.C. § 363.

946.     The Real Properties are valuable and beneficial to the Debtors' estates.

947.     Turnover of the Real Properties, and any proceeds received from any sale of any of the Real Properties, is appropriate pursuant to 11 U.S.C. § 542.

948.    The Real Properties, and any proceeds received from any sale of any of the Real

Properties, are property of the Debtors' estates and subject to turnover to the estates pursuant to

11 U.S.C. § 542.

WHEREFORE, the Trustee seeks judgment against Seth Obetz, Melissa Obetz, Jeff

Lyons, Julie Lyons, Mr. Cramer, Ms. Cramer, Ms. Kelly, 149 Doe Run Road, LP, 202

Greenfield, LP, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, JW Bishop Properties,

LLC, and Lyons & Obetz:

> (a)     declaring that the Real Properties are property of the Debtors' estates
> under 11 U.S.C. § 541 and subject to turnover pursuant to 11 U.S.C. §
> 542;
>
> (b)     directing turnover of the Real Properties, or the value of the Real
> Properties, to the Trustee immediately in accordance with 11 U.S.C. §
> 542; and
>
> (c)     awarding the Trustee such other and further relief as may be just and
> proper.

### COUNT LXV– Against Seth Obetz
### ENFORCEMENT OF THE AUTOMATIC STAY
### PURSUANT TO 11 U.S.C. §§ 362(A)(1) AND 362(A)(3)

949.    The Trustee incorporates herein by reference the preceding paragraphs of the

Complaint as if set forth at length herein.

950.    Section 362(a) of the Bankruptcy Code defines the scope of the automatic stay in

pertinent part as follows:

> [A] Petition filed under … this title … operates as a stay … of—
>
> (1) the commencement or continuation … of a judicial,
> administrative, or other action or proceeding against the debtor that
> was or could have been commenced before the commencement of
> the case under this title, or to recover a claim against the debtor
> that arose before the commencement of the case under this title;
> [and]

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate….

951.    Section 541 of the Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

952.    W&O paid $2.3 million to construct Molly's and owns the physical structures that comprise the convenience store and gas station on the 35 Doe Run Road property.

953.    W&O also owns all Goods currently located at Molly's, certain renewable energy inventory located at Molly's, and all Equipment used in W&O's operation of Molly's.

954.    W&O also continued to operate Molly's under a valid lease agreement up to the filing of the Petition and, as of today's date, is current on paying rent for the 35 Doe Run Road property.

955.    Thus, W&O retains a valid leasehold interest in the 35 Doe Run Road property.

956.    The items set forth at Paragraphs 157-59 constitute property of W&O's estate under Section 541 of the Bankruptcy Code.

957.    By attempting to reopen Molly's, and take possession of the Goods, renewable energy inventory, and Equipment located at Molly's, Seth Obetz is attempting to exercise self-help over property of W&O's estate in violation of the automatic stay.

958.    Further, because W&O retains a valid leasehold interest in the 35 Doe Run Road property, Seth Obetz cannot evict W&O and take possession of Molly's without obtaining relief from the automatic stay and initiating eviction proceedings in accordance with governing federal and Pennsylvania law.

959.    Seth Obetz's violation of the automatic stay is willful.

960.    In fact, Seth Obetz recently posted a sign on the 35 Doe Run Road property stating that Molly's was "opening soon" and that he was "Going to Court.  Fighting for Molly's." [See Picture, attached as **Exhibit JJ**].

961.    Pursuant to Sections 105 and 362 of the Bankruptcy Code, the Court should preliminarily and permanently enjoin Seth Obetz from continuing to violate the automatic stay by (a) attempting to take possession of Molly's and the personal property located at Molly's, and exercise control over Molly's by reopening Molly's to the public, and/or (b) commencing eviction proceedings against W&O in an effort to evict W&O from the 35 Doe Run Road property.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Seth Obetz:

(a)    preliminarily and permanently enjoining Seth Obetz from violating the automatic stay by (i) attempting to take possession of Molly's and the personal property located at Molly's, and exercise control over Molly's by reopening it to the public, and/or (ii) commencing eviction proceedings against W&O in an effort to evict W&O from the 35 Doe Run Road property;

(b)    awarding the Trustee monetary damages in an amount to be determined;

(c)    awarding the Trustee its reasonable attorneys' fees and costs;

(d)    awarding the Trustee punitive damages; and

(e)    awarding the Trustee such other and further relief as the Court deems just and proper.

