# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re<br><br>WORLEY & OBETZ, INC., *et al.*,[1]<br><br>Debtors. | CHAPTER 7<br><br>Case No. 18-13774 (MDC)<br>(Jointly Administered) |
| **CHRISTINE C. SHUBERT,** Chapter 7 Trustee for the Estates of Worley & Obetz, Inc., *et al.*;<br><br>Plaintiff,<br><br>vs.<br><br>**ROBERT SETH OBETZ**, an individual;<br>**ROBERT W. OBETZ, JR.,** an individual;<br>**JEFFREY B. LYONS,** an individual;<br>**JUDITH A. AVILEZ,** an individual;<br>**KAREN L. CONNELLY**, an individual;<br>**MARJORIE S. OBETZ**, an individual;<br>**MELISSA OBETZ,** an individual;<br>**JULIE LYONS,** an individual;<br>**MOLLY S. OBETZ,** an individual;<br>**SAMUEL J. OBETZ**, an individual;<br>**HOWARD W. CRAMER, JR.**, an individual;<br>**KATHLEEN A. CRAMER,** an individual;<br>**MICHELE K. KLUSEWITZ, a/k/a MICHELE KELLY,** an individual;<br>**149 DOE RUN ROAD, LP,** a Pennsylvania limited partnership;<br>**149 DOE RUN ROAD, GP, LLC,** a Pennsylvania limited liability company;<br>**202 GREENFIELD, LP,** a Pennsylvania limited partnership;<br>**202 GREENFIELD GENERAL, LLC,** a Pennsylvania limited liability company; | Adv. No. 18-00235 (MDC) |

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

111535014.v3

**535 STIEGEL VALLEY ROAD, LLC,** a Pennsylvania limited liability company;
**DOE RUN ROAD, LLC,** a Pennsylvania limited liability company;
**OL PARTNERS, LLC,** a Pennsylvania limited liability company;
**G-FORCE SPORTFISHING, INC.,** a Delaware corporation;
**JW BISHOP PROPERTIES, LLC,** a Pennsylvania limited liability company;
**LYONS & OBETZ**, a Pennsylvania general partnership;
**JSB RETENTION, LLC**, a Pennsylvania limited liability company;
**SETH ENERGY, LLC,** a Pennsylvania limited liability company; and
**SHIPLEY ENERGY COMPANY**, a Pennsylvania corporation;

Defendants.

## CHAPTER 7 TRUSTEE'S MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG THE CHAPTER 7 TRUSTEE AND DEFENDANTS

Christine C. Shubert, Chapter 7 Trustee ("Trustee") for the jointly administered estates of Worley & Obetz, Inc., *et al.* (the "Debtors"), by and through her attorneys, Fox Rothschild LLP, requests the entry of an order approving the Settlement Agreement (the "Agreement") by and among the Trustee, and Defendants Jeffrey B. Lyons, Julie H. Lyons, Judith A. Avilez, Robert Seth Obetz, Robert W. Obetz, Jr., Marjorie S. Obetz, Melissa Obetz, Molly Obetz, Samuel J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Lyons & Obetz, 202 Greenfield General LLC, 202 Greenfield, LP, Doe Run Road, LLC, 149 Doe Run Road, LP, 149 Doe Run Road GP, LLC, JW Bishop Properties LLC, 535 Stiegel Valley Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., and JSB Retention LLC (collectively, the "Defendants," and together with the Trustee, the "Parties"), pursuant to Fed. R. Bankr. P. 9019 (the "Motion"). In support of the Motion, the Trustee respectfully represents as follows:

2

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

**A.  Bankruptcy Procedural Background**

4. On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

5. On the same day, the Office of the United States Trustee appointed the Trustee as Chapter 7 Trustee, which appointment remains in effect.

6. On June 19, 2018, the Court entered an order directing the joint administration of the Debtors' bankruptcy cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

7. On October 15, 2018, the Trustee commenced an adversary proceeding against the Defendants, captioned as Christine C. Shubert v. Robert Seth Obetz, et al. at Case No. 18-00235, asserting a variety of claims, including breach of fiduciary duties and fraudulent transfers (the "Adversary Action").

