# Exhibit "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made October __, 2020, by and among Christine C. Shubert, solely in her capacity as the Chapter 7 Trustee (the "Trustee") for the jointly administered estates of Worley & Obetz, Inc., *et al.* (the "Debtors"[1]), on the one hand, and Defendants, Jeffrey B. Lyons, Julie H. Lyons, Judith A. Avilez, Robert Seth Obetz, Robert W. Obetz, Jr., Marjorie S. Obetz, Melissa Obetz, Molly Obetz, Samuel J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Lyons & Obetz, 202 Greenfield General LLC, 202 Greenfield, LP, Doe Run Road, LLC, 149 Doe Run Road, LP, 149 Doe Run Road GP, LLC, JW Bishop Properties LLC, 535 Stiegel Valley Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., and JSB Retention LLC, on the other (collectively, "Defendants," with the Trustee, the "Parties").

## RECITALS

### Bankruptcy Procedural Background

A.      On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

B.      On the same day, the Office of the United States Trustee appointed the Trustee as Chapter 7 Trustee, which appointment remains in effect.

C.      On June 19, 2018, the Bankruptcy Court entered an order directing the joint administration of the Debtors' bankruptcy cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

D.      Prior to the Petition Date, Jeffrey B. Lyons ("Mr. Lyons") was the Chief Executive Officer of Debtor Worley & Obetz, Inc. ("W&O") until May 15, 2018, when he was terminated for cause.

### 55 Doe Run Road, Manheim, PA  17545

E.      On or about March 22, 2002, Mr. Lyons, Robert Seth Obetz, Molly Obetz, and Samuel J. Obetz, formed Lyons & Obetz, a Pennsylvania general partnership, for the stated purpose of buying and selling real estate.

F.      On or about March 22, 2002, Lyons & Obetz purchased the real property and improvements at 55 Doe Run Road, Manheim, Pennsylvania ("55 Doe Run Road") for

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

$1,600,000.00.

G.      W&O paid the down payment for the purchase of 55 Doe Run Road.

H.      On or about September 11, 2006, Lyons & Obetz obtained a loan from Fulton Bank, N.A. ("Fulton Bank") in the amount of $1,360,000.00 to pay the balance of the purchase price of 55 Doe Run Road (the "55 Doe Run Road Loan").  W&O guaranteed the repayment of the 55 Doe Run Road Loan.

## 41 Doe Run Road, Manheim, PA  17545

I.      On or about June 29, 2007, Lyons & Obetz purchased the real property and improvements at 41 Doe Run Road, Manheim, Pennsylvania ("41 Doe Run Road") for $350,000.00.

J.      W&O paid the down payment for Lyons & Obetz's purchase of 41 Doe Run Road in the amount of $35,000.00.

K.      Lyons & Obetz obtained a mortgage loan from Fulton Bank to finance the balance of the purchase price for 41 Doe Run Road in the amount of $230,000.00 (the "41 Doe Run Road Loan").  W&O guaranteed the repayment of the 41 Doe Run Road Loan.

## 40127 Fenwick Avenue, Fenwick Island, DE  19944

L.      In May 2009, Robert Seth Obetz, Melissa Obetz, Mr. Lyons, and Julie H. Lyons ("Ms. Lyons"), purchased a vacation rental property located at 40127 Fenwick Avenue, Fenwick Island, Delaware ("40127 Fenwick Avenue").

M.      W&O paid $540,000.00 as the down payment on the purchase of 40127 Fenwick Avenue.

## 202 Greenfield Road, Manheim, PA  17601

N.      On or about November 25, 2009, W&O purchased the real property and improvements located at 202 Greenfield Road, Manheim, Pennsylvania ("202 Greenfield Road").

O.      W&O purchased 202 Greenfield Road, in part, with a $1,120,000.00 purchase-money mortgage loan from Fulton Bank (the "202 Greenfield Road Loan").

P.      On or about April 3, 2012, Robert Seth Obetz, as the sole limited partner, and 202 Greenfield General LLC, as the general partner, formed 202 Greenfield, LP.

Q.      On or about August 30, 2013, 202 Greenfield, LP purchased the real property and improvements at 202 Greenfield Road from W&O for $1,374,253.00.  Fulton Bank agreed to transfer the 202 Greenfield Road Loan from W&O to 202 Greenfield, LP.

114848909.v2

R.      W&O paid all the closing costs for the transfer of 202 Greenfield Road to 202 Greenfield, LP and W&O did not retain equity in 202 Greenfield Road at the time of the transfer to 202 Greenfield, LP.

S.      As part of the payment for 202 Greenfield Road, on or about August 30, 2013, W&O and 202 Greenfield, LP entered into a Promissory Note, whereby 202 Greenfield, LP agreed to pay W&O the principal sum of $386,867.50, together with interest at 3.950% per year, in monthly installments of $3,908.88 until the principal and interest were paid in full (the "202 Greenfield, LP Promissory Note").

T.      As of July 13, 2018, the total amount due from 202 Greenfield, LP to W&O under the 202 Greenfield, LP Promissory Note is $235,946.94.

## 62 Doe Run Road, Manheim, PA  17545

U.      On or about November 16, 2007, Robert Seth Obetz and Mr. Lyons formed Doe Run Road, LLC and are the only members.

V.      On or about December 29, 2009, Doe Run Road, LLC purchased the real property and improvements at (i) 52 Doe Run Road, Manheim, Pennsylvania 17545 ("52 Doe Run Road"), (ii) 56 Doe Run Road, Manheim, Pennsylvania 17545 ("56 Doe Run Road"), (iii) 60 Doe Run Road, Manheim, Pennsylvania 17545 ("60 Doe Run Road"), and (iv) 62 Doe Run Road Manheim, Pennsylvania 17545 ("62 Doe Run Road" and together with 52 Doe Run Road, 56 Doe Run Road, and 60 Doe Run Road, the "Doe Run Road Property") for $1,800,000.00.

W.      W&O paid the approximate sum of $227,000.00 to the seller as a down payment and closing costs for the Doe Run Road Property, and the remainder of the purchase price was financed through a mortgage loan issued by Fulton Bank to Doe Run Road, LLC in the amount of $1,400,000.00 (the "Doe Run Road Property Loan").  W&O guaranteed repayment of the Doe Run Road Property Loan.

X.      On or about May 4, 2012, Doe Run Road, LLC transferred, without consideration, 60 Doe Run Road, Manheim Pennsylvania to OL Partners, LLC – an entity that Robert Seth Obetz and Mr. Lyons wholly own and control.

Y.      Additionally, in October 2015, Doe Run Road LLC sold 52 and 56 Doe Run Road, Manheim, Pennsylvania to a third party for approximately $350,000.00.

## 45 Doe Run Road, Manheim, PA  17545

Z.      On or about October 26, 2015, Doe Run Road LLC purchased the real property located at 45 Doe Run Road, Manheim, Pennsylvania, 17545 ("45 Doe Run Road") in cash using a cash advance from W&O in the amount of $300,000.00.

114848909.v2

## 149 Doe Run Road, Manheim, PA  17545

AA.    On or about July 20, 2011, 149 Doe Run Road GP, LLC, as general partner, and Robert Seth Obetz, as the limited partner, formed 149 Doe Run Road, LP.

BB.    Robert Seth Obetz is the managing member of 149 Doe Run Road GP, LLC and is the sole limited partner of 149 Doe Run Road, LP.  149 Doe Run Road GP, LLC owns 1% of 149 Doe Run Road, LP.

CC.    On or about July 29, 2011, 149 Doe Run Road, LP purchased the real property and improvements at 149 Doe Run Road, Manheim, Pennsylvania ("149 Doe Run Road") for the sum of $850,000.00.

DD.    W&O advanced $85,000.00 as the down payment to 149 Doe Run Road, LP and the remainder of the purchase price was financed with a mortgage loan issued by Fulton Bank to 149 Doe Run Road, LP (the "149 Doe Run Road Loan"), which was guaranteed by W&O.