### COUNT LXVI – Against Seth Obetz
### BREACH OF LEASE AGREEMENT

962.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

963.    W&O operated Molly's on the 35 Doe Run Road property under valid lease agreements with "Obetz Enterprises" and, later, Seth Obetz, from April 1997 up to the filing of the Petition.

964.    When W&O filed its Petition, W&O operated Molly's on the 35 Doe Run Road property under the terms of the 2012 Agreement.

965.    As of today's date, W&O is current on paying rent for the lease of the 35 Doe Run Road property to Seth Obetz.

966.    Seth Obetz has never provided W&O with written notice of any alleged default or any notice of termination of the leasehold.

967.    Paragraph 16 of the 2012 Agreement provides that Seth Obetz "will keep and maintain [W&O] in **exclusive**, quiet, peaceable and **undisturbed and uninterrupted possession of the [Property]** during the term of the [2012 Agreement]."   [See Exh. N, at ¶ 16 (emphasis added)].

968.    Seth Obetz has materially breached the 2012 Agreement by attempting to take possession of the 35 Doe Run Road property from W&O, thereby depriving W&O of its right to exclusive and uninterrupted possession of the 35 Doe Run Road property.

969.    Seth Obetz has also materially breached the 2010 Agreement, 2011 Agreement, and 2012 Agreement by charging W&O rent for the 35 Doe Run Road property in an amount in excess of the rent amounts stated in the 2012 Agreement, 2011 Agreement, and 2012 Agreement, and in excess of the fair market value for the 35 Doe Run Road property (the "Excess Rent").

970.    Seth Obetz's material breaches of the 2010 Agreement, 2011 Agreement, and 2013 Agreement have damaged the Debtor by (a) depriving W&O of the right to exclusive and

uninterrupted possession of the 35 Doe Run Road property, and (b) requiring W&O to pay Excess Rent not required under the terms of the 2010 Agreement, 2011 Agreement, and 2012 Agreement.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Seth Obetz:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

## COUNT LXVII – Against Seth Obetz
### DECLARATORY JUDGMENT OF OWNERSHIP OF
### MOLLY'S AND THE PROPERTY LOCATED AT MOLLY'S

971.     The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

972.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights, status, and other legal relations of any interested party seeking a declaratory judgment.

973.     W&O invested approximately $2.3 million in the construction of Molly's.

974.     Neither Seth Obetz nor "Obetz Enterprises" contributed any money toward the construction of Molly's.

975.     W&O also owns the Goods, renewable energy inventory, and Equipment located at the Molly's location.

976.     In or around late 2009, Seth Obetz purchased the other "Obetz Enterprises" partners' interests in the 35 Doe Run Road property and became sole owner of the property. [See Exh. J, generally].

977.    When Seth Obetz purchased the other "Obetz Enterprises" partners' interests in the 35 Doe Run Road property, it was valued at $1,300,000.00.

978.    $800,000.00 of the $1,300,000.00 value of the 35 Doe Run Road property was attributed directly to Molly's.

979.    The Trustee has an interest in clarifying ownership of Molly's and the property located at the Molly's location because the Trustee believes Molly's and the property located at the Molly's location constitute property of W&O's estate.

980.    An actual case or controversy exists because the parties dispute ownership of Molly's and the property located at the Molly's location.

981.    More specifically, Seth Obetz has taken the position that he owns Molly's and the property located at the Molly's location, and has represented to the Trustee (and the public) that he intends to reopen Molly's to the public in mid-August 2018.

982.    Declaratory relief will resolve this controversy.

983.    Accordingly, the Trustee is entitled to a declaration from the Court as to ownership of the 35 Doe Run Road property, Molly's, and the personal property located at the Molly's location.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Seth Obetz:

(a)    declaring W&O the legal owner of Molly's and all property located at the Molly's location;

(b)    preliminarily and permanently enjoining Seth Obetz from violating the automatic stay by (i) attempting to take possession of Molly's and the 35 Doe Run Road property located at Molly's, and exercise control over Molly's by reopening it to the public, and/or (ii) commencing eviction proceedings against W&O in an effort to evict W&O from the 35 Doe Run Road property;

(c)    awarding the Trustee monetary damages in an amount to be determined;

80291021

(d)      awarding the Trustee its reasonable attorneys' fees and costs;

(e)      awarding the Trustee punitive damages; and

(f)      awarding the Trustee such other and further relief as the Court deems just and proper.