**B.  Negotiation of the Agreement Between the Parties**

8. From its commencement, the Parties have conducted extensive, arms-length negotiations to resolve the Adversary Action. During the initial stages of the Adversary Action, the negotiations involved discussions over telephone, as well as in-person meetings, which resulted

3

in meaningful progress towards a resolution. However, the parties later faced an impasse on certain issues that prevented a final resolution, particularly with respect to insurance coverage and the allocation of damages. At that point, the Parties agreed to a virtual JAMS mediation before Peter Woodin, Esquire. The mediation, together with subsequent negotiations, ultimately resulted in the Agreement among the Parties.

9. In order to settle and resolve all disputes between the Parties as to the Adversary Action, the Parties seek to enter the Agreement on the terms set forth therein. A copy of the Agreement is attached hereto as **Exhibit "A"**, and incorporated by reference herein.

**C.    Salient Provisions of the Agreement**

10. A summary of the pertinent terms of the Agreement are as follows:

    a. ***Settlement Payments.*** USLI[2], on behalf of Judith A. Avilez, Karen L. Connelly, Michele K. Klusewitz, a/k/a Michele Kelly, Jeffrey B. Lyons, Julie Lyons, Molly S. Obetz, Samuel J. Obetz, Melissa Obetz, Robert Seth Obetz, Robert W. Obetz, Jr., and Marjorie Obetz will issue a lump sum payment to the Trustee in the amount of $1,640,000.00 on account of Debtor Worley & Obetz, Inc. Travelers, on behalf of Robert W. Obetz, Jr., Marjorie Obetz, Robert Seth Obetz, Melissa Obetz, Jeffrey B.. Lyons, and Julie Lyons, will issue a lump sum payment to the Trustee in the amount of $650,000.00 on account of Debtor Amerigreen Energy, Inc.

    b. ***Payment to Judith Avilez's Defense Counsel***. USLI, on behalf of its insured, Judith Avilez, shall issue a lump sum payment in the amount of $10,000.00 to the law firm of Rush Law Group, LLC, as a full and final payment for the costs of Ms. Avilez's defense in connection with the Adversary Action and all related criminal proceedings. In exchange for Ms. Avilez's execution of USLI's Policy Release, the Trustee will withdraw her pending objection to the *Motion for Entry of an Order Determining that a Directors and Officers Liability Insurance Policy is Not Property of the Bankruptcy Estate or, in the Alternative, for Relief from the Automatic Stay, to Allow Advancement and Payment of Defense Costs from Directors and Officers Liability Insurance Policy* [A.D.N. 122].

---

[2] Capitalized terms not otherwise defined herein shall have their meaning ascribed in the Agreement.

4

   c. ***Turnover of Interest in Properties***. The Defendants shall take all steps necessary to transfer each and all of their respective rights, titles, responsibilities, and interests in and to the Properties[3] to the Trustee.

   d. ***Termination of Rent Receiver***. The Parties acknowledge that, pursuant to the Court's Order Appointing Rent Receiver dated August 29, 2019 [D.I. 162], Thomas J. Beane's rights and duties as the Receiver shall cease and terminate without further action.

   e. ***Turnover of Interest in Tax Refunds and Tax Credits.*** The Defendants shall absolutely and irrevocably assign, transfer, and convey to the Trustee any and all of their rights, title, and interests in and to any and all tax refunds and tax credits for tax periods through 2018.

   f. ***Turnover of Interests in Summit Shares***. Mr. Lyons, Robert Seth Obetz, Robert W. Obetz, Jr., and JSB Retention, LLC shall take all steps necessary to assign, transfer, and convey to the Trustee, all of their rights, titles, and interests in and to the their shares of Summit Insurance Ltd., and any and all dividends, distributions, and other rights and privileges incidental to their ownership of the Summit Shares.