## 316 and 318 North Elmer Avenue and
## 413, 415, 417 North Lehigh Avenue, Sayre, PA

EE.    On or about February 11, 2013, Seth and Melissa Obetz formed JW Bishop Properties LLC and are its sole members.

FF.    On or about February 11, 2013, JW Bishop Properties LLC purchased real property located at 316 and 318 North Elmer Avenue and 413, 415, and 417 North Lehigh Avenue, in Sayre Pennsylvania (the "Sayre Property") for $678,000.00.

GG.    On February 4, 2013, W&O loaned the entire purchase price for the Sayre Property to JW Bishop Properties LLC pursuant to a promissory note (the "JW Bishop Promissory Note").

HH.    As of July 13, 2018, the total amount due and owing from JW Bishop Properties, LLC to W&O under the JW Bishop Promissory Note is $371,605.37.

## Summit Insurance Ltd.

II.    On or about June 27, 2009, Mr. Lyons, Robert Seth Obetz, and Robert W. Obetz, Jr., formed JSB Retention, LLC, and are its sole members.

JJ.    On or about July 28, 2009, W&O and JSB Retention, LLC entered into a Subscription Agreement with Summit Insurance Ltd. ("Summit"), whereby W&O, Mr. Lyons, Robert Seth Obetz, Robert W. Obetz, Jr. and/or JSB Retention, LLC, purchased shares in Summit.

### Commencement of the Adversary Action

KK.     On October 15, 2018, the Trustee commenced an adversary action against the Obetz Parties, among other defendants, in the Bankruptcy Court, which case is captioned as <u>Christine C. Shubert v. Robert Seth Obetz, et al.</u>, Case No. 18-00235 (the "Adversary Action").

LL.     On April 26, 2019, Defendants Molly Obetz, Samuel J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Lyons & Obetz, 202 Greenfield General LLC, 202 Greenfield, LP, Doe Run Road, LLC, 149 Doe Run Road, LP, 149 Doe Run Road GP, LLC, JW Bishop Properties LLC, 535 Stiegel Valley Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., and JSB Retention LLC filed an Answer to the Compaint in the Adversary Proceeding together with Affirmative Defenses and Crossclaims in which the allegations, including in essence the Recitals above, were denied.

MM.     On May 9, 2019, Defendants Robert Seth Obetz, Robert W. Obetz, Jr., Marjorie S. Obetz and Melissa Obetz filed an Answer to the Compaint in the Adversary Proceeding together with Affirmative Defenses and Crossclaims in which the allegations, including in essence the Recitals above, were denied.

NN.     The Parties have agreed to resolve any and all of the claims filed by the Trustee in the Adversary Action against the Defendants according to the terms set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge and intending to be legally bound, the Parties hereby agree as follows:

### AGREEMENT

1.     **Incorporation.** The Recitals set forth above are hereby incorporated in full and made a part of this Agreement. However, the Recitals are not to be construed as stating uncontested facts or deemed to be admissions by the Defendants.

2.     **Court Approval.** As soon as practicable after the execution hereof by the Parties, the Trustee shall file with the Bankruptcy Court a Motion for entry of an Order approving this Agreement between the Parties pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 41. If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be null and void and made without prejudice to either party. This Agreement shall be deemed effective (the "Effective Date") on the date that the Bankruptcy Court enters the Order approving this Agreement.

3.     **Settlement Payments To The Trustee**. Within ten (10) days of the Effective Date, and according to the terms set forth in the policy releases executed by Defendants and the Trustee, which are attached hereto collectively as **Exhibit A** and incorporated herein as if set forth in full (the "Policy Releases"), United States Liability Insurance Company ("USLI") and Travelers Casualty and Surety Company of America ("Travelers") will issue payments to the Trustee as follows (the "Settlement Payments"):

**a.**        USLI, on behalf of Judith A. Avilez, Karen L. Connelly, Michele K. Klusewitz, a/k/a Michele Kelly, Jeffrey B. Lyons, Julie Lyons, Molly S. Obetz, Samuel J. Obetz, Melissa Obetz, Robert Seth Obetz, Robert W. Obetz, Jr., and Marjorie Obetz will issue a lump sum payment to the Trustee in the amount of $1,640,000.00; and

**b.**        Travelers, on behalf of Robert W. Obetz, Jr., Marjorie Obetz, Robert Seth Obetz, Melissa Obetz, Jeffrey B.. Lyons, and Julie Lyons, will issue a lump sum payment to the Trustee in the amount of $650,000.00.

The Settlement Payments shall be made by wire transfer or check made payable to the Trustee and delivered to Christine C. Shubert, Esquire, Chapter 7 Trustee, 821 Wesley Avenue, Ocean City, New Jersey 08226.

**4.        Payments To Judith Avilez's Defense Counsel.**  Within ten (10) days of the Effective Date, and according to the terms set forth in the attached Policy Releases, USLI, on behalf of its insured, Judith Avilez, shall issue a lump sum payment in the amount of $10,000.00 to the law firm of Rush Law Group, LLC, as a full and final payment for the costs of Ms. Avilez's defense in connection with the Adversary Action and all related criminal proceedings. In exchange for Ms. Avilez's execution of USLI's Policy Release, the Trustee will withdraw her pending objections to the *Motion for Entry of an Order Determining that a Directors and Officers Liability Insurance Policy is Not Property of the Bankruptcy Estate or, in the Alternative, for Relief from the Automatic Stay, to Allow Advancement and Payment of Defense Costs from Directors and Officers Liability Insurance Policy* [D.N. 122].

**5.        Turnover of Interest in the Properties.**

a.        Within twenty (20) business days of presentation by the counsel for the Trustee, or as soon as practicable given Mr. Lyons' incarceration, the Defendants, subject to review, will execute all documents properly in form and substance as may be necessary to transfer each and all of their respective rights, titles, responsibilities, and interests in and to the Properties[2] to the Trustee (the "Property Transfers"), including, but not limited to, executing quit claim deeds substantially in the forms collectively attached hereto as **Exhibit B**.

b.        The Defendants shall absolutely and irrevocably assign, transfer, and convey to the Trustee any and all of their rights, title, and interests in and to any and all tax refunds and tax credits received since the commencement of the Adversary Proceeding for tax periods through through June 6, 2018, the Petition Date.  Upon receipt, the Defendants shall immediately assemble, turnover, and deliver to the Trustee any and all tax refunds and tax credits for tax periods through the Petition Date..

c.        The Parties acknowledge that the 55 Doe Run Road Loan, the 202 Greenfield Road Loan, the Doe Run Road Property Loan, and the 149 Doe Run Road Loan (together, the "Loans") remain outstanding and encumber the Properties that are subject to the

---

[2] The term "Properties" as used herein refers to 55 Doe Run Road, 41 Doe Run Road, 202 Greenfield Road, 62 Doe Run Road, 45 Doe Run Road, 40127 Fenwick Avenue, 149 Doe Run Road, and the Sayre Property.

Loans.  The Parties agree and acknowledge that the Property Transfers are subject to, and are not intended to interfere with, Fulton Bank's rights under the Loans.  The Defendants agree to provide any documentation requested by the Trustee and/or Fulton Bank for purposes of transferring the Loans to the Trustee.

        d.     The Parties acknowledge the Property Transfers are subject to the applicable liens and encumbrances which will attach to the proceeds of the Trustee's sale of the properties, with the Trustee's sale to be free and clear.  The Defendants having no further obligations or responsibilities as to the Property Transfers.

        e.     The Parties agree that the basis in the properties being transfered will be set in good faith by agreement between the respective transferring real estate entities and the Trustee, or otherwise the properties are being transfered for current fair market value.

        f.     The Parties acknowledge that the Trustee will bear all costs incurred in connection with the Property Transfer, including all taxes, fees and costs.

        g.     The Parties acknowledge that, pursuant to the Court's Order Appointing Rent Receiver dated August 29, 2019 (the "Order Appointing Receiver") [D.I. 162], Thomas J. Beane's rights and duties as the Receiver shall cease and terminate without further action.  Any funds remaining in the Receiver's account after the payment of all Expenses and Receiver Expenses (as those terms are defined in the Order Appointing Receiver) will be delivered to the Trustee.

        h.     The Parties acknowledge that the Sayre Property is currently tenant occupied and that the Trustee is holding the tenant's rental payments in escrow.  Upon the Effective Date, all Sayre Property rents that are held in escrow will be released to the Trustee.