## COUNT LXVIII– Against Seth Obetz
## UNJUST ENRICHMENT (IN THE ALTERNATIVE TO COUNT LXVI)

984.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

985.    On several occasions between 2010 and 2018, Seth Obetz required W&O pay Excess Rent on the 35 Doe Run Road property.

986.    Seth Obetz has not provided W&O with consideration for the Excess Rent W&O paid to lease the 35 Doe Run Road property and, instead, has unjustly retained those amounts without any compensation to W&O.

987.    It would be inequitable to allow Seth Obetz to retain the Excess Rent that W&O paid to lease the 35 Doe Run Road property.

988.    As a direct and proximate cause of Seth Obetz's unjust enrichment, W&O has suffered, and continues to suffer, damages.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Seth Obetz:

(a)      awarding the Trustee monetary damages in an amount to be determined;

(b)      awarding the Trustee its reasonable attorneys' fees and costs;

(c)      awarding the Trustee punitive damages; and

(d)      awarding the Trustee such other and further relief as the Court deems just and proper.

80291021

## COUNT LXIX - Against Seth Obetz, Shipley Energy, and Seth Energy
## VIOLATION OF PENNSYLVANIA UNIFORM
## TRADE SECRETS ACT ("PUTSA"), 12 Pa. C.S.A. §§ 5301, et seq.

989.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

990.    The Debtor's customer list and customer contact information (the "Customer List") constitute trade secrets under PUTSA.

991.    At all times relevant, Seth Obetz had a duty to maintain the secrecy of the Customer List.

992.    As set forth above, Seth Obetz acquired the Debtors' Customer List by improper means and disclosed the customer list to Shipley Energy and Seth Energy without express or implied consent.

993.    At the time of the disclosure, Shipley Energy and Seth Energy knew or had reason to know, that Seth Obetz acquired the Customer List by improper means.

994.    Upon information and belief, Shipley Energy and Seth Energy have used the Debtors' Customer List for their own benefit and to the detriment of the Debtors, their estates, and creditors.

995.    The Debtors and their estates have suffered harm as a result of Seth Obetz, Shipley Energy, and Seth Energy's misappropriation of the Customer List.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the Trustee's favor and against Seth Obetz, Shipley Energy, and Seth Energy:

(a)     awarding the Trustee monetary damages in an amount to be determined;

(b)     awarding the Trustee its reasonable attorneys' fees and costs;

(c)     awarding the Trustee punitive damages; and

80291021

(d)     awarding the Trustee such other and further relief as the Court deems just and proper.

**<u>COUNT LXX– Against Seth Obetz, Shipley Energy, and Seth Energy</u>**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

996.    The Trustee incorporates herein by reference the preceding paragraphs of the Complaint as if set forth at length herein.

997.    The Debtors maintained contractual relationships with their customers, including, but not limited to, the customers identified on the Customer List (the "<u>Debtors' Customers</u>").

998.    Shipley Energy and Seth Energy and knew that the Debtors maintained contractual relationships with the Debtors' Customers and intentionally interfered with the relationships through improper and/or illegal means, as described in detail above.

999.    Defendants' interference caused injury to the contractual relationships between the Debtors and their Customers.

80291021

WHEREFORE, the Trustee respectfully requests that the Court enter judgment in the

Trustee's favor and against Seth Obetz, Shipley Energy, and Seth Energy on Count LXXI of the

Complaint:

(a)      awarding the Trustee monetary damages in an amount to be determined;

(b)      awarding the Trustee its reasonable attorneys' fees and costs;

(c)      awarding the Trustee punitive damages; and

(d)      awarding the Trustee such other and further relief as the Court deems just and
proper.

Respectfully Submitted,
**FOX ROTHSCHILD LLP**

_/s/ Michael G. Menkowitz_
Michael G. Menkowitz, Esquire
Craig A. Styer, Esquire
David Grant Crooks, Esquire (*pro hac vice*)
Jason C. Manfrey, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone (215) 299-2000
Facsimile (215) 299-2150
mmenkowitz@foxrothschild.com
cstyer@foxrothschild.com
dcrooks@foxrothschild.com
jmanfrey@foxrothschild.com
Dated: December 6, 2018          *Counsel for Christine C. Shubert,*
*Chapter 7 Trustee*

80291021