   g. ***Turnover of Interests in OL Partners, LLC***. Robert Seth Obetz and Mr. Lyons shall take all steps necessary to assign, transfer, and convey to the Trustee, all of their rights, titles, and interests in and to OL Partners, LLC and all assets owned by OL Partners, LLC.

   h. ***Rights of First Refusal***. Robert Seth Obetz shall retain a right of first refusal in connection with the anticipated auction sale of 45 Doe Run Road and the OL Partners' Assets. Within ten (10) days of the anticipated auction, Robert Seth Obetz shall notify the Trustee in writing whether he wishes to purchase 45 Doe Run Road and/or the OL Partners' Assets at a price that exceeds the minimal incremental bid above the highest bid received at the auction. With respect to 45 Doe Run Road, the Trustee agrees that 45 Doe Run Road will be sold independently from any of the other Properties being transferred to the Trustee, and that it will not be partnered with or otherwise included in any potential block sale of the Properties.

   i. ***Mutual Releases.*** Except for their obligations under the Agreement, and in consideration of the provisions set forth in this Agreement and in the attached Policy Releases, the Parties and their respective agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of them, hereby remise, release and forever discharge each other and their respective agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of them, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which the Parties and anyone claiming through or on behalf of them

---

[3] The term "Properties" as used in the Agreement refers to 55 Doe Run Road, 41 Doe Run Road, 202 Greenfield Road, 62 Doe Run Road, 45 Doe Run Road, 40127 Fenwick Avenue, 149 Doe Run Road, and the Sayre Property.

5

have, ever had, might have had or might have in the future, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Adversary Action, and all other disputes arising out of or related to the Debtors' bankruptcy cases, from the beginning of time to the end of time. The release provided in this paragraph will be effective upon the filing of the Stipulation of Dismissal.

## RELIEF REQUESTED

11. By and through this Motion, the Trustee seeks entry of an Order authorizing and approving the Agreement pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF REQUESTED

12. Bankruptcy Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor. . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); see also Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).

13. At bottom, the Trustee is obligated to maximize the value of the estate and make her decisions in the best interests of all creditors. See Martin, 91 F.3d at 394. Indeed, courts generally defer to a trustee's business judgment when there is a legitimate business justification for a trustee's decision. See Martin, 91 F.3d at 395.

14. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393. To this end, courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Id. (citation omitted).

15. This Court should approve the Agreement because it is supported by sound business justifications, the terms of the Agreement are more than reasonable, and the four (4) Martin factors weigh in favor of approval.

### A. Probability of Success

16. First, and most importantly, the approval of the Agreement will result in the successful turnover of nearly all assets that are subject to the Trustee's claims in the Adversary Actions.

17. The Adversary Action arose primarily out of a decade-long scheme implemented by the Debtors' principal officer, Defendant Jeffrey B. Lyons, where Mr. Lyons and his co-conspirators misrepresented the Debtors' finances to obtain millions of dollars in loans from financial institutions and other creditors.

18. Among other things, the Trustee alleges that the Defendants unjustly reaped the benefits of the scheme by using the ill-gotten loan proceeds for their own personal interests, including acquiring rental properties, commercial properties, vacation homes, a yacht, and an airplane. The Trustee has also alleged that the Debtors' officers and directors breached their fiduciary duties by failing to uncover the scheme until all of the Debtors' assets had been depleted.

19. The Trustee believes that she would prevail on most of the 70 counts brought against the Defendants' if the Trustee prosecuted the Adversary Action to conclusion. In practical terms, however, the Agreement effectively achieves this result without having to spend additional time and resources pursuing the Trustee's claims. In other words, the Agreement, if approved, will result in the successful turnover of nearly all of the tangible assets that are subject to the Trustee's claims in the Adversary Action.

20. Among other things, Defendants are turning over the real property that certain Defendants purchased using allegedly ill-gotten proceeds, as well as a significant portion of the

remaining proceeds of the Debtors' applicable insurance policies. In the aggregate, the Trustee believes that the Properties are worth in excess of $4,500,000, with over $2,000,000 in equity. This equity, plus the nearly $2,300,000 in Settlement Payments, results in the Agreement producing over $4,000,000 (excluding the other miscellaneous assets subject to the Agreement) in unencumbered funds that may be available for distribution to creditors. By any definition, the Trustee believes this is a successful result.