    **6.**    **Turnover of Interests in Summit Shares.**  Within twenty (20) business days of the presentation by the counsel for the Trustee, or as soon as practicable given Mr. Lyons' incarceration, Jeffrey B.  Lyons, Robert Seth Obetz, Robert W. Obetz, Jr., and JSB Retention, LLC shall subject to review, execute all documents properly in form and substance as may be necessary, to assign, transfer, and convey to the Trustee, all of their rights, titles, and interests in and to the their shares of Summit Insurance Ltd. (the "Summit Shares"), and any and all dividends, distributions, and other rights and privileges incidental to their ownership of the Summit Shares.

    **7.**    **OL Partners, LLC.**  Within twenty (20) business days of the Effective Date, or as soon as practicable given Mr. Lyons' incarceration, in addition to transferring 60 Doe Run Road (as set forth in Paragraph 5 above), Robert Seth Obetz and Mr. Lyons shall take all steps necessary, including, but not limited to, executing any documentation necessary, to assign, transfer, and convey to the Trustee, all of their rights, titles, and interests in and to OL Partners, LLC and all assets owned by OL Partners, LLC (the "OL Partners' Assets").

8.    **Right of First Refusal.**  With respect to 45 Doe Run Road and the OL Partners' Assets, only, Robert Seth Obetz shall retain a right of first refusal according to the terms set forth herein:

a.    **45 Doe Run Road.**  After 45 Doe Run Road has been transferred to the Trustee, the Trustee intends to sell 45 Doe Run Road to the highest bidder at auction.  The Trustee represents and warrants that 45 Doe Run Rd. will be sold independently from any of the other Properties being trasnfered to the Trustee consistent with Paragraph 5 above, and that it will not be partnered with or otherwise included in any potential block sale of the Properties identified in Paragrpah 5 above or any other assets being turned over to the Trustee pursuant to this Agreement.  Within ten (10) days of the auction, Robert Seth Obetz shall notify the Trustee in writing whether he wishes to purchase 45 Doe Run Road at a price that exceeds the minimial incremental bid above the highest bid received at the auction.  The minimial incremental bid will be established and disclosed at the auction.  There will be no reserve.  If Robert Seth Obetz fails to provide the Trustee with notice of his intention to purchase 45 Doe Run Road within the 10-day period, the Trustee shall be free to convey, assign, or otherwise transfer 45 Doe Run Road to the third party at the price established at the auction.

b.    **OL Partners' Assets.**  After the OL Partners' Assets have been transferred to the Trustee, the Trustee intends to sell the OL Partners' Assets to the highest bidder at auction.  Within ten (10) days of the auction, Robert Seth Obetz shall notify the Trustee in writing whether he wishes to purchase the OL Partners' Assets at a price that exceeds the minimial incremental bid above the highest bid received at the auction.  The minimial incremental bid will be established and disclosed at the auction.  There will be no reserve.  If Robert Seth Obetz fails to provide the Trustee with notice of his intention to purchase the OL Partners' Assets within the 10-day period, the Trustee shall be free to convey, assign, or otherwise transfer the OL Partners' Assets to the third party at the price established at the auction.

c.    **Good Faith.**  The Trustee will provide counsel for Robert Seth Obetz with a copy of the the auction listing for these two items one day in advance of the scheduled auction, and Robert Seth Obetz and the Trustee agree that all best efforts will be made to conduct the auction in good faith.

9.    **Stipulation of Dismissal.**  Within twenty (20) days of the Trustee's receipt of the Settlement Payments and the Defendants' full compliance with the provisions set forth in Paragraphs 5, 6, 7 and 8 above, the Parties shall file a Stipulation of Dismissal With Prejudice in the Adversary Action pursuant to F.R.C.P. 41(a)(1)(A)(ii) (the "Stipulation of Dismissal").

10.    **Release Of Escrowed Funds.**  On or about June 26, 2019, the Trustee, Jefffrey B. Lyons, Julie Lyons, and Fulton Bank, N.A., entered into a Settlement Agreement (the "June 2019 Setttlement Agreement," attached hereto as **Exhibit C**), relating to, among other things, 40127 Fenwick Avenue, the real property located at 2601 Old Orchard Road, Lancaster, PA  17601 (the "Real Lancaster Property"), and a certificate of deposit and related bank account at Fulton Bank.  Any and all proceeds that are being held in escrow pursuant to the terms of the June 2019 Settlement Agreement shall be released to the Trustee upon the filing of the Stipulation of Dismissal.  In addition, Robert Seth Obetz and Melissa Obetz entered into an agreement with the Trustee wherein their respective equity interest in the sale of the property at 40127 Fenwick

8

Avenue was to be held in trust by the Title Company serving as escrow agent for the sales transaction. Those funds being held in trust from the sale of the 40127 Fenwick Avenue property shall be released to the Trustee upon the filing of the Stipulation of Dimissal.

**11.    Mutual Release.**  Except for their obligations under the Agreement, and in consideration of the provisions set forth in this Agreement and in the attached Policy Releases, the Parties and their respective agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of them, hereby remise, release and forever discharge each other and their respective agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of them, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which the Parties and anyone claiming through or on behalf of them have, ever had, might have had or might have in the future, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Adversary Action, and all other disputes arising out of or related to the Debtors' bankruptcy cases, from the beginning of time to the end of time. The release provided in this paragraph will be effective upon the filing of the Stipulation of Dismissal.

**12.    Entire Agreement.**  This Agreement sets forth the entire agreement and understanding of the Parties hereto with respect to the subject matter herein and supersedes and merges all prior oral and written agreements, discussions and understandings between the Parties with respect thereto, and none of the Parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein. Notwithstanding the foregoing, nothing set forth in this Agreement is intended to rescind, modify, or supersede the June 2019 Settlement Agreement, the Settlement Agreement by and between the Trustee and Michelle Goodin dated February 12, 2020, and/or the Settlement Agreement by and between the Trustee and Karen Connelly dated April 14, 2020 (collectively, the "Prior Settlement Agreements"), all of which are incorporated into this Agreement as if set forth fully herein. In the event of any inconsistency between the provisions of this Agreement and the Prior Settlement Agreements, the Prior Settlement Agreements will prevail.

**13.    Amendment.**  No term of this Agreement may be waived, modified or amended except in writing signed by the Party against whom enforcement of the waiver, modification or amendment is sought.

**14.    Authority to Execute Agreement.**  Each Party covenants and represents that it is fully authorized to enter into this Agreement and to carry out the obligations provided for in this Agreement. Where a person has executed this Agreement on behalf of a Party, that person covenants, warrants, and represents that he or she is authorized to do so by that Party.

**15.    Governing Law.**  This Agreement shall be governed by Pennsylvania law, without regard to principles of conflicts of laws.

**16.    Severability.**  In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions shall remain in full force and effect.

114848909.v2

17.    **Counterparts.**  This Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument.  Facsimile and electronic copies of executed copies of this Agreement shall be deemed the equivalent of an original copy of this Agreement for all purposes.

*[Signatures on following page]*

10

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed the day and year first written above.