### B. Collection Difficulties

21. Second, collecting any damages in excess of those being turned over would likely be difficult given the Defendants' current financial positions, particularly given the criminal convictions of certain Defendants.

22. Prior to consummating the Agreement, certain Defendants provided financial information to the Trustee to facilitate the Trustee's analysis of the Agreement. This financial information confirmed that collecting any damages in excess of those being turned over under the Agreement would largely be fruitless. Indeed, certain of the Defendants are subject to significant restitution awards in connection with criminal convictions.

23. At bottom, the Agreement represents the most realistic and cost efficient way of resolving the Adversary Action in a manner that maximizes the recovery for the Debtors' creditors.

### C. Complexity, Cost, and Delay

24. In light of the significant costs and limited upside associated with continuing litigation against the Defendants, which would require, among other things, extensive discovery, testimony, and briefing, the Trustee submits, in the exercise of her business judgment, that the Agreement proposed herein is reasonable, will maximize the benefit to the estate with the least cost, and will increase the amount of proceeds that can be distributed to other creditors by millions of unsecured dollars.

25. The Adversary Action includes 70 counts against the Defendants, many of which are complex and need substantial evidentiary support to prevail. Obtaining this evidentiary support would be extremely costly and time consuming. Indeed, hundreds of professional hours would be spent preparing for and conducting discovery, and ultimately trying the case. Given the favorable terms of the Agreement and the collection difficulties described above, the Trustee submits that these additional expenses come with little to no benefit to the Debtors' estates.

### D. Interest of Creditors

26. The Trustee believes that the paramount interest of the creditors favors approval of the Agreement.

27. The Adversary Action has spanned over two years since its commencement. During this time, the Trustee and her professionals have worked diligently to obtain a favorable result for the Debtors creditors that ultimately maximizes recovery. Among these creditors are the Debtors' prepetition lenders, former employees, and former customers. The Agreement represents an important step in winding down these cases, as it produces a meaningful recovery for losses caused by the Defendants. In the absence of this Court's approval, the Debtors' creditors will unnecessarily continue to suffer loses beyond those already suffered.

28. For the foregoing reasons, and because the Parties engaged in good faith, arms-length settlement negotiations in entering into the Agreement, the Court's approval of the Agreement is appropriate and in the best interest of the estate and its creditors.

### NOTICE

29. This Motion has been provided to (i) the Office of the United States Trustee for the Eastern District of Pennsylvania; (ii) counsel for the Debtors; (iii) counsel for Fulton Bank; (iv) counsel for Defendants; and notice of this Motion to (v) all parties who have requested notice pursuant to Fed. R. Bankr. P. 2002 at the time the Trustee filed the Motion; and (vi) in accordance

with this Court's August 1, 2018 *Order Pursuant to 11 U.S.C. §§ 102 and 105(a) and Fed. R. Bankr. P. 2002(m) and 9007 Establishing Notice and Service Procedures* [D.I. 265]. The Trustee submits that such notice is proper and adequate and no further notice is necessary or required.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court enter an Order authorizing and approving the Agreement pursuant to Bankruptcy Rule 9019, and granting such other and further relief as the Court deems appropriate.

    Respectfully submitted,

    **FOX ROTHSCHILD LLP**

    By: */s/ Michael G. Menkowitz*
    Michael G. Menkowitz, Esquire
    Jesse M. Harris, Esquire
    2000 Market Street, Twentieth Floor
    Philadelphia, PA  19103-3222
    Phone (215) 299-2000/Fax (215) 299-2150
    mmenkowitz@foxrothschild.com
    jesseharris@foxrothschild.com

    *Attorneys for Christine C. Shubert, Chapter 7 Trustee for the estates of Worley & Obetz, Inc., et al.*

Dated:  October 28, 2020