**FOX ROTHSCHILD LLP**

By: _____

Michael G. Menkowitz, Esquire
Craig A. Styer, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222

*Attorneys for Christine C. Shubert, Chapter 7*
*Trustee for the Estates of Worley & Obetz,*
*Inc., et al.*

**KURTZMAN STEADY, LLC**

By: _____

Jeffrey Kurtzman, Esquire
401 S. 2nd Street
Suite 200
Philadelphia, PA 19147

*Attorneys for:*
*Molly S. Obetz,*
*Samuel J. Obetz*
*149 Doe Run Road GP, LLC,*
*149 Doe Run Road, LP,*
*202 Greenfield General, LLC,*
*202 Greenfield, LP,*
*535 Stiegel Valley Road, LLC,*
*Howard W. Cramer, Jr.,*
*Kathleen A. Cramer,*
*Doe Run Road, LLC,*
*G-Force Sportfishing, Inc.,*
*JSB Retention LLC,*
*JW Bishop Properties, LLC*
*Lyons & Obetz,*
*OL Partners, LLC*

By: _____

Jeffrey B. Lyons

By: _____

Julie H. Lyons

**FREEMAN MATHIS & GARY, LLP**

By: _____

John D. Shea, Esquire
3 Executive Campus, Suite 155
Cherry Hill, NJ 08002

*Attorneys for:*
*Marjorie S. Obetz,*
*Melissa Obetz,*
*Robert Seth Obetz,*
*Robert W. Obetz, Jr.*

**MENDELSOHN & MENDELSOHN, PC**

By: _____

Brenna Hope Mendelsohn, Esquire
637 Walnut Street
Reading, PA 19601

**RUSH LAW GROUP**

By: _____

William R.A. Rush, Esquire
38 N. 6th Street
P.O. Box 0758
Reading, PA 19601

*Attorneys for Judith Avilez*

11

114848909.v2

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed the day and year first written above.

FOX ROTHSCHILD LLP

By:_____     By:_____
Michael G. Menkowitz, Esquire              Jeffrey B. Lyons
Craig A. Styer, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222

*Attorneys for Christine C. Shubert, Chapter 7*
*Trustee for the Estates of Worley & Obetz,*    By:_____
*Inc., et al.*                                                              Julie H. Lyons

KURTZMAN STEADY, LLC                    FREEMAN MATHIS & GARY, LLP

By:_____          By:_____
Jeffrey Kurtzman, Esquire                         John D. Shea, Esquire
401 S. 2nd Street                                        3 Executive Campus, Suite 155
Suite 200                                                    Cherry Hill, NJ  08002
Philadelphia, PA  19147

                                                                 *Attorneys for:*
*Attorneys for:*                                          *Marjorie S. Obetz,*
*Molly S. Obetz,*                                        *Melissa Obetz,*
*Samuel J. Obetz*                                       *Robert Seth Obetz,*
*149 Doe Run Road GP, LLC,*                 *Robert W. Obetz, Jr.*
*149 Doe Run Road, LP,*
*202 Greenfield General, LLC,*
*202 Greenfield, LP,*                               MENDELSOHN & MENDELSOHN, PC
*535 Stiegel Valley Road, LLC,*
*Howard W. Cramer, Jr.,*                         By:_____
*Kathleen A. Cramer,*                             Brenna Hope Mendelsohn, Esquire
*Doe Run Road, LLC,*                            637 Walnut Street
*G-Force Sportsfishing, Inc.,*                   Reading, PA 19601
*JSB Retention LLC,*
*JW Bishop Properties, LLC*                   RUSH LAW GROUP
*Lyons & Obetz,*
*OL Partners, LLC*                                 By:_____
                                                               William R.A. Rush, Esquire
                                                               38 N. 6th Street
                                                               P.O. Box 0758
                                                               Reading, PA  19601

                                                               *Attorneys for Judith Avilez*

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed the day and year first written above.

**FOX ROTHSCHILD LLP**

By:_____
Michael G. Menkowitz, Esquire
Craig A. Styer, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222

*Attorneys for Christine C. Shubert, Chapter 7 Trustee for the Estates of Worley & Obetz, Inc., et al.*

~~KAUFFMAN  DOLOWICH  &  VOLUCK, LLP~~

By:_____
~~Christopher J. Tellner, Esquire~~
~~Jamie L. Augustinsky, Esquire~~
~~Two Logan Square~~
~~100 N. 18th Street, Suite 701~~
~~Philadelphia, PA  19103~~

~~Attorneys for~~ Jeffrey B. Lyons~~and~~

By:_____Julie H. Lyons_____ *POA*
Julie H. Lyons

**KURTZMAN STEADY, LLC**

By:_____
Jeffrey Kurtzman, Esquire
401 S. 2nd Street
Suite 200
Philadelphia, PA  19147

*Attorneys for:*
*Molly S. Obetz,*
*Samuel J. Obetz*
*149 Doe Run Road GP, LLC,*
*149 Doe Run Road, LP,*
*202 Greenfield General, LLC,*
*202 Greenfield, LP,*
*535 Stiegel Valley Road, LLC,*
*Howard W. Cramer, Jr.,*
*Kathleen A. Cramer,*
*Doe Run Road, LLC,*
*G-Force Sportfishing, Inc.,*
*JSB Retention LLC,*
*JW Bishop Properties, LLC*
*Lyons & Obetz,*

**FREEMAN MATHIS & GARY, LLP**

By:_____
John D. Shea, Esquire
3 Executive Campus, Suite 155
Cherry Hill, NJ  08002

*Attorneys for:*
*Marjorie S. Obetz,*
*Melissa Obetz,*
*Robert Seth Obetz,*
*Robert W. Obetz, Jr.*

MENDELSOHN & MENDELSOHN, PC

By:_____
Brenna Hope Mendelsohn, Esquire
637 Walnut Street
Reading, PA  19601

RUSH LAW GROUP

11

# Exhibit "A"

## FULL POLICYHOLDER RELEASE

**WHEREAS**, the undersigned individual (hereinafter "Releasor") was either a director, officer, trustee, committee member, managing member and/or employee of Worley & Obetz, Inc., (hereinafter "WO"), or a spouse or domestic partner of the same; and

**WHEREAS**, United States Liability Insurance Company (hereinafter "USLI") issued an insurance policy to WO bearing policy number CD 1000392O (the "Policy"), which included Corporate Directors and Officers Liability Coverage, in accordance with its terms and conditions, with a policy period of May 1, 2018 to May 1, 2019; and

**WHEREAS**, on June 6, 2018, WO filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania; and

**WHEREAS**, on December 6, 2018, Christine Schubert, as Chapter 7 Trustee for the Estate of WO ("Trustee"), filed a First Amended Complaint in an adversary proceeding against Judith A. Avilez, Karen L. Connelly, Michele K. Klusewitz a/k/a Michele Kelly, Jeffrey B. Lyons, Julie Lyons, Molly S. Obetz, Samuel J. Obetz, Melissa Obetz, Robert Seth Obetz, Robert W. Obetz, Jr., and Marjorie Suzanne Obetz, among others; (the "Trustee's Adversary Proceeding"); and

**WHEREAS**, USLI, through counsel, issued letters to the individually named defendants in the Trustee's Adversary Proceeding, as well as WO, setting forth USLI's coverage position regarding defense and indemnity of the claims raised in the Trustee's Adversary Proceeding and disclaiming and/or reserving all rights under the Policy, such letters expressly incorporated into the terms of this Release as if set forth in full; and

**WHEREAS**, USLI has agreed with the Trustee to compromise its coverage position and to pay a portion of the Coverage Part A: Corporate Directors and Officers Coverage Part Limits of Liability in conjunction with the Trustee's agreement to compromise its claims and/or potential claims against Releasor according to the terms of the Settlement Agreement dated June __, 2020 by and between the Trustee, on the one hand, and Jeffrey B. Lyons, Julie H. Lyons, Judith A. Avilez, Karen L. Connelly, Robert Seth Obetz, Robert W. Obetz, Jr., Marjorie S. Obetz, Melissa Obetz, Molly Obetz, Samuel J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Lyons & Obetz, 202 Greenfield General LLC, 202 Greenfield, LP, Doe Run Road, LLC, 149 Doe Run Road, LP, 149 Doe Run Road GP, LLC, JW Bishop Properties LLC, 535 Stiegel Valley Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., and JSB Retention LLC, on the other (the "Settlement Agreement"); and

**WHEREAS**, USLI's payment to the Trustee is made exclusively from the "Coverage Part A" Limits of Liability and not the "Additional Defense Limit of Liability" as those terms appear on the Policy Declarations Page, form # CD-DEC (10/12); and

**WHEREAS**, USLI's agreement to pay a portion of the Policy Coverage Part A limits to the Trustee is contingent upon Releasor's agreement to provide a "full policy release" to USLI

and to relinquish any and all rights with respect to the policy, including, but not limited to, defense or indemnity for the Trustee's Adversary Proceeding as well as any and all claims, whether known or unknown, and whether related or unrelated to the Trustee's Adversary Proceeding, regardless of whether Releasor was a named defendant in the Trustee's Adversary Proceeding and/or previously released by the Trustee for consideration other than that set forth herein; and

**WHEREAS**, Releasor's agreement to provide a "full policy release" is supported by good consideration not only by USLI's payment to the Trustee, but also by the Trustee's compromise of certain claims available to her as set forth in the Settlement Agreement; and

**NOW, THEREFORE**, Releasor, intending to be legally bound, hereby agrees as follows:

1.    **POLICY RELEASE**

Releasor acknowledges that there are coverage issues with regard to the USLI Policy terms and conditions, and the pleadings in the Trustee's Adversary Proceeding as set forth in correspondence from coverage counsel for USLI to Releasor and incorporated herein as if set forth in full. As consideration for USLI's payment to the Trustee, and other consideration, including, but not limited to, the terms set forth in the Settlement Agreement, and notwithstanding these coverage issues, Releasor and his or her successors, heirs, executors, administrators, attorneys, agents, and assigns, hereby releases, acquits, and forever discharges USLI, including its current and former subsidiaries, business units, equity holders, heirs, executors, administrators, predecessors, insurers, reinsurers, auditors, agents, assigns, attorneys, members, managers, parents, affiliates, officers, directors, stockholders, partners, successors, employees, as well as all other persons, firms or corporations who Releasor might claim to be liable from any and all claims, demands, debts, sums of money, accounts, obligations, rights, damages, actions, causes of action, costs, and expenses, whether tangible or intangible, whether past or present, known or unknown, asserted or unasserted, in tort or contract, accrued or unaccrued, or based on the Policy, and unconditionally and irrevocably discharges and releases USLI under insurance policy number CD 1000392O, with effective dates of May 1, 2018 to May 1, 2019, from any further duty to defend or indemnify or otherwise perform under the policy on behalf of Releasor for any claim, whether known or unknown, that has been brought or may be brought in the Trustee's Adversary Proceeding, any criminal prosecution, or any other action whatsoever, whether related to the Trustee's Adversary Proceeding or not. Releasor understands and acknowledges that this document constitutes a full policy release and relinquishment of all rights under the policy whatsoever, and represents that he or she knowingly enters into the same either after consultation with personal counsel not retained on his or her behalf by USLI, or with the understanding that he or she has been given the opportunity to consult with personal counsel not retained on his or behalf by USLI and has chosen not to do so.

2.    **No Admission of Liability**. This Agreement is not intended to and does not constitute an admission of wrongdoing or concession of coverage or evidence of liability whatsoever with respect to the matters set forth herein, and shall not be construed, offered, or

2

111486785
111491268

received into evidence as a proposition of law or fact in connection with any matters set forth herein.

3.      **Representation of Comprehension of Document**.  The Releasor warrants and represents that, before executing this Release, he or she has been fully informed of its terms, contents, conditions and effects; and has had the benefit of the advice of counsel of his or her own choosing; and no promise or representation of any kind has been made by Releasor or by anyone acting for any Party, except as is expressly stated in this instrument.  The Releasor agrees that he or she relied solely and completely upon his or her own respective judgments and on the advice of counsel of his or her own choosing in making this Release, and that he or she fully understands that this is a full, complete and final release of all rights and/or claims whatsoever under the Policy.

4.      **Attorneys' Fees and Court Costs**.  Each party shall bear its own attorneys' fees and costs in connection with this Release, except for as provided herein and as provided in the Settlement Agreement.

5.      **Severability, Construction, and Counterparts**.  This Release is intended to be as broad and as comprehensive as possible.  This Release shall be interpreted in such a manner as to be valid and enforceable and to effectuate the intent of the parties.  If any provision of this Release is held invalid, illegal or unenforceable, the invalidity, illegality or unenforceability of such provision will not affect in any way whatsoever its remaining provisions.

6.      **Effective Date and Mutual Cooperation**.  This Release shall become effective immediately upon the Effective Date of the Settlement Agreement, as defined in Paragraph 2 of the Settlement Agreement.  The Parties agree to cooperate in good faith to effectuate and perform all the terms and conditions of this Release.

7.      **Amendment or Waiver**.  No amendment, deletion, addition, modification or other change in this Release or waiver of any right or remedy provided herein shall be effective for any purpose whatsoever.  No waiver of any right or remedy under this Release on one occasion shall be deemed a waiver of such right or remedy on any other occasion.

8.      **Choice of Law.**  This Agreement is to be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the laws of the Commonwealth of Pennsylvania.

9.      **No Contra Proferentem**.  The Releasor and his or her counsel, if any, have participated in the drafting and negotiation of this document and for all purposes this Release.  Each and every provision of the Release shall be deemed to have been drafted jointly by each of the Parties hereto.  The parties expressly waive the doctrine of *contra proferentem*.

10.     **Entire Agreement**.  This Release contains the entire agreement of the Parties hereto with regard to the Policy, and shall be binding upon and inure to the benefit of the respective executors, administrators, personal representatives, heirs, successors, assigns, agents, principals, servants, representatives, officers, directors, attorneys, employees, employers, board members, shareholders, parents, subsidiaries, predecessors, affiliates, and divisions of each.  This Release

111486785
111491268

represents the complete undertaking and agreement of the Parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous discussions, negotiations, correspondence and/or drafts.

11.   **Section Headings**.   The headings of Sections in this Release are provided for convenience only and will not affect its construction or interpretation.

_____
(Releasor)

State of Pennsylvania
County of _____

Signed before me on _____ (date)

by _____ (name(s) of individual(s)).

_____

(Signature of notarial officer)

My commission expires:

4

# Exhibit "B"

**QUITCLAIM DEED**

from

_____

to

_____

Premises:

_____
City of _____
_____ County, Pennsylvania
Tax Parcel No.:

The address of the above-named Grantee is:

_____
_____

By:_____

<u>Prepared by</u> :

_____

_____

_____

_____

Tax Parcel No.

<u>Record and return to:</u>

_____

_____

_____

_____

### <u>QUITCLAIM DEED</u>

    **THIS INDENTURE** is made the _____ day of _____, 2020, but intended to be effective as of _____, 2020 between _____ (hereinafter called the Grantor), of the one part, and, _____ (hereinafter called the Grantee), of the other part.

    **WITNESSETH,** that the said Grantor for and in consideration of the sum of ONE DOLLAR 00/100 ($1.00) lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has remised, released and quit-claimed, and by these presents does remise, release and quit-claim unto the said Grantee, its successors and assigns, the premises described as follows:

    **ALL THAT CERTAIN** lot or piece of ground more particularly described on <u>Exhibit "A"</u> attached hereto and forming a part hereof.

    **TOGETHER** with all and singular the buildings, improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the Grantor, as well at law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

    **TO HAVE AND TO HOLD** the said lots or pieces of ground above described together with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the Grantee, its successors and assigns, to and for the only proper use and behoof of the Grantee, its successors and assigns forever.

**IN WITNESS WHEREOF**, the Grantor has caused this Indenture to be executed by its duly authorized officers, under its seal, on the day and year first above written.

_____

By:   _____
Name:  _____
Title:   _____

COMMONWEALTH OF PENNSYLVANIA       :
                                                    : ss

COUNTY OF                                             :

On this, the _____ day of _____ 2020, before me, the undersigned officer, personally appeared _____, who acknowledged himself/herself to be the _____ of _____, and that he/she, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


_____
Notary Public


[Notarial Seal]

# EXHIBIT "A"

### Legal Description of the Property

Active\115210216.v1-10/14/20

# Exhibit "C"

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made this June __, 2019, by and among Fulton Bank, N.A. ("Fulton Bank"), Julie H. Lyons ("Mrs. Lyons"), Jeffrey B. Lyons ("Mr. Lyons"), and Christine C. Shubert, solely in her capacity as the Chapter 7 Trustee (the "Trustee", and together with Fulton Bank, Mrs. Lyons, and Mr. Lyons, the "Parties") for the jointly administered estates of Worley & Obetz, Inc., et al. (the "Debtors")[1].

## RECITALS

### 1.   Bankruptcy Procedural Background

A.     On June 6, 2018 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court").

B.     On the same day, the Office of the United States Trustee appointed the Trustee as Chapter 7 Trustee, which appointment remains in effect.

C.     On June 19, 2018, the Bankruptcy Court entered an order directing the joint administration of the Debtors' bankruptcy cases for procedural purposes only pursuant to Fed. R. Bankr. P. 1015(b).

D.     Prior to the Petition Date, Mr. Lyons was the Chief Executive Officer of Debtor Worley & Obetz, Inc. ("W&O") until May 15, 2018, when he was terminated for cause.

### 2.   Mr. Lyons and Mrs. Lyons Purchase of the Real Lancaster Property

E.     On or about October 12, 2005, Mr. Lyons and Mrs. Lyons purchased the real property located at 2601 Old Orchard Road, Lancaster, PA 17601 (the "Real Lancaster Property").

F.     On or about October 27, 2010, Fulton Bank, as lender, made a loan to Mr. Lyons and Mrs. Lyons, as borrower, in the original principal amount of $670,000.00 (the "Fulton Bank Loan"), as evidenced by that certain Promissory Note, dated October 27, 2010, in the original principal amount of $670,000.00 (the "Promissory Note").

G.     In order to secure Mr. Lyons's and Mrs. Lyons's obligations under the Promissory Note, on October 27, 2010, Mr. Lyons and Mrs. Lyons made, executed, and delivered to Fulton Bank a Mortgage (the "Mortgage") encumbering the Real Lancaster Property and as more particularly described in the Mortgage.

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) Worley & Obetz, Inc. (6576) (Case No. 18-13774-REF); (ii) Americomfort, Inc. (7605) (Case No. 18-13775-REF); (iii) RPHAC, Inc. (9625) (Case No. 18-13776-REF); (iv) Amerigreen Energy, Inc. (6284) (Case No. 18-13777-REF); (v) Advance Air, Inc. (8111) (Case No. 18-13778-REF); (vi) Amerigreen Energy Brokers, LLC (2358) (Case No. 18-13779-REF); (vii) Amerigreen Electricity, LLC (8977) (Case No. 18-13780-REF); (viii) Amerigreen Hedging Services, LLC (8549) (Case No. 18-13781-REF); (ix) Amerigreen Lubricants, LLC (7489) (Case No. 18-13782-REF); (x) Amerigreen Natural Gas, LLC (3222) (Case No. 18-13783-REF); and (xi) Amerigreen Propane, LLC (Case No. 18-13784-REF).

97033489

H.      On March 20, 2013, Mr. Lyons directed W&O to issue a check in the amount of $200,000.00 to Mr. Lyons, which funds were used to pay down the amount due and owing under the Promissory Note and Mortgage (the "W&O Payment").

I.      Mr. Lyons and Mrs. Lyons have listed the Real Lancaster Property for sale for the purchase price of $969,900.00 (the "Asking Price").

J.      As of the execution date of this Agreement, the total amount due and owing under the Promissory Note and Mortgage is approximately $70,000.00 (the "Promissory Note Indebtedness").

### 3.      Mr. Lyons and Mrs. Lyons Interest in Fenwick Property

K.      On or about May 20, 2009, Mr. and Mrs. Lyons, as tenants by the entirety, purchased an undivided 50% interest in real property located at 40127 Fenwick Avenue, Unit 3, Fenwick Island, Delaware (the "Fenwick Property").

### 4.      Mr. Lyons and Mrs. Lyons Establishment of CD and Account

L.      On or about January 7, 2009, Mr. Lyons and Mrs. Lyons established a certificate of deposit (the "CD") and a related, jointly-held account bearing account number XXX-XXX9360 at Fulton Bank (the "Account").

M.      On May 21, 2018, Fulton Bank administratively froze the Account.

N.      By letter dated July 13, 2018, the Trustee requested that Fulton Bank administratively freeze the CD.

O.      As of March 14, 2019, the positive balance of the CD on deposit in the Account (the "CD Balance") was $155,201.46.

### 5.      Commencement of the Interpleader Action

P.      On July 17, 2018, Fulton Bank commenced an interpleader action in the Bankruptcy Court against the Trustee, Mr. Lyons, and Mrs. Lyons as a result of competing and adverse claims to the CD Balance, which case is captioned as Fulton Bank, N.A. v. Christine C. Shubert, Case No. 18-00163 (the "Interpleader Action").

### 6.      Commencement of the Adversary Action

Q.      On October 15, 2018, the Trustee commenced an adversary action against Mr. Lyons and Mrs. Lyons, among other defendants, in the Bankruptcy Court, which case is captioned as Christine C. Shubert v. Robert Seth Obetz, et al., Case No. 18-00235 (the "Adversary Action").

2

R.      The Parties have agreed to resolve the dispute regarding payment of the CD Balance, the proceeds from the sale of the Real Lancaster Property, and Mr. Lyons's and Mrs. Lyons's interest in the Fenwick Property on the terms set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which the Parties hereby acknowledge, and intending to be legally bound, the Parties hereby agree as follows:

## AGREEMENT

**NOW THEREFORE, IT IS HEREBY STIPULATED** and agreed to by, between and among the Parties as follows:

**1.      Incorporation.** The Recitals set forth above are hereby incorporated in full and made a part of this Agreement.

**2.      Effective Date.** As soon as practicable after the execution hereof by the Parties, the Trustee shall file with the Bankruptcy Court a Motion for entry of an Order approving this Agreement between the Parties pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 41. Except for as expressly stated herein regarding the effective date of the release provided in Paragraph 10 below, the effective date (the "Effective Date") under this Agreement shall be the first business day after the Bankruptcy Court enters an Order approving this Agreement. If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be null and void and made without prejudice to either party.

**3.      Sale of Real Lancaster Property.**

a.      Mr. Lyons and Mrs. Lyons shall act in good faith in attempting to sell the Real Lancaster Property. Mr. Lyons and Mrs. Lyons shall enter into an agreement of sale for the sale of the Real Lancaster Property at a purchase price acceptable to the Trustee (the "Gross Real Lancaster Property Proceeds").

b.      There shall be subtracted from the Gross Real Lancaster Property Proceeds any and all closing costs, including, but not limited to, (i) any commission payable to the brokers in connection with the sale of the Real Lancaster Property (the "Brokers' Commissions"), (ii) the Trustee's commission pursuant to 11 U.S.C. § 326, which shall be calculated based on the amount of the Gross Real Lancaster Property Proceeds, less the amount of Mrs. Lyons's Share (the "Trustee's Commission"), and (iii) an amount sufficient to payoff and satisfy the Promissory Note Indebtedness due to Fulton Bank under the Promissory Note (the "Fulton Bank Promissory Note Payoff" and collectively with the Brokers' Commissions, the Trustee's Commission, and any other closing costs, the "Closing Costs"). The remaining amount of the proceeds from the Gross Real Lancaster Property Proceeds after and net of payment of the Closing Costs shall be defined herein as the "Adjusted Real Lancaster Property Proceeds."

c.      There shall be subtracted from the Adjusted Real Lancaster Property Proceeds $200,000.00, which will be paid to the Trustee and W&O's estate as repayment for the

3

W&O Payment (the "W&O Repayment"). The remaining amount of the Adjusted Real Lancaster Property Proceeds after and net of payment of the W&O Repayment shall be defined herein as the "Allocable Real Lancaster Property Proceeds".

d.      The Debtors' estates and the Trustee shall be entitled to receive fifty-percent (50%) of the Allocable Real Lancaster Property Proceeds (the "Estates' Share"). The Estates' Share shall be held in escrow by the Trustee pending a full and final resolution of the Adversary Action. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Estates' Share shall be released from escrow to the Trustee.

e.      Mrs. Lyons shall be entitled to receive fifty-percent (50%) of the Allocable Real Lancaster Property Proceeds ("Mrs. Lyons's Share").

f.      On or before Closing on the sale of the Real Lancaster Property, the Trustee shall take all steps necessary to satisfy the lis pendens presently filed by her in the Lancaster County Court Common Pleas to 18-07553 against the Real Lancaster Property and shall also mark the Lancaster County Court Docket in that case, settled, discontinued, and ended with costs paid as to Mr. Lyons and Mrs. Lyons.

**4.      Turnover of Interest in Fenwick Property.** Mr. Lyons and Mrs. Lyons shall turnover to the Trustee their undivided 50% interest as tenants by the entirety in the Fenwick Property within (10) business days of the Effective Date. Mr. Lyons and Mrs. Lyons shall each take all steps necessary to effectuate a valid transfer of their undivided 50% interest as tenants by the entirety in the Fenwick Property, including, but not limited to, execution of a quit claim deed substantially in the form attached hereto as **Exhibit A**. Additionally, Mr. Lyons and Mrs. Lyons agree to provide any other documentation requested by the Trustee that is necessary to effectuate a valid transfer of Mr. Lyons's and Mrs. Lyons's undivided 50% interest as tenants by the entirety in the Fenwick Property. Any proceeds from the Trustee's sale of the Fenwick Property shall be held in escrow by the Title Company pending a full and final resolution of the Adversary Action. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the proceeds of the sale of the Fenwick Property shall be released from escrow to the Trustee.

**5.      CD Payments.** Within five (5) business days after the Effective Date, Fulton Bank shall (1) pay to the Trustee the total sum of 50% of the CD Balance as of the Effective Date, which payment will be held in escrow by the Trustee pending a full and final resolution of the Adversary Action (the "Estates' CD Settlement Sum"), and (2) pay to Mrs. Lyons the total sum of 50% of the CD Balance as of the Effective Date ("Mrs. Lyons's CD Settlement Sum"). Payment of the CD Settlement Sums shall be made in one installment by check payable to the Trustee, and one installment by check payable to Mrs. Lyons, both delivered by federal express or hand delivery, or by wire transfer pursuant to instructions provided by the Trustee and Mrs.

4

97033489

Lyons. Upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Estates' CD Settlement Sum shall be released from escrow to the Trustee.

6. **Property of Debtors.** Mrs. Lyons covenants and represents that, to the best of her knowledge, and without independent investigation, Mrs. Lyons received no direct or indirect payments or transfers of property from the Debtors within four (4) years before the Petition Date.

7. **Release of the Trustee by Mrs. Lyons.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, Mrs. Lyons and her agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mrs. Lyons, hereby remise, release and forever discharge the Trustee and the Debtors' estates, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which Mrs. Lyons has, ever had, might have had or might have in the future, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action, the Adversary Action, and all other disputes arising out of or related to the Debtors' bankruptcy cases, from the beginning of time to the end of time.

8. **Release of Mrs. Lyons by the Trustee.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, the Trustee, in her capacity as the Chapter 7 Trustee for the bankruptcy estates of the Debtors, and the Debtors' estates, hereby knowingly and voluntarily release and forever discharge Mrs. Lyons and her agents, heirs, successors, executors, assigns, attorneys, accountants, and personal representatives ("the Mrs. Lyons Released Parties"), **only**, from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which the Trustee and/or Debtors' estates ever had or now have against the Mrs. Lyons Released Parties, arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action, the Adversary Action, and all other disputes arising out of or relating to any matter concerning the administration of the Debtors' bankruptcy estates under any state or federal law, including, but not limited to, the Pennsylvania Uniform Voidable Transactions Act, or any other Pennsylvania statute, and the United States Bankruptcy Code. This release includes, but is not limited to, any and all claims that the Trustee and/or the Debtors' estates ever had or now have against the Mrs. Lyons Released Parties, **only**, for unjust enrichment, conversion, avoidance and recovery of fraudulent transfers pursuant to 12 Pa. C.S. § 5101, et seq., and 11 U.S.C. § 544 and turnover pursuant to 11 U.S.C. § 542, any and all claims for compensatory or punitive damages, and any and all claims for attorneys' fees and costs. It is expressly understood and agreed that by signing this Agreement, the Trustee does not relinquish and expressly reserves her right to pursue any and all claims, causes of actions, suits, and demands whatsoever, whether known or unknown, including, but not limited to, the claims asserted in the Adversary Action, against any parties, persons, or entities, other than the Mrs. Lyons Released Parties, including, but not limited to, Mr. Lyons, subject to the terms and provisions of the Limited Release in Paragraph 10, Robert Seth Obetz, Robert W. Obetz, Jr., Judith A. Avilez, Karen L. Connelly, Marjorie S. Obetz, Melissa Obetz, Molly S. Obetz, Samuel

J. Obetz, Howard W. Cramer, Jr., Kathleen A. Cramer, Michele K. Klusewitz, a/k/a Michele Kelly, 149 Doe Run Road, LP, 149 Doe Run Road, GP, LLC, 202 Greenfield, LP, 202 Greenfield General, LLC, 535 Stiegel Valley Road, LLC, Doe Run Road, LLC, OL Partners, LLC, G-Force Sportfishing, Inc., JW Bishop Properties, LLC, Lyons & Obetz, and JSB Retention, LLC (the "Remaining Defendants"), including, but not limited to, the Trustee's right to claim that the Remaining Defendants, and not Mrs. Lyons, are liable to the Trustee for any and/or all injuries, losses and damages. Mrs. Lyons and the Trustee expressly agree and acknowledge that the Trustee reserves all rights, waiving none, regarding the claims asserted against the Remaining Defendants in the Adversary Action, subject to the terms and provisions of the Limited Release of Mr. Lyons, as set forth in Paragraph 10.

9.    **Limited Release of the Trustee by Mr. Lyons.** In consideration of the provisions set forth in this Agreement, Mr. Lyons and his agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mr. Lyons, hereby remise, release and forever discharge the Trustee and the Debtors' estates, from any and all claims, actions, liabilities, debts and causes of action, whatsoever, whether in law or in equity, whether known or unknown, which Mr. Lyons has, ever had, might have had or might have in the future, relating to the Real Lancaster Property, the Fenwick Property, the CD, and/or the Account. The release provided in this paragraph will be effective upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of a final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants.

10.    **Limited Release of Mr. Lyons by the Trustee.** In consideration of the provisions set forth in this Agreement, and upon the filing of a Stipulation of Dismissal signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), or the entry of final, non-appealable Judgment or Order fully resolving all claims in the Adversary Action, including, but not limited to, the claims asserted against and by the Remaining Defendants, the Trustee, in her capacity as the Chapter 7 Trustee for the bankruptcy estates of the Debtors, will knowingly and voluntarily release and forever discharge Mr. Lyons, **only**, from the claims asserted against Mr. Lyons as they relate to the Real Lancaster Property, the Fenwick Property, CD, and/or the Account, **only**, including any claims arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in the Interpleader Action. This release shall in no way be interpreted as a release of, or an agreement to settle, any of the claims, counts, or causes of action asserted in the Amended Complaint filed by the Trustee in the Adversary Action (the "Amended Complaint"), against Mr. Lyons or any of the Remaining Defendants, except for the limited purpose of resolving the Parties' disputes over the ownership and rights to the Real Lancaster Property, the Lyons' interests in the Fenwick Property, the CD, and the Account. It is expressly understood and agreed that the Trustee will pursue all claims, counts, and causes of action asserted in the Amended Complaint against Mr. Lyons and the Remaining Defendants. It is expressly understood and agreed that by signing this Agreement, the Trustee does not relinquish and expressly reserves her right to pursue and recover any and all other property (real or otherwise) or assets belonging to, purportedly belonging to, or in the possession of, Mr. Lyons, and/or his agents, heirs, successors, assigns, attorneys, accounts, or personal representatives. It is expressly understood and agreed that by signing this Agreement, the

6

Trustee does not relinquish and expressly reserves her right to pursue any and all claims, causes of actions, suits, and demands whatsoever, whether known or unknown, relating to or arising out of Mr. Lyons's role as an officer, director, employee, and/or insider of the Debtors, against any parties, persons, or entities (other than Mrs. Lyons as set forth in Paragraph 8 above), including, but not limited to, the Trustee's right to claim that the Remaining Defendants, and not Mr. Lyons, are liable to the Trustee for any and/or all injuries, losses and damages. Nothing contained in this Agreement shall be construed to release, alter, or affect any other claims or causes of action that the Trustee may have against Mr. Lyons relating to the administration of the Debtors' bankruptcy estates. Nothing contained in this Agreement shall be construed to release, alter, or affect any claims or causes of action that the Trustee has or may have against Mr. Lyons's agents, heirs, successors, assigns, attorneys, accountants, or personal representatives.

11.    **Release of Fulton Bank by Mr. Lyons.** As of the Effective Date, and in consideration of the provisions set forth in this Agreement, Mr. Lyons and his agents, heirs, successors, assigns, personal representatives, attorneys, and anyone claiming through or on behalf of Mr. Lyons, hereby remise, release and forever discharge the Fulton Bank Released Parties, from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which Mr. Lyons ever had or now has against the Fulton Bank Released Parties relating to the CD and Account **only**, including all claims with respect thereto arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in, the Interpleader Action.

12.    **Release of Mr. Lyons by Fulton Bank.** As of the Effective Date and in consideration of the provisions set forth in this Agreement, Fulton Bank hereby knowingly and voluntarily releases and forever discharges Mr. Lyons from any and all suits, causes of action, complaints, charges, obligations, demands, or claims of any kind, whether in law or in equity, direct or indirect, known or unknown, which Fulton Bank ever had or now has against Mr. Lyons relating to the CD and Account, **only**, including all claims with respect thereto arising out of or in connection with, in whole or in part, and relating in any way to the allegations set forth in, the Interpleader Action. **For the avoidance of doubt, the releases set forth in Paragraphs 11 and 12 are intended only to resolve Mr. Lyons's and Fulton Bank's respective claims, rights, and interests in and to the CD and the Acccount.**

13.    **No Release as to Remaining Defendants; Survival of Claims.** This Agreement shall confer no rights whatsoever upon any third party or entity, unless expressly set forth herein. Except as set forth in Paragraph 10, the Trustee's claims against the Remaining Defendants expressly survive this Agreement and the Trustee does not provide a release of any kind with respect to the Remaining Defendants and/or any other potentially responsible Party relating to the claims that have been asserted or could be asserted in the Adversary Action, and/or any other claims relating to the administration of the Debtors' bankruptcy estates. The Trustee specifically reserves all equitable and legal rights and may pursue any and all claims the Trustee had, has, or may have against the Remaining Defendants, and their respective directors, officers, shareholders, principals, agents, heirs, successors, assigns, personal representatives, and/or attorneys, including, without limitation all claims, matters, and disputes involved in the Adversary Action, except for those claims directly related and limited to the Real Lancaster Property, the Lyons' interests in the Fenwick Property, the CD, and/or the Account. The Trustee

7

specifically reserves all equitable and legal rights and may pursue any and all claims the Trustee had, has, or may have against Robert Seth Obetz and Melissa Obetz relating to their purported interests in the Fenwick Property.

**14.    No Admission and Protected Communications Under FRE 408.**  This Agreement is a compromise and settlement of disputed claims. The settlement memorialized in this Agreement and all negotiations, statements and proceedings in connection therewith shall not be offered as or in any way construed as or deemed to be evidence of an admission or concession on the part of any party to this Agreement of any liability or wrongdoing on their part, which liability or wrongdoing is hereby expressly denied and disclaimed, and shall not be used against any party to this Agreement in any pending or future action or proceeding except to enforce the terms hereof.

**15.    Entire Agreement.** This Agreement sets forth the entire agreement and understanding of the Parties hereto with respect to the subject matter herein and supersedes and merges all prior oral and written agreements, discussions and understandings between the Parties with respect thereto, and none of the Parties shall be bound by any conditions, inducements or representations other than as expressly provided for herein.

**16.    Amendment.** No term of this Agreement may be waived, modified or amended except in writing signed by the Party against whom enforcement of the waiver, modification or amendment is sought.

**17.    Authority to Execute Agreement.** Each Party covenants and represents that it is fully authorized to enter into this Agreement and to carry out the obligations provided for in this Agreement. Where a person has executed this Agreement on behalf of a Party, that person covenants, warrants, and represents that he or she is authorized to do so by that Party.

**18.    Governing Law.**  This Agreement shall be governed by Pennsylvania law, without regard to principles of conflicts of laws. Each of the Parties shall pay its own respective costs and attorneys' fees incurred with respect to all of the issues or matters set forth or referenced in this Agreement.

**19.    Severability.**  In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions shall remain in full force and effect.

**20.    Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile, each of which shall be deemed an original, but all of which together constitute one and the same instrument. Facsimile and electronic copies of executed copies of this Agreement shall be deemed the equivalent of an original copy of this Agreement for all purposes.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed the day and year first written above.

97033489

By: _____

Michael G. Menkowitz, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
215-299-2000; 215-299-2150 (Fax)
mmenkowitz@foxrothschild.com
*Attorneys for Christine C. Shubert, Chapter 7*
*Trustee for the Estates of Worley & Obetz,*
*Inc., et al.*

REED SMITH LLP

By: _____

Brian Martin Schenker, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
215-241-7966
bschenker@reedsmith.com

*Attorneys for Fulton Bank, N.A.*

By: _____

John A. DiGiamberardino, Esquire
845 North Park Road, Suite 101
Wyomissing, PA 19610
610-372-9900; 610-372-5469 (Fax)
jad@cdllawoffice.com

*Attorneys for Julie H. Lyons*

By: _____

Jeffrey B. Lyons

By: _____

Julie H. Lyons

97033489

By: _____
Michael G. Menkowitz, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA  19103-3222
215-299-2000; 215-299-2150 (Fax)
mmenkowitz@foxrothschild.com
*Attorneys for Christine C. Shubert, Chapter 7*
*Trustee for the Estates of Worley & Obetz,*
*Inc., et al.*

REED SMITH LLP

By: _____
Brian Martin Schenker, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103
215-241-7966
bschenker@reedsmith.com

*Attorneys for Fulton Bank, N.A.*

By: _____
John A. DiGiamberardino, Esquire
845 North Park Road, Suite 101
Wyomissing, PA  19610
610-372-9900; 610-372-5469 (Fax)
jad@cdllawoffice.com

*Attorneys for Julie H. Lyons*

By: _____
Jeffrey B. Lyons

By: _____
Julie H. Lyons

9